UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | |
|---|---|
| RICHARD LOGAN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, ET AL. | |
| Plaintiffs, | |
| -against- | Case No. MO:7:19-CV-00217-DC |
| PROPETRO HOLDING CORP., ET AL. | CLASS ACTION |
| Defendants. | |

## DEFENDANT SPENCER ARMOUR'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

HUGHES HUBBARD & REED LLP

1775 I Street, N.W.
Washington, D.C. 20006-2401
Tel: (202) 721-4600
Fax: (202) 721-4646

TABLE OF CONTENTS

I.   INTRODUCTION................................................................................................ 1

II.  ARGUMENT .................................................................................................... 2

  A.  Plaintiffs' Section 10(b) Claim Against Armour Should Be Dismissed. .............................. 2

    1. Plaintiffs Fail to Allege Facts Raising a Strong Inference of Scienter
       with Respect to Armour.................................................................................. 2

      a.  Plaintiffs fail to allege scienter against Armour related to conduct
          of other Individual Defendants. ...................................................................... 2

      b.  Plaintiffs do not present a clear motive. ........................................................... 3

      c.  The PT Petroleum transactions do not give rise to a strong inference
          of scienter. ............................................................................................ 5

      d.  Armour's resignation as Chairman of ProPetro's Board of Directors
          does not support an inference of scienter. ......................................................... 8

    2. Plaintiffs have not Pled Loss Causation with Respect to the PT Petroleum
       Transactions.............................................................................................10

  B.  Plaintiffs' Section 20(a) "Control Person" Claims Against Armour
      Should Be Dismissed. ...................................................................................11

III. CONCLUSION................................................................................................13

TABLE OF AUTHORITIES

CASES

*Abbott v. Equity Grp. Inc.*,
   2 F.3d 613 (5th Cir. 1993) ...........................................................................................12

*Abrams v. Baker Hughes Inc.*,
   292 F.3d 424 (5th Cir. 2002) ......................................................................................... 7

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*,
   497 F.3d 546 (5th Cir. 2007) ......................................................................................... 3

*Dennis v. Gen. Imaging, Inc.*,
   918 F.2d 496 (5th Cir. 1990) .......................................................................................11

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005)......................................................................................................11

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009) .......................................................................................... 7

*Emps.' Ret. Sys. v. Whole Foods Mkt., Inc.*,
   905 F.3d 892 (5th Cir. 2018) .......................................................................................10

*Griffin v. GK Intelligent Sys. Inc.*,
   87 F. Supp. 2d 684 (S.D. Tex. 1999)............................................................................12

*Hall v. Rent-A-Cntr., Inc.*,
   2017 WL 6398742 (E.D. Tex. Oct. 19, 2017)............................................................... 9

*In re Arthrocare Corp. Sec. Litig.*,
   726 F. Supp. 2d 696 (W.D. Tex. 2010) .................................................................8, 9, 10

*In re Cyberonics Inc. Sec. Litig.*,
   523 F.Supp.2d 547 (S.D. Tex. 2007)............................................................................. 8

*In re Francescas Holdings Corp. Sec. Litig.*,
   2015 WL 1600464 (S.D.N.Y. Mar. 31, 2015) ............................................................... 7

*In re NetSolve, Inc. Sec. Litig.*,
   185 F. Supp. 2d 684 (W.D. Tex. 2001) ........................................................................12

*Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc.*,
   537 F.3d 527 (5th Cir. 2008) .....................................................................................3, 4

*Lewy v. SkyPeople Fruit Juice, Inc.*,
   2012 WL 3957916 (S.D.N.Y. Sept. 10, 2012) .............................................................. 7

ii

*Local 731 I.B. of T. Excavators and Pavers Pension Trust Fund v. Diodes, Inc.*,
   67 F. Supp. 3d 782 (E.D. Tex. 2014) ...................................................................... 4

*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) .................................................................................11

*One Longhorn Land I v. Defendant FF Arabian*,
   2015 WL 7432360 (E.D. Tex. Nov. 23, 2015)........................................................12

*Phillips v. LCI Int'l, Inc.*,
   190 F.3d 609 (4th Cir. 1999) ................................................................................ 3

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
   645 F. Supp. 2d 210 (S.D.N.Y. 2009) ...................................................................11

*R2 Invs. LDC v. Phillips*,
   401 F.3d 638 (5th Cir. 2005) ................................................................................ 5

*Schott v. Nobilis Health Corp.*,
   211 F. Supp. 3d 936 (S.D. Tex. 2016)................................................................... 5

*Shivangi v. Dean Witter Reynolds, Inc.*,
   825 F.2d 885 (5th Cir. 1987) ................................................................................ 5

*Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*,
   365 F.3d 353 (5th Cir. 2004) ................................................................................ 4

*Stephens v. Uranium Energy Corp.*,
   2016 WL 3855860 (S.D. Tex. July 15, 2016) .......................................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..........................................................................................6, 7

*Tuchman v. DSC Communications Corp.*,
   14 F.3d 1061 (5th Cir. 1994) ................................................................................ 5

*Weiss v. Amkor Tech., Inc.*,
   527 F. Supp. 2d 938 (D. Ariz. 2007) .................................................................... 5

STATUTES, RULES, AND REGULATIONS

Section 20(a) of the Securities Exchange Act of 1934 .......................................12, 13

15 U.S.C. § 78u-4(b)(2) ........................................................................................ 6

17 C.F.R. § 229.404(a) .......................................................................................... 7

Defendant Spencer Armour ("Armour") files this Reply in Support of his Motion to Dismiss Plaintiffs' Third Amended Complaint for Violations of the Federal Securities Laws, ECF No. 90 ("Motion to Dismiss" or "Armour MTD").

## I.    INTRODUCTION

Plaintiffs' Opposition[1] confirms that the sole basis for including Armour as a defendant in this action is ProPetro's June 2020 disclosure that a combined $55 million of its reported sales in 2017 and 2018 (roughly 3% of revenue during this period) were to PT Petroleum, a company for which Armour served as President. According to Plaintiffs, ProPetro should have more timely disclosed the PT Petroleum transactions and, in their view, the mere fact that Armour knew about the transactions shows that he was acting with fraudulent intent or scienter.

Plaintiffs are just wrong. A showing of the necessary "strong inference" of scienter would require Plaintiffs to plead particularized facts showing that Armour knew that the PT Petroleum transactions had to be disclosed or that he was at least severely reckless regarding the omission. But Plaintiffs remain unable to provide any coherent support, beyond circumstantial conjecture, for this position. Plaintiffs put forward no memorandum, email or witness to demonstrate that Armour was even remotely aware of any disclosure obligation. The nature of the PT Petroleum transactions, which resulted in the payment of $55 million **to** ProPetro and did not result in any concrete personal benefit to Armour, also makes it entirely plausible that a layperson—especially one who is not alleged to have played any role in ProPetro's disclosure decisions—would not have considered the need to disclose these transactions.

---

[1] "Opposition" or "Opp." refers to Lead Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss, ECF No. 97. Other capitalized terms not otherwise defined herein shall have the same meaning as in Armour's Motion to Dismiss.

While dispositive in its own right, the Court need not even reach a decision on Armour's scienter to decide the matter. Plaintiffs clearly fail an equally fundamental threshold requirement: they do not plead that the failure to disclose the PT Petroleum transactions resulted in any loss to Plaintiffs (*i.e.*, loss causation). To demonstrate loss causation, Plaintiffs must allege facts showing that the ultimate disclosure of the PT Petroleum transactions resulted in a decline in ProPetro's stock price. Plaintiffs have not made any such allegations in the TAC, nor have they adequately addressed this failure in the Opposition. Plaintiffs do not even attempt to argue that the disclosure of the PT Petroleum transactions had any impact on ProPetro's stock price. That defect alone requires dismissal.

For these reasons, those discussed further below, and the reasons detailed in ProPetro's Reply in Support of its Motion to Dismiss the Third Amended Complaint, Plaintiffs' claims against Armour should be dismissed in their entirety.

## II.    ARGUMENT

**A.    Plaintiffs' Section 10(b) Claim Against Armour Should Be Dismissed.**

1.    Plaintiffs Fail to Allege Facts Raising a Strong Inference of Scienter with Respect to Armour.

   a.    *Plaintiffs fail to allege scienter against Armour related to conduct of other Individual Defendants.*

As detailed in the Motion to Dismiss, Plaintiffs failed to make any scienter allegations against Armour with respect to alleged misrepresentations by other Individual Defendants. Armour MTD at 5. Plaintiffs appear to concede this point. The Opposition focuses its scienter argument against Armour on Armour's knowledge of the PT Petroleum transactions, without any mention of Armour's knowledge of any other alleged misconduct. Opp. at 60-61.

### b.    *Plaintiffs do not present a clear motive.*

Plaintiffs remain unable to adequately explain **why** Armour would have engaged in the alleged fraud. In the Opposition, Plaintiffs suggest that Armour was motivated to conceal the PT Petroleum transactions from investors because he had allegedly not obtained approval from the Audit Committee for the transactions and was motivated to hide this violation of internal controls. Opp. at 61. This is entirely conjecture. Plaintiffs do not offer a single fact—be it from a memorandum, email or witness—that coherently suggests that Armour undertook action to hide PT Petroleum's **purchases** from the Audit Committee or that the purchases were in fact not disclosed to the Audit Committee or made clear to management.[2] *See Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 550 (5th Cir. 2007) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

Even at face value, the allegations are insufficient to establish motive. "To demonstrate motive, plaintiffs must show 'concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged.'" *Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 543 (5th Cir. 2008) (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 621 (4th Cir. 1999)). Plaintiffs' motive allegation does not show any concrete benefit to Armour from the alleged misstatement. Plaintiffs' motive allegation simply restates their primary allegation that Armour made misstatements to conceal internal control deficiencies. Plaintiffs do not articulate any coherent rationale for what Armor could possibly gain from his alleged efforts to undermine ProPetro's controls. The notion that he did so to allow PT Petroleum to purchase services from ProPetro at market prices (there is no allegation to the contrary) is

---

[2] Plainly pled facts demonstrate that ProPetro and the investing public were well informed of Armour's role at PT Petroleum. *See* TAC ¶¶ 38, 126.

3

preposterous and does not support an inference of scienter. *See id.* (allegations of fact that "lead to a strained and tenuous inference of motive" are insufficient).

Nor do allegations related to Armour's stock sales serve as a motive for his allegedly fraudulent conduct. As explained in the Motion to Dismiss, insider stock sales can **only** raise an inference of scienter if they are suspicious in amount or timing. *See* Armour MTD at 10-13; *Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 368 (5th Cir. 2004). Plaintiffs relying on stock sales to create an inference of scienter must provide details regarding the seller's trading history, stock ownership and sales patterns to demonstrate that the sales are suspicious in nature. *See* Armour MTD at 10-13.

Plaintiffs make no effort in the TAC to provide any of the requisite factual context, and the Opposition does not make any meaningful attempt to argue that Armour's stock sales raise any inference of scienter. *See* Opp. at 69. Ignoring the fact that Armour increased his shareholding during the class period and executed all of his trades through ProPetro's IPO or through a 10b5-1 plan (*see* Armour MTD at 12-13), Plaintiffs simply assert, without factual support, that the Individual Defendants' stock sales "are suspicious in amount." *See* Opp. at 69. Such factually unsupported assertions are clearly insufficient. *See Local 731 I.B. of T. Excavators and Pavers Pension Trust Fund v. Diodes, Inc.*, 67 F. Supp. 3d 782, 790-91 (E.D. Tex. 2014) (rejecting inference of scienter from insider sales where plaintiffs provided only the number of shares sold with no information related to past practices or overall percentage of stock holdings sold). Plaintiffs evidently recognize as much, as they ultimately note that they are "not required to allege insider trading for a finding of scienter." Opp. at 69.

Plaintiffs may be correct that they need not establish a motive to create a cogent and compelling inference of scienter. *See* Opp. at 61. However, in the absence of a clear motive, "the

4

strength of [Plaintiffs'] circumstantial evidence of scienter must be correspondingly greater." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 644 (5th Cir. 2005); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) ("Where a defendant's motive is not apparent, a plaintiff may adequately plead scienter by identifying circumstances that indicate conscious behavior on the part of the defendant, though the strength of the circumstantial allegations must be correspondingly greater."). As discussed below, Plaintiffs do not meet this more stringent requirement or even any lesser standard of scienter.

> c.   *The PT Petroleum transactions do not give rise to a strong inference of scienter.*

To the extent that Plaintiffs assert that Armour's knowledge of the PT Petroleum transactions is sufficient to infer scienter against him, they are incorrect.  Rather, Plaintiffs must allege particularized facts that create a cogent and compelling inference that Armour knew that the PT Petroleum transactions had to be disclosed or that he was severely reckless regarding their disclosure.  *See* Armour MTD at 6-7; *Schott v. Nobilis Health Corp.*, 211 F. Supp. 3d 936, 956 (S.D. Tex. 2016) (finding no inference of scienter where plaintiffs failed to allege facts to support a plausible inference that defendants "knowingly or with reckless disregard issued statements that incorporated *known or obvious*" errors) (emphasis added); *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 948 (D. Ariz. 2007) ("[A] mere violation of a generally accepted accounting principle (GAAP) or accounting rules fails to plead scienter.  Instead, a complaint must allege specific facts that each individual defendant knew that the accounting for the subject transactions was incorrect at the time it was determined.").[3]

---

[3] Plaintiffs misconstrue *Shivangi v. Dean Witter Reynolds, Inc.*, 825 F.2d 885 (5th Cir. 1987).  In *Shivangi*, the Fifth Circuit stated in unambiguous language that "knowledge of omitted facts does not itself establish scienter." *Id.* at 889.  Rather, to establish scienter plaintiffs must prove that the defendant "acted with actual intent to deceive, manipulate or defraud or severe recklessness." *Id.* (citations and internal quotations omitted).  The Fifth Circuit, basing its affirmance solely on

Plaintiffs contend that Armour knew that the PT Petroleum transactions had to be disclosed, or was severely reckless as to their disclosure, because he (i) signed the 2018 Secondary Offering Documents "that described ProPetro's review process for related-party transactions," and (ii) signed SEC filings that included the disclosure of other related-party transactions with a lower financial value. Opp. at 60 (citing ¶¶ 249, 268, 289). Plaintiffs' position is meritless.

It is unclear how the mere fact that Armour may have been aware of ProPetro's internal related-party review process and the disclosure of other related-party transactions indicates that Armour knew that the PT Petroleum transactions were required to be disclosed to investors or that he acted with severe recklessness. The TAC does not contain any factual allegations supporting such a conclusion—it does not cite any internal documents or reports or any witness statements, it does not allege that Armour was a lawyer or accountant with expertise in SEC (or other) disclosure requirements, and it does not allege that Armour had any responsibility for determining whether the PT Petroleum transactions were subject to disclosure. Indeed, the TAC asserts that ProPetro's Audit Committee—**of which Armour was not a member**—was responsible for determining whether related-party transactions should be disclosed. TAC ¶ 289. Plaintiffs do not contend that Armour played a role in any disclosure decisions regarding the PT Petroleum transactions; there are certainly no such facts pled in the TAC. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007) (quoting 15 U.S.C. § 78u-4(b)(2))

---

the issue of scienter, specifically determined (contrary to Plaintiffs' assertions (Opp. 61)) that it made no determination regarding materiality and that any comment by the district court on the subject would be mere dicta without preclusive effect. *Id*. at 892.

("omissions and ambiguities count against inferring scienter, for plaintiffs must 'state with particularity facts giving rise to a strong inference.'").[4]

Plaintiffs make virtually no attempt to allege facts that demonstrate that Armour's conduct was severely reckless. Plaintiffs make no argument or substantive allegation that Armour's conduct involved "an extreme departure from the standards of ordinary care." *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 430 (5th Cir. 2002). Although Plaintiffs point to the size of the transaction and the materiality of the transactions for purposes of Item 404 of Regulation S-K (Opp. at 61), this is insufficient to demonstrate the "danger of misleading buyers or sellers which [was] either known to [Armour] or [was] so obvious that [Armour] must have been aware of it." *See Abrams*, 292 F.3d at 430; *see also In re Francescas Holdings Corp. Sec. Litig.*, Nos. 13-cv-6882 (RJS), 13-cv-7804 (RJS), 2015 WL 1600464 at \*16 (S.D.N.Y. Mar. 31, 2015) (finding that "the mere relatedness of a party supplying \$250,000 worth of inventory could hardly be considered a material fact significant in relation to investment decisions" given the company's \$79 million in reported revenue); *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 202 (2d Cir. 2009) (finding no inference of severe recklessness where disclosure of related-party transaction "would not have materially altered total mix of information available to investors").

Given the nature of the PT Petroleum transactions, it is entirely plausible that Armour may have assumed that they were not subject to disclosure. *See Tellabs*, 551 U.S. at 323-24 ("a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as

---

4 Likewise, the assertion that the PT Petroleum transactions should have been disclosed under Item 404 is insufficient to demonstrate scienter as to Armour without any allegation that he knew of, or was severely reckless in disregarding, Item 404's disclosure requirements. *See Lewy v. SkyPeople Fruit Juice, Inc.*, 2012 WL 3957916, at \*18-19 (S.D.N.Y. Sept. 10, 2012) (finding that plaintiffs failed to state a claim under 10(b) despite apparent violation of Item 404 of Regulation S-K).

inferences favoring the plaintiff"). The PT Petroleum transactions resulted in the **payment** of $55 million **to** ProPetro.[5] Notwithstanding Plaintiffs' conclusory insinuations (Opp. at 2, 37, 72), Plaintiffs are unable to point to any facts indicating that the PT Petroleum transactions were improper, that they were not negotiated at arms-length, that ProPetro did not receive fair value for services provided, or that they resulted in any personal benefit or financial gain for Armour.[6] *See* Armour MTD at 7-8. There are simply no indicia of potentially improper "insider dealing" consistent with that alleged in connection with Plaintiffs' claims regarding other related-party transactions.

> ### d.    Armour's resignation as Chairman of ProPetro's Board of Directors does not support an inference of scienter.

Plaintiffs' arguments with respect to Armour's resignation as Chairman of ProPetro's Board of Directors are similarly unavailing. Courts in the Fifth Circuit routinely reject resignations and terminations as supporting an inference of scienter **absent specific evidence** tying the personnel action to misconduct. *See* Armour MTD at 9-10. That principle applies with particular force here because Armour has **not** resigned from ProPetro's Board of Directors. While he has ceded his role as Chairman, he remains a director (TAC ¶ 38)—which would be highly unlikely if he were considered to have been connected to an alleged fraud. *See In re Cyberonics Inc. Sec. Litig.*, 523 F.Supp.2d 547, 553-54 (S.D. Tex. 2007) (finding fact that former CEO was retained as a consultant by the company after termination weighed against an inference

---

[5] This clearly distinguishes the PT Petroleum transactions from other related-party transactions identified by Plaintiffs that involved the payment by ProPetro to a related party.

[6] Plaintiffs characterize PT Petroleum as "Armour's own company." Opp. at 3. The allegations in the TAC and documents incorporated by reference establish only that Armour worked at PT Petroleum, not that he had any ownership of the entity.

of scienter).  Tellingly, Plaintiffs cannot point to a single case finding that a change in directorial responsibilities  (as opposed to a full  resignation  or termination)  raises an inference of scienter.

The cases cited by Plaintiffs (Opp. at 64-65) illustrate the high threshold required to plead scienter based on corporate resignations. For example, in *In re Arthrocare*, the court found that direct statements and announcements made by Arthrocare regarding the resignation of defendants as well as the timing of the resignations "strongly indicated the resignations were related to" the underlying internal review and ultimate restatement of financials. *In re Arthrocare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 725 (W.D. Tex. 2010). Nonetheless, the court found that these resignations carried little weight with respect to the scienter analysis because "it would not be irregular or unusual for an executive who was merely negligent-as opposed to fraudulent or severely reckless-to leave in the wake of the discovery of substantial accounting errors and irregularities." *Id*.

Conversely, in *Rent-A-Center*, after a series of announcements regarding the poor performance of Rent-A-Center's new point-of-sale system, the CFO was terminated and the CEO, a 24 year veteran, resigned. *See Hall v. Rent-A-Cntr., Inc.*, 2017 WL 6398742 at *34 (E.D. Tex. Oct. 19, 2017). In determining that these terminations and resignations supported an inference of scienter, the court looked at the "context of all of the factual allegations," including statements by Rent-A-Center tying the CFO and CEO, and their termination and resignation, respectively, to the misstatements and issues with the point-of sale system. *Id*.

Here, Plaintiffs have not pointed to any statements from ProPetro that would suggest that Armour's resignation as Chairman was tied in any way to misconduct on Armour's part. The best Plaintiffs can muster is to point out that Phillip Gobe replaced Armour during the course of

9

the Audit Committee investigation. Opp. at 68. This falls far short of what is required. *See In re Arthrocare*, 726 F. Supp. 2d at 725.

      2.      <u>Plaintiffs have not Pled Loss Causation with Respect to the PT Petroleum Transactions</u>.

Plaintiffs do not contest that (i) they must plead loss causation with respect to each alleged misstatement identified in the TAC; and (ii) to adequately plead loss causation, they must allege that the relevant truth about a misstatement was revealed to the market and caused a decline in ProPetro's stock price. *See* Armour MTD at 13; Opp. at 74-75. Nor do Plaintiffs make any meaningful attempt to argue that the TAC meets these requirements with respect to the alleged misstatements regarding the PT Petroleum transactions. Indeed, Plaintiffs do not even argue that the disclosure of the PT Petroleum transactions had any impact on ProPetro's stock price.[7] *See* Armour MTD at 14; *Emps.' Ret. Sys. v. Whole Foods Mkt., Inc.*, 905 F.3d 892, 905 (5th Cir. 2018) ("plaintiffs fail to identify a decline in stock price that shortly followed a corrective disclosure" and "therefore fail to plead a § 10(b) violation"); *Stephens v. Uranium Energy Corp.*, 2016 WL 3855860, at \*21 (S.D. Tex. July 15, 2016) (holding failure to identify corrective disclosure and resulting stock price drop requires dismissal).

Instead, Plaintiffs assert that "the issues with Denholm's failure to execute his duties as CAO and additional related party transactions, were previously corrected and revealed to the market when Denholm and Armour were resigned and demoted, respectively, and when the Company admitted the existence of its internal control weaknesses." Opp. at 80. This is pure

---

[7] Plaintiffs suggest in the Opposition that Armour argues that "the omissions were never corrected or revealed to the market." Opp. at 79-80. This is not so. The PT Petroleum transactions plainly were revealed to the market on June 22, 2020 in ProPetro's 2019 10-K. Armour correctly points out that Plaintiffs have not alleged that this correction resulted in a share price decline. Moreover, Armour points out that this disclosure could not have caused any recoverable loss to Plaintiffs because it occurred three months after the end of the Class Period. *See* Armour MTD at 13-14.

obfuscation. It is unclear if this contention is even referring to the PT Petroleum transactions. Regardless, none of the five alleged corrective disclosures made **any** reference to, or are in any way related to, the PT Petroleum transactions or Armour. *See* TAC ¶¶ 310-320; *see Lormand v. US Unwired, Inc.*, 565 F.3d 228, 260 (5th Cir. 2009)(explaining that none of the alleged corrective disclosures concern US Unwired's conversion to a different type of Sprint Affiliate and transfer of core functions to Sprint, and thus plaintiffs failed to plead loss causation for alleged misstatements and omissions related to those issues).

Likewise, the announcement of Armour's resignation does not make any mention of the PT Petroleum transactions, related-party transactions or internal controls weaknesses. *See* July 12, 2019 Form 8-K at 2. Indeed, there is absolutely no basis to conclude that this disclosure related to Armour's status on the Board did—or even could—sufficiently alert the market to the PT Petroleum transactions. *See Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 229 (S.D.N.Y. 2009) ("Standing alone, the announcement of the departure of an officer, without explanation, would not alert investors to any improprieties so as to allege loss causation."). Moreover, and quite dispositively, Plaintiffs did not identify this announcement as a corrective disclosure and plead a resulting share price decline. *See* TAC ¶¶ 310-320; *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (complaint must provide "fair notice" of loss causation theory).

**B.    Plaintiffs' Section 20(a) "Control Person" Claims Against Armour Should Be Dismissed.**

It is settled black letter law in this Circuit that a director is not a control person simply by virtue of his position. *See, e.g.*, *Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 509-510 (5th Cir. 1990); Amour MTD at 15. Rather, Plaintiffs must allege facts demonstrating that the defendant had the actual ability to control the specific activity upon which the primary violation is based.

11

*See Abbott v. Equity Grp. Inc.*, 2 F.3d 613, 620 (5th Cir. 1993). The TAC does not contain any such allegations. *See* Amour MTD at 15-16. Plaintiffs do not contend otherwise. Instead, they argue that their Section 20(a) claim is subject to a "relaxed" and "lenient" pleading standard. *See* Opp. at 84.

Plaintiffs' position does not save their claim. Even with a "lenient" pleading standard, Plaintiffs are still required to specifically allege facts demonstrating the ability to control the primary violator. *One Longhorn Land I v. Defendant FF Arabian*, 2015 WL 7432360 at *2 (E.D. Tex. Nov. 23, 2015), cited by Plaintiffs for the pleading standard, makes that very clear. The court in *One Longhorn Land I* did **not** suggest that facts demonstrating control are unnecessary. To the contrary, it carefully evaluated the factual assertions of control made by the plaintiffs in that case. *See id*. at *3. ("Plaintiff's factual allegations, when viewed in the light most favorable to Plaintiff, state a plausible claim that Defendant Presley possessed the power to control FF Arabian").

Plaintiffs plead no such facts here. Plaintiffs simply rely on the conclusory assertion that as "senior officers," the Individual Defendants should be presumed to have controlled ProPetro. Opp. at 85. Even if this conclusory allegation were sufficient, Plaintiffs concede that Armour was **never** an officer (senior or otherwise) of ProPetro. TAC ¶ 38. He was an outside, non-executive director. *Id.*[8] And the TAC is devoid of any facts suggesting that Armour was involved in the day-to-day management of ProPetro or otherwise exercised actual control over ProPetro.

---

[8] The cases cited by Plaintiffs (Opp. at 84-85), which address Section 20(a) claims against corporate officers, are therefore inapposite. *See, e.g.*, *In re NetSolve, Inc. Sec. Litig.*, 185 F. Supp. 2d 684, 687, 699 (W.D. Tex. 2001) (claims against President and CEO, Vice President of Finance and CFO, Vice President of Operations, and Vice President of Marketing); *Griffin v. GK Intelligent Sys. Inc.*, 87 F. Supp. 2d 684, 689 (S.D. Tex. 1999) (claims against individual who served as director, vice president, chief financial officer, chief administrative officer, and general counsel).

The Opposition does not contest that fact. This failure requires dismissal of the Section 20(a) claim against Armour.

### III.    CONCLUSION

For the foregoing reasons, Armour respectfully requests that the Court dismiss Plaintiffs' claims against Armour with prejudice.

Dated: October 30, 2020                    HUGHES HUBBARD & REED LLP

By:    /s/ Kevin T. Abikoff
     Kevin T. Abikoff
     Texas Bar No. 24034118
     Benjamin Britz (admitted *pro hac vice*)
     D.C. Bar No. 499232
     1775 I Street, N.W.
     Washington, D.C. 20006-2401
     Tel: 202-721-4600
     Fax: 202-721-4646
     Email: kevin.abikoff@hugheshubbard.com
     Email: benjamin.britz@hugheshubbard.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed with the Court's electronic case filing (ECF) system on October 30, 2020, which caused an electronic copy of this document to be served on all counsel of record in this matter.

/s/ Kevin T. Abikoff

1