UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| NYKREDIT PORTEFØLJE ADMINISTRATION A/S, OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM, OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, OKLAHOMA CITY EMPLOYEE RETIREMENT SYSTEM, POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, Individually and on behalf of all others similarly situated, | § § § § § § § § § § § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | No. MO:19-CV-217-DC |
| PROPETRO HOLDING CORP., DALE REDMAN, JEFFREY SMITH, IAN DENHOLM, and SPENCER D. ARMOUR III, | § § § § § | |
| *Defendants.* | § § | |

LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION .................................................................................................. 1

II.  ARGUMENT ....................................................................................................... 2

    A.  Defendants' Motion Fails to Meet the Rule 12(f) Standard ................................... 2

        1.  Defendants Have Not Demonstrated That the Complaint Unfairly
            Prejudices Them........................................................................................... 4

        2.  The Court Sustained the Majority of the False Statements and
            Omissions..................................................................................................... 5

        3.  Defendants Seek to Strike Allegations That the Court Sustained..................... 8

        4.  Defendants' Motion Is an Inappropriate Effort to Relitigate the
            Motions To Dismiss ..................................................................................... 10

    B.  Defendants' Requested Relief Would Prejudice Plaintiffs' Appellate
       Rights ................................................................................................................. 12

III. CONCLUSION ................................................................................................... 13

Lead Plaintiffs Nykredit Portefølje Administration A/S, Oklahoma Firefighters Pension and Retirement System, Oklahoma Law Enforcement Retirement System, Oklahoma Police Pension and Retirement System, Oklahoma City Employee Retirement System, together with additional named plaintiff Police and Fire Retirement System of the City of Detroit (collectively, "Plaintiffs") respectfully submit this memorandum of law in opposition to Defendants' Motion to Strike Under FRCP 12(f) (ECF No. 109) ("Motion" or "Mot.").

## I.      INTRODUCTION

Defendants seek to burden the Court with an unnecessary and procedurally improper Motion to Strike.  Their Motion should be denied on both substantive and procedural grounds.  On September 13, 2021 this Court entered its 67 page Order Granting in Part and Denying in Part Defendants' Motions to Dismiss (ECF No. 105) (the "Order"), which provided a detailed analysis of the claims in the case and resolved the arguments raised by Defendants' voluminous motions to dismiss.  The Order sustained a significant bulk of Plaintiffs' claims and dismissed others. Plaintiffs have declined the Court's invitation to amend the Third Amended Complaint (the "Complaint").  Thus, the allegations that were dismissed by the Court are no longer at issue in the case.  Importantly, the Court does not even need to reach the question of what allegations should be stricken or not stricken, as Defendants cannot remotely meet their burden to show that any prejudice would follow from allowing the Complaint, as modified by the Order, to stand.  The Motion should be denied on that basis alone.

In addition, Defendants' Motion blatantly ignores the significant resources that the Court and the parties already expended in narrowing this case and is a transparent attempt to relitigate the motions to dismiss.  That attempt should be rejected.  Defendants' Motion, made under Rule 12(f) of the Federal Rules of Civil Procedure, seeks to remove entire sections from the Complaint

under the guise of "[c]larify[ing] the [c]ase," as that would prevent the proposed stricken allegations from "unduly broaden[ing] the scope of discovery and requir[ing] litigation of unrelated and impertinent issues." Mot. at 7. Far from promoting judicial economy, as Defendants claim, their Motion is a futile attempt to relitigate issues that were settled by the Court's Order. Rule 12(f), which is reserved for removing "redundant, immaterial, impertinent, or scandalous matter(s)" from the pleadings, is not the proper vehicle for limiting discovery or narrowing the actionable claims—the Court's Order has already done these. Moreover, the majority of the allegations targeted by Defendants' Motion cannot be stricken under the standards of Rule 12(f): they, in fact, are pertinent to those allegations that the Court sustained. Finally, if Defendants' Motion were granted, Plaintiffs would be improperly precluded from appealing, at a later point in the litigation, the dismissal of those allegations the Court determined were inadequate in its Order. In essence, Defendants are attempting to refashion the Court's decision into a broader dismissal than embodied in the Order. The Court should deny Defendant's effort to have a second bite at the apple.

## II.    ARGUMENT

### A.    Defendants' Motion Fails to Meet the Rule 12(f) Standard

A motion to strike carries a high burden and is a tool to be used in a limited set of circumstances. "Both because striking a portion of a pleading is a drastic remedy, and because it often is sought by the movant simply as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted." *CoStar Realty Info., Inc. v. RealMassive, Inc.*, 2015 WL 13804252, at *1 (W.D. Tex. Aug. 11, 2015). Defendants' Motion neither carries the burden required nor presents a circumstance for which Rule 12(f) was designed. "Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, a district court 'may strike from a pleading an insufficient

2

defense or any redundant, immaterial, impertinent, or scandalous matter. . . Such matters should be stricken, rather, only where they possess 'no possible relation to the controversy.'" *Gilchrist v. Schlumberger Tech. Corp.*, 321 F.R.D. 300, 301-02 (W.D. Tex. 2017) (internal citation omitted) (quoting *United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012)) (denying motion to strike where movant "has failed to meet its heavy burden to show that Plaintiffs' factual allegations . . . possess 'no possible relation to the controversy'"). Courts have "made clear that an allegation is not properly stricken 'unless it is clear that it can have no possible bearing upon the subject matter of the litigation. If there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied.'" *RealMassive, Inc.*, 2015 WL 13804252, at *3 (quoting *Pan Am. Life Ins. Co. v. Blanco*, 311 F.2d 424, 428 n.13 (5th Cir. 1962)). "Where a challenged matter is 'directly relevant to the controversy at issue' and is at least 'minimally supported' by the allegations set forth in the pleadings, it should not be stricken under Rule 12(f)." *Brown v. Aetna Life Ins. Co.*, 2013 WL 3442042, at *2 (W.D. Tex. July 8, 2013). "With a motion to strike, just as with a motion to dismiss, the court views the pleading in the light most favorable to the nonmoving party." *Hobbs v. Alcoa Inc.*, 2005 WL 8157350, at *6 (W.D. Tex. May 16, 2005). Defendants' Motion fails to satisfy the requirements of Rule 12(f) for the reasons discussed below.[1]

---

[1] Defendants have also violated Local Rule CV-7(G) in filing this motion without completing their meet and confer obligations. Defendants first contacted Plaintiffs' counsel by emails on Wednesday, October 20, 2021 at 8:24 pm, explaining that they intended to move to strike a long list of paragraphs in the Complaint and then asked for Plaintiffs to provide their consent, or the reasons why they would not consent, in less than 24 hours. The next day, October 21, 2021, Plaintiffs' counsel informed Defendants that they needed time to consider the request and confer with their clients, and would respond by the close of business on October 27, 2021. Defendants did not respond to that communication until just before the Motion was filed on October 22, then informing Plaintiffs that because they believed their deadline to file the Motion was October 27, 2021, they were going to file "shortly" instead of waiting for Plaintiffs' response or scheduling a discussion in the several days between October 22 and October 27. Defendants' Motion was filed within an hour of that last communication. Defendants' failure to confer in good faith supports the denial of their Motion. *See Patel v. Shipper Servs. Express*, 2020 WL 10056291, at *1-2 (W.D.

## 1. Defendants Have Not Demonstrated That the Complaint Unfairly Prejudices Them

"[M]otions to strike are rarely granted in the absence of a showing of prejudice to the moving party, especially where, as here, there are highly disputed issues of fact and law." *Bittakis v. City of El Paso*, 2006 WL 897681, at *2 (W.D. Tex. Mar. 31, 2006) (denying motion to strike eighty-six paragraphs and thirteen exhibits from the complaint where "[t]he allegations in Plaintiff's Complaint are made in the context of his theory of the case" and "[the defendants] do not allege that they have been prejudiced by any of the allegations"). Defendants' sole rationale for seeking to strike allegations is a mere possibility that the challenged allegations "could threaten to unduly broaden the scope of discovery and require litigation of unrelated and impertinent issues" and "allow[] Plaintiffs to focus discovery on allegations of personal impropriety rather than the alleged fraudulent disclosures regarding corporate controls." Mot. at 7. However, such claims of prejudice are speculative and premature, as the parties have not even begun to engage in discovery, and the Court has ample case management power and discretion to limit the scope of discovery as needed. Beyond these conclusory statements regarding imagined future prejudice, Defendants have not and cannot make any showing that the allegations they propose to strike unduly widen the scope of discovery or result in quantifiable additional demands on Defendants, a showing that is required under Rule 12(f). *See Sandoval v. Carrco Painting Contractors*, 2017 WL 2999425,

---

Tex. Oct. 19, 2020) (denying motion where defendants failed to confer in good faith and noting "one-way letters or emails are not good faith attempts to resolve the matter by agreement"); *see also Bitterroot Holdings, LLC v. Bank of New York Mellon*, 2015 WL 11661760, at *5 (W.D. Tex. July 30, 2015) ("This single half-hearted attempt to 'confer' hardly satisfies the good-faith effort requirement . . . which would seem to require, at the very least, an exchange of dialogue. . . . Further, movant makes no attempt to certify 'the specific reason that no agreement could be made.'"). Given that the Parties agree that certain allegations were dismissed, and the infirmities in Defendants' Motion that Plaintiffs would have pointed out, a proper meet-and-confer process could have obviated, or narrowed the scope of, the Motion.

at \*5 (W.D. Tex. May 24, 2017) ("[C]onclusory statements about unfair prejudice to Defendants are not enough to justify their motion to strike; a stronger showing is required under Fed. R. Civ. P. 12(f)."). Conjecture about *possible* discovery burdens does not satisfy Defendants' request to strike allegations particularly where, as here, the Court's Order will inform the scope of discovery. *See In re Flint Water Cases*, 2019 WL 8060585, at \*2 (E.D. Mich. May 1, 2019) (declining to strike allegations from complaint following a motion to dismiss where "defendants again fail to identify prejudice" because given the dismissal of certain claims "plaintiffs have no reason to pursue discovery related to those counts. And if they do, defendants are entitled to bring this issue to the Court's attention").

### 2. The Court Sustained the Majority of the False Statements and Omissions

In the Order, the Court presented a detailed explanation of which statements it sustained over Defendants' motions to dismiss, breaking those down by category and thus defining the contours of the sustained claims. Generally speaking, the effect of the Court's Order groups the statements and omissions into three categories: (1) statements that were sustained in full; (2) statements that were sustained with temporal limitations as to the underlying conduct; and (3) statements that were dismissed entirely.

For statements that were sustained in full, the Court sustained all statements regarding the adequacy of the Company's internal controls. *See* Order at 33 ("Plaintiffs' allegations plausibly state a claim against ProPetro based on its statements regarding internal and disclosure controls, which will go forward.") The Court confirmed this finding with regard to internal control statements made (1) in ProPetro's Code of Ethics and Conduct (Order at 35); (2) in the Company's IPO documents (Order at 36); (3) in the Company's quarterly and annual SEC filings (Order at 38 (concerning related-party transactions)); and (4) made by Redman and Smith in ProPetro's

5

quarterly and annual SEC filings (Order at 40-41). The Court also sustained in full the allegations of falsity related to Defendant Redman's compliance with the Code of Ethics, his share pledge agreements, and the omission of his share pledges. Order at 42-47.

As to temporal limitations, the Court narrowed the temporal scope of allegations related to (1) the improper expense reimbursements received by Redman and Smith (Order at 37, 41); (2) statements concerning the Clarabby transactions (Order at 37, 48); and statements concerning the PT Petroleum Transactions (Order at 37, 51), by holding those false statements and omissions were actionable only with regard to conduct or transactions that occurred prior to the IPO and secondary offerings. Order at 37.[2] The Court also held that Plaintiff OLERS's Section 11 claims are limited in the same manner as the Exchange Act claims discussed above. Order at 63.

Finally, the Court dismissed certain false statements and omissions entirely, specifically, those concerning Defendant Denholm's employment at PBEX (Order at 49) and Alan Douglas' lack of independence (Order at 39). The Court also held that false and misleading statements and omissions concerning Redman's improper, undisclosed share pledges and the PT Petroleum transaction in the IPO Lockup Agreement and IPO Offering Documents were barred by the statute of repose barred this claim brought under Section 11 of the Securities Act. Order at 62.

In summary, the Court's decisions on the various allegations of false statements and material omissions are as follows:

---

[2] The Court also noted that statements regarding the improper expense reimbursements, the Clarabby transactions, and the PT Petroleum transaction, were limited to statements and omissions made prior to the IPO and secondary offerings. Order at 41, 48 and 51, respectively. However, Plaintiffs alleged no false statements made prior to the IPO. The only logical interpretation is that this was a reiteration of the Court's holding on page 37 of the Order, limiting these allegations to statements *concerning conduct* that occurred prior to the IPO and secondary offerings.

| Category of Statement or Omission | Paragraphs in Complaint[3] | Court's Decision |
|---|---|---|
| Statements Regarding Adequacy of Internal Controls | 244-49, 256-64, 268-79 | Sustained. (Order at 33) |
| Defendant Redman's Compliance with Code of Ethics and omission of share pledges | 236-43, 291-93, 296-308, 309 | Sustained. (Order at 35) |
| Improper Expense Reimbursements | 251, 253, 267, 281, 290 | Sustained for conduct that occurred prior to the IPO and Secondary Offerings. (Order at 37, 41) |
| Clarabby Transactions | 250-53, 265-67, 280-81, 288-90, 302-04, 378-80 | Sustained for conduct that occurred prior to the IPO and Secondary Offerings. (Order at 37, 48) |
| PT Petroleum Transactions | 253, 267, 281, 290, 304 | Sustained for conduct that occurred prior to the IPO and Secondary offering. (Order at 37, 51) |
| Defendant Denholm's Employment at PBEX | 250-53, 265-67, 280-81, 288-90, 302-04 | Dismissed. (Order at 49) |
| Douglas's Lack of Independence on the Audit Committee | 286-87 | Dismissed. (Order at 39) |

Plaintiffs agree that the claims concerning Douglas' lack of independence, Defendant Denholm's employment at PBEX, and the Section 11 claim regarding statements and omissions in the IPO Lockup Agreement and IPO Offering Documents concerning Redman's undisclosed share pledges and the PT Petroleum transactions were wholly dismissed. Accordingly, given that the Court's Order already forecloses litigating these claims, moving to strike them is wholly redundant and improper.[4] *See Idstrom v. German May, PC*, 2019 WL 8301685, at *1-2 (D. Kan.

---

[3] This table refers, for ease of reference and brevity, to the specific paragraphs of the Complaint identifying Defendants' alleged false statements. *See* Complaint, Section IV.C. Other paragraphs of the Complaint provide the detailed narrative supporting the basis for Plaintiffs' theory of fraud (*see, e.g*., Section IV.A. ("Background and Summary of the Fraud")), and this table should not be construed as a concession that other paragraphs of the Complaint not identified in the table were dismissed from the case.

[4] The cases Defendants rely upon (Mot. at 4-5) are not applicable and inapposite. In *Int'l Constr. Prods. LLC v. Caterpillar Inc.*, by using an incorporation by reference technique, the plaintiff

Oct. 24, 2019) (denying defendants' motion to strike allegations from the pleadings following a motion to dismiss since "Plaintiff did not resubmit any claims and will be precluded from reasserting the dismissed claims at trial by the order of dismissal" and "[t]he Court will not require Plaintiff to edit his Complaint in that fashion"). As discussed further below, the only effect of striking them would be to impair Plaintiffs' appellate rights. As to all other claims, the Court's Order did not wholly dismiss them so Defendants' Motion to strike them is also improper.

### 3. Defendants Seek to Strike Allegations that the Court Sustained

Defendants' Motion should also be denied because many of the allegations it seeks to dismiss were sustained in the Court's Order.

First, Defendants request the Court strike the entirety of Section IV.C(1)(a) ("Statements or Omissions Concerning Redman's Improper, Undisclosed Share Pledge" in Offering Documents). Mot. at 5. However, the Court explicitly references paragraphs 237, 239, 242, and 243 of this section when sustaining claims regarding Defendant Redman's share pledge. Order at 43. Further, the Court specifically references the falsity of this category of statements several

---

continued to replead the allegation that a merger was anticompetitive even though the court had held multiple times that the merger was lawful. 2020 WL 4607882, at *2 (D. Del. Aug. 11, 2020) (noting the plaintiff was using a "'puzzle pleading' technique, [which] incorporated into the state law counts, multiple allegations that the merger was anticompetitive, even though the court had rejected this theory multiple times"). By contrast, here, Plaintiffs have not attempted to replead. Furthermore, none of the surviving claims in the Complaint attempt to use incorporation by reference to improperly reassert dismissed theories, as was the concern in the *Catepillar* case—a concern not in play here since, prior to the Court's Order, there were no previously dismissed theories or claims to improperly reassert. *Davis v. United Health Servs.*, on which Defendants also rely, does not even concern striking dismissed allegations from a complaint; rather, it concerned a motion to strike the plaintiff's sur-reply brief submitted in opposition to the defendant's motion for summary judgment, which the court granted because the plaintiff failed to seek leave of the court to file the sur-reply brief. 2020 U.S. Dist. LEXIS 78 at *7-8 (W.D. Tex. Jan. 2, 2020) (granting motion to strike the plaintiff's sur-reply brief submitted in opposition to the defendant's motion for summary judgment since "[the plaintiff] did not seek the Court's leave before filing her sur-reply, and because she is not opposed to the relief Meridell seeks").

times when analyzing Defendants' scienter.  Order at 52 ("Redman personally signed the IPO Lock-Up Agreement representing that he had not encumbered his ProPetro shares and that he would not do so for 180 days following the IPO."); Order at 53 ("While Redman's alleged violations of the IPO Lock-Up Agreement and internal policies concerning Redman's share pledge 'certainly benefit[ed] himself,' they 'also benefitted [ProPetro] in its efforts to bolster its perception in the eyes of investors'"); Order at 53 ("Because Plaintiffs allege Redman failed to disclose share pledges to inflate the price of stock for his own financial benefit, and since Redman was involved in formulating ProPetro's internal controls and disclosure policies to the market, knowledge of Redman as CEO as to his share pledges can be imputed to ProPetro.").

Second, the allegations in Sections IV.C(2)(b) ("Statements Concerning Related-Party Transactions" in Forms 10-Q) and IV.C(3)(b) ("Statements Concerning Related-Party Transactions" in Forms 10-K), which Defendants seek to strike, were sustained by the Court's Order in so far as the false and misleading statements alleged were made after the transactions occurred.  Order at 37-38.

Third, Defendants seek to strike Section IV.C(4) ("Materially False and Misleading Statements in ProPetro's August 16, 2017 Form 8-K") "relating solely to non-disclosure of Clarabby transactions" (Mot. at 5), but the Court's Order only completely dismissed false statements related to Denholm's moonlighting at PBEX, not the Clarabby Transactions.  Order at 48 ("The Court finds that the failure to disclose Denholm's involvement with the Clarabby Transactions is actionable based on the allegations in the Complaint only to the extent the conduct occurred prior to the IPO and secondary offerings.").

Fourth, Defendants seek to strike Section V.B(2) ("Materially False and Misleading Statements Concerning Related-Party Transactions" under Securities Act), but, as discussed

9

above, the Court's Order limited the Section 11 claims in the same manner as the related-party transaction allegations supporting the Exchange Act claims.

Fifth, Defendants request the Court to strike the majority of Section IV.C(5) ("Materially False and Misleading Statements in ProPetro's Proxy Statements").  However, paragraphs 288, 289, and 291 of this section were explicitly referenced by the Court when sustaining statements in the quarterly and annual filings concerning related-party transactions, Order at 37, and the Court explicitly referenced Redman's share pledges as an omission and referenced his furnishing of information for the proxy statements when concluding he acted with scienter.  Order at 52.

Because the aforementioned allegations support live claims, Defendants cannot possibly establish they "possess no possible relation to the controversy" and are either "redundant, immaterial, impertinent, or scandalous" as required by Rule 12(f).  *See Gilchrist*, 321 F.R.D. at 301-02.

### 4.   Defendants' Motion Is An Inappropriate Effort To Relitigate the Motions to Dismiss

The Court's Order already operates to remove from this dispute the allegations it dismissed, absent a reversal on appeal.  Thus, Defendants' Motion serves no legitimate purpose.  Rather, Defendants are seeking to relitigate the motions to dismiss in an attempt to expand the scope of claims dismissed by the Court's Order.

In order to achieve this result, Defendants are forced to ignore the Court's considered analysis, and instead focus on a single paragraph in the Conclusion section of the Court's Order that they contend limits all of Plaintiffs' claims regarding related-party transactions, as well as regarding improper expense reimbursements, "to the extent the alleged conduct occurred (if at all) prior to the IPO and secondary offerings (*i.e.*, no later than May 10, 2018)."  Mot. at 3-4.  This is a distortion of the Order's Conclusion which, when considered with the entirety of the opinion,

10

can only logically be interpreted as applying the temporal limitations described above to false statements and omissions concerning (a) the improper expense reimbursements received by Redman and Smith (Order at 41), (b) the Clarabby transactions (Order at 48), and (c) statements concerning Defendant Armour (Order at 51). To read the limitation expressed in the Order's Conclusion as applying to *any* false statement or omission concerning *any* related-party transactions would contradict the analysis contained in the Court's Order, and would nullify the specific findings set out on page 38 of the Order, which explicitly deny Defendants' motions to dismiss concerning related-party transactions in Defendants' annual and quarterly filings, without temporally limiting the sustained statements to those made prior to the IPO and secondary offerings. *See* Order at 38.

Defendants also distort the Order's Conclusion by contending that the Order "dismisses Section 10(b) and Rule 10b-5 claims with respect to false statements relating to the following alleged related-party transactions: 'PBEX, PT Petroleum, and the Clarabby Transactions.'" Mot. at 3-4. That is incorrect. As discussed above, the Court's analysis in the Order temporally limited allegations regarding the Clarabby transactions, but otherwise held them to be actionable. Thus, the Order's Conclusion was not a wholesale dismissal of all claims alleging false statements related to the Clarabby transactions. Further, Defendants leave out of this selective quotation that the Order granted the motions to dismiss with respect to these categories of statements "for the reasons stated above," referring to the entirety of the opinion, in the Order. Order at 64-65. Thus, the Conclusion must be read in conjunction with the whole of the allegations concerning PBEX, PT Petroleum and the Clarabby Transactions, which are pertinent to this litigation and cannot be stricken under Rule 12(f).

At bottom, Defendants are attempting to expand the Court's Order to encompass a broader dismissal than what the Court actually decided. Because the Court's Order already serves the purpose of dismissing claims or allegations that it deemed insufficiently pled, striking those claims or allegations is procedurally improper and practically unnecessary.[5] *Cf. Brown v. Aetna Life Ins. Co.*, 2013 WL 3442042, at \*4 (W.D. Tex. July 8, 2013) (holding plaintiff's request for extracontractual and punitive damages could not be stricken under Rule 12(f) since it "would create 'redundancies within the Federal Rules of Civil Procedure, because a Rule 12(b)(6) motion ... already serves such a purpose'"). Plaintiffs cannot pursue any dismissed claims absent a reversal on appeal, rendering Defendants' Motion wholly unwarranted. *See Idstrom*, 2019 WL 8301685, at \*1 (denying defendants' motion to strike allegations from the pleadings following a motion to dismiss since "Plaintiff did not resubmit any claims and will be precluded from reasserting the dismissed claims at trial by the order of dismissal").

## B. Defendants' Requested Relief Would Prejudice Plaintiffs' Appellate Rights

While Plaintiffs are not currently seeking any appeal of the Court's Order, granting Defendants' Motion would create a risk that Plaintiffs would be precluded from appealing the dismissal of any allegations that are stricken from the Complaint. The Fifth Circuit has held "[a]n amended complaint supersedes the original complaint and renders it of no legal effect," *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (declining to consider original verified complaint as

---

[5] Defendants' Motion should be denied for the additional reason that it is untimely. Rule 12(f)(2) prescribes that "[t]he Court may act on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. Pr. 12(f)(2). The procedural posture now is well past the 21 days after Defendants were served with the Complaint on July 30, 2020. This timing reinforces that the current Motion is a transparent effort to relitigate the motions to dismiss. Moreover, Defendants appear to be using the Motion as a mechanism to avoid serving and filing their Answers to the Complaint, which were due on October 27, 2021.

12

competent summary judgment evidence since it was superseded by amended complaints).  In addition, the failure to assert a claim in an amended complaint renders it waived on appeal.  *See Gonzalez v. Aztex Advantage*, 547 Fed. Appx. 424, 428 n.8 (5th Cir. 2013) (holding claim was waived where plaintiff "did not seek to reassert it" in an amended complaint).  Here, striking dismissed claims from the Third Amended Complaint could be construed by the Fifth Circuit as those allegations having never been asserted by Plaintiffs in any pleading, thus making an appeal impossible.

Further, even if Plaintiffs were allowed to appeal an order that grants Defendants' Motion, such appeal would be reviewed under Rule 12(f)'s abuse of discretion standard of review, rather than the more favorable *de novo* standard of review that applies to Rule 12(b)(6).  *Cf. Brown v. Aetna Life Ins. Co.*, 2013 WL 3442042, at *4 (W.D. Tex. July 8, 2013) (quoting *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (holding a claim for extracontractual and punitive damages cannot be challenged with a motion to strike under Rule 12(f) since "'Rule 12(f) motions are reviewed for 'abuse of discretion,' whereas 12(b)(6) motions are reviewed de novo,' which would allow a party to obtain a procedural advantage on appeal simply by filing an otherwise identical motion under a different label.").  Defendants should not be permitted to impair or eliminate Plaintiffs' appellate rights and thereby game the system in this manner.

### III.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Strike should be denied.

Dated: November 5, 2021

By:  */s/ James A. Harrod*

**BERNSTEIN LITOWITZ BERGER &
     GROSSMANN LLP**
Jeroen van Kwawegen
James A. Harrod
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jeroen@blbglaw.com
jim.harrod @blbglaw.com


**GRANT & EISENHOFER P.A.**
Daniel L. Berger
Caitlin M. Moyna
485 Lexington Avenue
New York, NY 10017
Telephone: (646) 722-8500
Facsimile: (646) 722-8501
dberger@gelaw.com
cmoyna@gelaw.com
jpark@gelaw.com

*Counsel for Plaintiffs and Lead Counsel for
the Class*

**MARTIN & DROUGHT, P.C.**
Gerald T. Drought
State Bar No. 06134800
Federal Bar No. 8942
Frank B. Burney
State Bar No. 03438100
Bank of America Plaza, 25th Floor 300
Convent Street San Antonio, Texas 78205
Telephone: (210) 227-7591
Facsimile: (210) 227-7924
gdrought@mdtlaw.com
fburney@mdtlaw.com

*Liaison Counsel for Plaintiffs*

14

**CLARK HILL PLC**
Ronald A. King
212 E. Cesar Chavez Ave
Lansing, MI 48906
Telephone: (517) 318-3015
Facsimile: (517) 318-3068
rking@clarkhill.com

*Counsel for Plaintiff Police and Fire*
*Retirement System of the City of Detroit*

15

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2021, I electronically filed the foregoing by using the court's CM/ECF system, which caused an electronic copy of this document to be served on all counsel of record in this matter.

By:     */s/ James A. Harrod*  
James A. Harrod
