**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **NYKREDIT PORTEFØLJE ADMINISTRATION A/S, OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM, OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, OKLAHOMA CITY EMPLOYEE RETIREMENT SYSTEM, POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, Individually and on behalf of all others similarly situated,** | § § § § § § § § § § § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | **MO:19-CV-217-DC** |
| **PROPETRO HOLDING CORP., DALE REDMAN, JEFFREY SMITH, IAN DENHOLM, and SPENCER D. ARMOUR III,** | § § § § § § | |
| *Defendants.* | § | |

**DEFENDANT IAN DENHOLM'S ORIGINAL ANSWER
TO PLAINTIFFS' THIRD AMENDED COMPLAINT**

Comes now Defendant Ian Denholm ("Denholm")[1] who files this Original Answer to Plaintiffs' Third Amended Class Action Complaint (the "Complaint") (Doc. 81). In support thereof, Denholm respectfully shows as follows.[2]

1.    Denholm admits that Plaintiffs assert the Complaint. Denholm is without information sufficient to form a belief as to the remaining allegations in Paragraph 1.

---

[1] Denholm incorporates the defined terms set forth in the Complaint.

[2] For clarity, Denholm uses the Complaint's captions and headings. Denholm utilizes the captions and headings solely for ease of reference. Denholm in no way admits the truth of any allegation contained in the captions or headings.

2.      Denholm is without information sufficient to form a belief as to the allegations in Paragraph 2.

3.      Denholm admits that Plaintiffs assert a putative federal securities class action on behalf of themselves and others against Defendants and premise their claims on the cited statutes and rules. Denholm denies the remaining allegations in Paragraph 3.

## I.      PRELIMINARY STATEMENT – EXCHANGE ACT CLAIMS ONLY

4.      The Court struck the allegations in Paragraph 4 regarding Denholm's alleged moonlighting. (Doc. 116). The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). The allegations concerning related-party transactions in this Paragraph do not concern ProPetro's controls made prior to the IP and Secondary Offering documents. Consequently, to the extent the allegations concern the PT Petroleum and Clarabby Transactions, no response is required by Denholm.   Denholm further asserts that he cannot identify the "millions in improper transactions" because this language is too vague, rendering admission or denial impossible. Denholm denies any remaining allegations in Paragraph 4.

5.      Plaintiffs' allegations in Paragraph 5 purport to quote or summarize statements in certain documents by ProPetro and/or the Individual Defendants.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm asserts that the assertion that certain SEC filings were signed by "Defendants Redman, Smith, Denholm, or Armour," is vague and indecipherable, rendering admission or denial impossible, because it fails to identify a specific statement or statements that Denholm himself is

alleged to have signed. Denholm is without information sufficient to form a belief as to the remaining allegations in Paragraph 5.

6. Denholm denies the allegations in the first sentence of Paragraph 6. The second sentence of Paragraph 6 purports to selectively quote and characterize the Company's Form 8-K, dated November 13, 2019. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.

7. Denholm denies the allegations in Paragraph 7.

8. The Court struck the allegations in Paragraph 8 regarding Denholm's alleged moonlighting. (Doc. 116). The Court also struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Therefore, to the extent the related-party transaction allegations in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents, Denholm does not respond to the allegations. Similarly, the Court struck all allegations relating to the expense reimbursements of Redman and Smith except to the extent that they occurred prior to the IPO and Secondary Offering. *Id.* Consequently, to the extent the reimbursement allegations in this Paragraph do not relate to reimbursements to Redman and Smith regarding ProPetro's controls made prior to IPO and Secondary Offering documents, Denholm does not respond to the allegations. Paragraph 8 also purports to characterize the Company's Forms 8-K, filed July 12, 2019, August 8, 2019, August 31, 2019, October 9, 2019, and November 13, 2019; and Form 10-K, filed June 22, 2020. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation to the extent it is consistent with those

documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm denies the remaining allegations in Paragraph 8.

9.      The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Therefore, to the extent the related-party transaction allegations in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents, Denholm does not respond to the allegations. Therefore, Denholm does not respond to this allegation. Paragraph 9 purports to characterize the Company's Forms 8-K, filed July 12, 2019, August 8, 2019, August 31, 2019, October 9, 2019; and November 13, 2019; and Form 10-K, filed June 22, 2020. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm is without information sufficient to form a belief as to the remaining allegations in Paragraph 9, including the assertion that ProPetro has disclosed improper or undisclosed related party transactions "totaling approximately $60 million" because the allegation is vague and fails to identify the transactions it includes.

10.      The Court struck all allegations relating to the expense reimbursements of Redman and Smith except to the extent that they occurred prior to the IPO and Secondary Offering. (Doc. 116). Consequently, to the extent the reimbursement allegations in this Paragraph do not relate to reimbursements to Redman and Smith regarding ProPetro's controls made prior to IPO and Secondary Offering documents, Denholm does not respond to the allegations. Paragraph 10 purports to characterize the Company's Forms 8-K, filed July 12, 2019, August 8, 2019, August

31, 2019, October 9, 2019, and November 13, 2019; and Form 10-K, filed June 22, 2020. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm is without information sufficient to form a belief as to the assertion that the 26 percent decrease in the value of ProPetro shares on or about August 9, 2019, was "[a]s a result of [the] news" summarized in Paragraph 10, or that any particular part of the facts alleged in Paragraph 10 had any particular effect on the stock's value. Denholm denies the remaining allegations in Paragraph 10.

11.     Paragraph 11 purports to characterize the Company's Form 8-K, filed August 31, 2019, as well as historical stock price data. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm is without information sufficient to form a belief as to the assertion that the stock movement in the value of ProPetro shares on or about August 30, 2019, was a result of the "news" regarding the resignation of Howell. Denholm denies the remaining allegations in Paragraph 11.

12.     Paragraph 12 purports to characterize media reports and historical stock price data. As to those assertions, Denholm refers to the media reports and documents cited therein, and admits the allegation to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm is without information sufficient to form a belief as to the remaining allegations in Paragraph 12, including the assertion that any movement in the value of ProPetro shares on or about October 18, 2019, was a result of news stories regarding an SEC investigation into ProPetro; or that unspecified "news stories" "revealed" the particular facts alleged.

13.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm.   Paragraph 13 also purports to characterize a report. As to those assertions, Denholm refers to the report cited therein, and admits the allegation to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in Paragraph 13 of the Complaint.

14.    Plaintiffs' allegations in Paragraph 14 purport to quote or summarize statements in certain documents, statements, and/or announcements by ProPetro and/or the Individual Defendants, including the Company's Form 10-K, dated June 22, 2020, as well as historical stock price data.  As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents.  Denholm is without information sufficient to form a belief as to the assertion that Redman hid his stock pledges from the Company "by capitalizing on ProPetro's weak controls." Denholm is without information sufficient to form a belief as to the allegation that any movement in the value of ProPetro stock was s, in whole or in part, "in response to the March 16, 2020 disclosures."  Denholm denies the remaining allegations in Paragraph 14.

15.    Plaintiffs' allegations in Paragraph 15 purport to quote or summarize statements in certain documents, statements, and/or announcements by ProPetro and/or the Individual

Defendants, including the Company's Form 10-K, dated June 22, 2020.  As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents.  To the extent the allegations concern the PT Petroleum and Clarabby transactions, they have been struck by the Court's order except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering document were materially false or misleading." (Doc. 116).  Consequently, to the extent the related-party transaction allegations in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents, Denholm is not required to respond to the allegations.  Denholm denies the remaining allegations in Paragraph 15.

16.     Plaintiffs' allegations in Paragraph 16 purport to quote or summarize statements in certain documents, statements, and/or announcements by ProPetro and/or its auditor, including the Company's Form 10-Q, filed July 2, 2020.  As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents.   Denholm admits that ProPetro took steps to implement additional internal controls in 2020.  Denholm is without information sufficient to form a belief as to the remaining allegations in Paragraph 16, including the allegation that ProPetro's control deficiencies remained un-remediated—either today or as of the filing of the Third Amended Complaint on July 30, 2020.

17.     The Court struck the allegations in Paragraph 17 regarding PBEX.  (Doc. 116). Therefore, Denholm does not respond to allegations concerning PBEX. The Court also struck all

allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." *Id.* Consequently, to the extent the related-party transaction allegations in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents, Denholm does not respond to the allegations. Plaintiffs' remaining allegations in Paragraph 17 purport to characterize statements in certain documents, statements, and/or announcements by ProPetro. As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents. Denholm admits that Diamondback Energy has at times been a customer of ProPetro and that Armour serves on the board of Viper Energy. Denholm denies the remaining allegations in Paragraph 17.

18. The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Therefore, to the extent the related-party transaction allegations in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents, Denholm does not respond to the allegations. Plaintiffs' remaining allegations in Paragraph 18 purport to quote or summarize statements in certain documents, statements, and/or announcements by ProPetro and/or its auditor, including the Company's Form 10-K, filed June 22, 2020. As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those

documents.   Denholm admits that Armour held the alleged position at ProPetro.   Denholm is without information sufficient to form a belief as to the remaining allegations in Paragraph 18, including the value of those transactions or whether they constituted related-party transactions.

19.    The Court struck allegations relating to the Audit Committee's independence. (Doc. 116). This Paragraph contains allegations relating solely to the Audit Committee's Independence and, therefore, no response is required. To the extent Denholm is required to affirm or deny the allegations in Paragraph 19:  Plaintiffs' allegations in Paragraph 19 purport to quote or summarize statements in certain documents, statements, and/or announcements by ProPetro and/or its auditor, including the Company's Forms 8-K, filed July 12, 2019, August 1, 2019, and August 8, 2019; and its Form 10-K, filed June 22, 2020.  As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents.  Denholm admits that the internal investigation was conducted by Deloitte and Brown Rudnick, and that the investigation incurred fees, though Denholm is without information sufficient to form a belief as the precise amount of the fees.  Denholm denies the remaining allegations in Paragraph 19, including the allegation that ProPetro's disclosures regarding the Company's Audit Committee investigation of the facts underlying this lawsuit were "murky" or "exemplified" ProPetro's "failure to set the appropriate 'tone at the top,'" that the Company's investigation lacked independence, and that the origin of the Company's internal investigation is unexplained or mysterious.

20.    Denholm denies the allegations in the first sentence of Paragraph 20, except admits that the Company implemented remediation efforts to address material weaknesses in its internal controls, including adopting and implementing new policies and procedures.  Denholm denies the

remaining allegations in the first sentence of Paragraph 20, including that  ProPetro's investigation exposed "pervasive misconduct," or that the measures deployed by ProPetro during and/or after the investigation are an admission or result of misconduct.  Denholm admits the allegations in the second sentence of Paragraph 20.

21.    Denholm denies the allegations in Paragraph 21, except he admits Plaintiffs have filed this action.

## II.    JURISDICTION AND VENUE

22.    Denholm admits that the purported claims in this lawsuit arise under the statutes and regulations cited in Paragraph 22, while denying the remaining allegations in the Paragraph, including the substance of those claims to the extent set forth herein.

23.    Denholm admits that Plaintiffs purport to premise jurisdiction over the subject matter of this action on the statutes cited in Paragraph 23, but otherwise denies the allegations in Paragraph 23.

24.    Denholm admits that plaintiffs purport to premise venue over the subject matter of this action on the statutes they cite in Paragraph 24, that plaintiffs have made a number of allegations related to acts and transactions that occurred in this District, and that ProPetro maintains its corporate headquarters and principal executive offices in this District.  Denholm denies the remaining allegations in Paragraph 24.

25.    Denholm is without information sufficient to admit or deny whether other Defendants used the means and instrumentalities of interstate commerce. Further, because Plaintiffs fail to specify the specific "acts" referred to in this Paragraph, Denholm is without information sufficient to admit or deny whether he used the means and instrumentalities of interstate commerce.

**DENHOLM'S ORIG. ANS. TO PL.'S THIRD AM. COMPLAINT**                    **PAGE 10**

### III.    THE PARTIES

#### A.  Plaintiffs

26.     Denholm lacks information sufficient to form a belief as to the allegations in Paragraph 26, except that he denies that NPA suffered damages as a result.

27.     Denholm lacks information sufficient to form a belief as to the allegations in Paragraph 27.

28.     Denholm lacks information sufficient to form a belief as to the allegations in Paragraph 28.

29.     Denholm lacks information sufficient to form a belief as to the allegations in Paragraph 29.

30.     Denholm lacks information sufficient to form a belief as to the allegations in Paragraph 30.

31.     Denholm lacks information sufficient to form a belief as to the  allegations in Paragraph 31, except denies that Oklahoma Firefighters, Oklahoma Law Enforcement, Oklahoma Police, and Oklahoma City suffered damages as a result of the alleged conduct, and denies that the IPO Public Offering Documents were materially false or misleading.  Further, the Court struck all allegations that statements in ProPetro's filings were misleading on any grounds other than its statement about its internal and disclosure controls. (Doc. 116). As such, there is no need for Denholm to respond to the general allegations relating to the alleged misleading statements referenced in this Paragraph.

32.     Denholm lacks information sufficient to form a belief as to the allegations in Paragraph 32, except denies that Detroit PFRS suffered damages as a result of the alleged conduct.

33.     Denholm admits the allegations in Paragraph 33.

## B. Exchange Act Defendants

34.     Denholm admits the allegations in Paragraph 34.

35.     The Court struck all allegations relating to the expense reimbursements of Redman except to the extent that they occurred prior to the IPO and Secondary Offering. *Id.* Consequently, to the extent the reimbursement allegations in this Paragraph do not relate to reimbursements to Redman regarding ProPetro's controls made prior to IPO and Secondary Offering documents, Denholm does not respond to the allegations.  To the extent a response is required: Denholm admits the allegations in the first, second, and third sentences of Paragraph 35. Denholm is without information sufficient to form a belief as to the assertion that "Redman took advantage of ProPetro's inadequate internal controls, improperly obtained approximately $346,000 in cash from the Company for personal expenses and received over $428,000 in undisclosed compensation in 2017 and 2018 alone," and that "Redman also twice pledged his shares in ProPetro stock as collateral for personal loans in violation of the Company's code of conduct and insider trading compliance policy, among other agreements."  Denholm admits the remaining allegations in Paragraph 35.

36.     The Court struck all allegations relating to the expense reimbursements of Smith except to the extent that they occurred prior to the IPO and Secondary Offering. *Id.* Consequently, to the extent the reimbursement allegations in this Paragraph do not relate to reimbursements to Smith regarding ProPetro's controls made prior to IPO and Secondary Offering documents, Denholm does not respond to the allegations.  To the extent a response is required:  Denholm admits the allegations in the first sentence of Paragraph 36; admits that Smith was reassigned as Special Advisor to the Chief Executive Officer in March 2020; and admits Smith received over $15,000 in compensation in 20178 and 2018 which was not disclosed at the time.  Denholm denies

the remaining allegations in the Paragraph, except that Denholm is without information sufficient to form a belief as to the assertion that Jeffrey Smith "took advantage of ProPetro's inadequate internal controls" or "improperly obtained approximately $18,000 in cash from the Company for personal expenses[.]"

37.    The Court struck the allegations in Paragraph 8 regarding PBEX.  (Doc. 116). The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." *Id.* Consequently, to the extent the allegations concerning the PT Petroleum and Clarabby Transactions in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm.  Denholm admits he was the Director of Finance at ProPetro from 2013 to 2017 and was the CAO of ProPetro from August 2017 until his resignation in October 2019. Denholm otherwise denies the remaining allegations in the Paragraph.

38.    The Court struck all allegations relating to the PT Petroleum Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." *Id.* Consequently, to the extent the allegations concerning the PT Petroleum Transactions in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. To the extent a response is required:  Denholm admits the allegations in the first and second sentences of Paragraph 38, and admits that Armour served as president of PT Petroleum between April 2013 and January 2019.  Denholm is without information sufficient to form a belief as to the assertion

that "Armour engaged in improper, undisclosed related-party transactions valued at approximately $55.7 million," in that he lacks sufficient information regarding the value of the transactions at issue, their propriety, or their status as "related-party" transactions. Denholm denies the remaining allegations in Paragraph 38.

39.     The first sentence of Paragraph 39 purports to characterize the Complaint, which speaks for itself and to which no response is required. Denholm denies that he personally "directly participated in . . . [ProPetro's] public reporting functions" and/or "had the ability to, and did control, ProPetro's conduct" as a general matter. Denholm admits the remaining allegations in Paragraph 39.

40.     Paragraph 40 purports to characterize the Complaint, which speaks for itself and to which no response is required.

## IV.    EXCHANGE ACT CLAIMS

### A.  Background and Summary of the (Alleged) Fraud

#### 1.  ProPetro's Business and Operations

41.     Denholm admits the allegations in Paragraph 41, except denies that Redman is ProPetro's current CEO and that Smith is its current Chief Administrative Officer.

42.     Plaintiffs' allegations in Paragraph 42 purport to quote or summarize the Company's IPO prospectus and announcements. As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents.

43.     Plaintiffs' allegations in Paragraph 43 purport to quote or summarize the Company's IPO Registration Statement, form S-1, andIPO Registration Statement Amendments.

As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents.

44.    Plaintiffs' allegations in Paragraph 44 purport to quote or summarize the Company's IPO prospectus, IPO Registration Statement, IPO Registration Statement Amendments, Underwriting Agreement and IPO Offering Documents.    As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents.

45.    Plaintiffs' allegations in Paragraph 45 purport to quote or summarize the Company's Underwriting Agreement and "IPO Lock-Up Agreement."    As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents.

46.    Plaintiffs' allegations in Paragraph 46 purport to quote or summarize the Company's IPO prospectus.  As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents.

47.    Plaintiffs' allegations in Paragraph 47 purport to quote or summarize the Company's IPO prospectus.  As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those

**DENHOLM'S ORIG. ANS. TO PL.'S THIRD AM. COMPLAINT**                    **PAGE 15**

documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents.

48.     Plaintiffs' allegations in Paragraph 48 purports to quote or summarize the Company's IPO prospectus.  As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents.

49.     Plaintiffs' allegations in Paragraph 49 purport to quote or summarize the Company's IPO prospectus and other disclosures.  As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents.

50.     Plaintiffs' allegations in Paragraph 50 purport to quote or summarize the Company's IPO prospectus.  As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents.

51.     Plaintiffs' allegations in Paragraph 51 purport to quote or summarize industry analyst reports.  As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents.

**2. Throughout the Class Period, Investors Focused on ProPetro's Leadership Team and Their Longstanding Relationship as Fundamental to the Company's Rapid Success.**

52. Denholm asserts that the phrase "ProPetro lends its success and its consistent full-fleet utilization to its longstanding customer relationships in the Permian Basin, many of which operate on a 'handshake' basis without the formality of typical contracts with rigid pricing terms" is vague and indecipherable, and thus is impossible to admit or deny, including because it is not clear how ProPetro might "lend" success to "its longstanding customer relationships" or what precise dynamic Plaintiffs are asserting with this language; and because it is not clear whether Plaintiffs are asserting that ProPetro clients operate "on a handshake basis," or that ProPetro does so; or both. Denholm admits the remaining allegations in Paragraph 52.

53. Plaintiffs' allegations in Paragraph 53 purport to quote or summarize the Company's conference call with investors on August 9, 2017, and an August 8, 2017, press release. As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

54. Plaintiffs' allegations in Paragraph 54 purport to quote or summarize the Company's conference call with investors on November 2, 2017. As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

55.    Plaintiffs' allegations in Paragraph 55 purport to quote or summarize the Company's Form 10-Ks for fiscal years 2018 and 2019.  As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents.  Denholm otherwise denies the allegations in the Paragraph.

56.    Denholm is without information sufficient to form a belief as to the allegations in Paragraph 56.

57.    Denholm is without information sufficient to form a belief as to the allegations in Paragraph 57.

58.    Plaintiffs' allegations in Paragraph 58 purport to quote or summarize a Credit Suisse report dated May 11, 2017.  As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents.  Denholm otherwise denies the allegations in the Paragraph.

59.    Plaintiffs' allegations in Paragraph 59 purport to quote or summarize a Credit Suisse reports dated May 11, 2017, and August 10, 2017.  As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents.  Denholm otherwise denies the allegations in the Paragraph.

60.    Denholm is without information sufficient to form a belief as to the allegations in Paragraph 60, including as to how "the market valued" various aspects of ProPetro's business.

61.    Denholm is without information sufficient to form a belief as to the allegations in Paragraph 61.

### 3. Defendants Were Required to Maintain Adequate Internal and Disclosure Controls and to Disclose Material Related-Party Transactions.

62.    Paragraph 62 purports to characterize certain laws, rules, or regulations.  Denholm is without information sufficient to form a belief as to the allegations in Paragraph 62, including Plaintiffs' assertions regarding the historical and/or hypothetical effect and/or impact of related-party transactions; and those regarding the subjective intent and/or priorities of Congress, SEC regulators, and/or accounting bodies when enacting certain unidentified laws, regulations, and/or accounting rules. Denholm respectfully refers the Court to the referenced laws, rules, and regulations for their contents and denies any allegation inconsistent therewith. Denholm otherwise denies the allegations in the Paragraph.

63.    Paragraph 63 purports to characterize certain laws, rules, or regulations.  Denholm denies the allegation in Paragraph 63 that the "disclosure controls and procedures" referenced in Paragraph 63 refer specifically to a duty to convey "information" to a Company's "CAO [Chief Accounting Officer]" in particular, or that they impose any duty upon a Company to specifically provide the information referenced in Paragraph 63 to the Chief Accounting Officer of a Company. As to the remaining allegations in the Paragraph, Denholm respectfully refers the Court to the referenced laws, rules, and regulations for their contents and denies any allegations inconsistent therewith.   Denholm otherwise denies the allegations in the Paragraph.

64.    Paragraph 64 purports to characterize certain laws, rules, or regulations.  Denholm is without information sufficient to form a belief as to the accuracy of Plaintiffs' characterization. Denholm respectfully refers the Court to the referenced laws, rules, and regulations for their

contents and denies any allegations inconsistent therewith. Denholm otherwise denies the allegations in the Paragraph.

65.    Paragraph 65 purports to characterize certain laws, rules, or regulations. Denholm is without information sufficient to form a belief as to the accuracy of Plaintiffs' characterization, and respectfully refers the Court to the reference laws, rules, and regulations for their contents, denying any allegations inconsistent therewith. Additionally, Denholm denies that the statutes, regulations, and industry standards alluded to in Paragraph 65 specifically require any action— including certification of controls, disclosure of related-party transactions, and/or maintaining controls—from Denholm specifically, or from the Chief Accounting Officer of a Company by virtue of holding that title or position. Regardless, the Court struck all allegations relating to the Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the Clarabby Transactions in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. Denholm otherwise denies the allegations in the Paragraph.

66.    Paragraph 66 purports to characterize certain laws, rules, or regulations. Denholm is without information sufficient to form a belief as to the accuracy of Plaintiffs' characterization, and respectfully refers the Court to the reference laws, rules, and regulations for their contents, denying any allegations inconsistent therewith. Denholm otherwise denies the allegations in the Paragraph.

67.    Paragraph 67 purports to characterize certain laws, rules, or regulations, in particular Section 302 of the Sarbanes-Oxley Act of 2002. Denholm is without information

sufficient to form a belief as to the accuracy of Plaintiffs' characterization, and respectfully refers the Court to the reference laws, rules, and regulations for their contents, denying any allegations inconsistent therewith. Denholm otherwise denies the allegations in the Paragraph.

68. Paragraph 68 purports to characterize certain laws, rules, or regulations, in particular Section 404 of the Sarbanes-Oxley Act of 2002. Denholm is without information sufficient to form a belief as to the accuracy of Plaintiffs' characterization, and respectfully refers the Court to the reference laws, rules, and regulations for their contents, denying any allegations inconsistent therewith. Denholm otherwise denies the allegations in the Paragraph.

69. Paragraph 69 purports to characterize the PCAOB's Accounting Standards. Denholm is without information sufficient to form a belief as to the accuracy of Plaintiffs' characterization, and respectfully refers to the Court to the PCAOB Accounting Standards for their contents, denying any allegations inconsistent therewith. Denholm is without information sufficient to form a belief as to the accuracy of the ProPetro "representations" alluded to in Paragraph 69, because Plaintiffs do not specifically identify those statements but rather describe them holistically and generically, rendering the allegation vague and indecipherable and making it impossible to discern what statements in particular they are targeting. To the extent that any such statements are identified, Denholm denies that "Defendants have admitted that [all] representations" by ProPetro regarding the reliability of the information, "both financial and non-financial, reported in ProPetro's SEC filings" were "false." Denholm further denies that he, personally, made or participated in some or all of the unspecified "representations that ProPetro's controls were adequate" referenced in Paragraph 69; therefore, he denies that they were "Defendants' representations" as that phrase applies to him. Denholm denies the remaining allegations in Paragraph 69.

70.     Paragraph 70 purports to characterize certain laws, rules, or regulations, in particular Item 307 of SEC Reg. S-K.  Denholm is without information sufficient to form a belief as to the accuracy of Plaintiffs' characterization, and respectfully refers the Court to the referenced laws, rules, and regulations for their contents, denying any allegations inconsistent therewith. Denholm otherwise denies the allegations in the Paragraph.

71.     Paragraph 71 purports to characterize certain laws, rules, or regulations, in particular Item 308 of SEC Reg. S-K.  Denholm is without information sufficient to form a belief as to the accuracy of Plaintiffs' characterization, and respectfully refers the Court to the referenced laws, rules, and regulations for their contents, denying any allegations inconsistent therewith. Denholm otherwise denies the allegations in the Paragraph.

72.     Paragraph 72 purports to characterize certain laws, rules, or regulations, in particular the COSO framework.  Denholm is without information sufficient to form a belief as to the accuracy of Plaintiffs' characterization, and respectfully refers the Court to the referenced laws, rules, and regulations for their contents, denying any allegations inconsistent therewith.  Denholm otherwise denies the allegations in the Paragraph.

73.     Paragraph 73 purports to characterize certain laws, rules, or regulations, in particular the COSO Framework, as well as the contents of certain ProPetro Company disclosures. Denholm is without information sufficient to form a belief as to the accuracy of Plaintiffs' characterization, and respectfully refers the court to the referenced laws, rules, and regulations for their contents, denying any allegations inconsistent therewith.  Denholm refers to the Company disclosure cited in Paragraph 73, admitting the allegations regarding ProPetro Company disclosures to the extent it is consistent therewith, while denying them to the extent it is inconsistent therewith.   Denholm denies the remaining allegations in the Paragraph, including

**DENHOLM'S ORIG. ANS. TO PL.'S THIRD AM. COMPLAINT**                                    **PAGE 22**

having himself "emphasized that they evaluated ProPetro's internal controls based on the COSO Framework," and/or having himself "admitted" a lack of internal controls based on the COSO Framework. Denholm otherwise denies the allegations in the Paragraph.

74.     Paragraph 74 purports to characterize certain laws, rules, or regulations, in particular the COSO framework. Denholm is without information sufficient to form a belief as to the accuracy of Plaintiffs' characterization, and respectfully refers the Court to the referenced laws, rules, and regulations for their contents, denying any allegations inconsistent therewith. Denholm otherwise denies the allegations in the Paragraph.

75.     Paragraph 75 purports to characterize certain laws, rules, or regulations, in particular the COSO framework. Denholm is without information sufficient to form a belief as to the accuracy of Plaintiffs' characterization, and respectfully refers the Court to the referenced laws, rules, and regulations for their contents, denying any allegations inconsistent therewith. Denholm otherwise denies the allegations in the Paragraph.

76.     Paragraph 76 purports to characterize certain laws, rules, or regulations, in particular the COSO framework. Denholm is without information sufficient to form a belief as to the accuracy of Plaintiffs' characterization, and respectfully refers the Court to the referenced laws, rules, and regulations for their contents, denying any allegations inconsistent therewith. Denholm otherwise denies the allegations in the Paragraph.

77.     Paragraph 77 purports to characterize certain laws, rules, or regulations, in particular Item 404 of SEC Reg. S-K. Denholm is without information sufficient to form a belief as to the accuracy of Plaintiffs' characterization, and respectfully refers the Court to the referenced laws, rules, and regulations for their contents, denying any allegations inconsistent therewith. Denholm otherwise denies the allegations in the Paragraph.

78.     Paragraph 78 purports to characterize certain laws, rules, or regulations, in particular GAAP.  Denholm is without information sufficient to form a belief as to the accuracy of Plaintiffs' characterization, and respectfully refers the Court to the referenced laws, rules, and regulations for their contents, denying any allegations inconsistent therewith. Denholm otherwise denies the allegations in the Paragraph.

79.     Paragraph 79 purports to characterize certain laws, rules, or regulations, in particular ASC 850.  Denholm is without information sufficient to form a belief as to the accuracy of Plaintiffs' characterization, and respectfully refers the Court to the referenced laws, rules, and regulations for their contents, denying any allegations inconsistent therewith.  Denholm otherwise denies the allegations in the Paragraph.

80.     Paragraph 80 purports to characterize certain laws, rules, or regulations, in particular ASC 850.  Denholm is without information sufficient to form a belief as to the accuracy of Plaintiffs' characterization, and respectfully refers the Court to the referenced laws, rules, and regulations for their contents, denying any allegations inconsistent therewith.   Denholm otherwise denies the allegations in the Paragraph.

81.     Paragraph 81 purports to characterize certain laws, rules, or regulations, in particular the AICPA Professional Standards and GAAP.  Denholm is without information sufficient to form a belief as to the accuracy of Plaintiffs' characterization, and respectfully refers the Court to the referenced laws, rules, and regulations for their contents, denying any allegations inconsistent therewith.  Denholm denies any remaining allegations in the Paragraph, including that he, individually, was responsible for preparing ProPetro financial statements that conform with GAAP.  Denholm otherwise denies the allegations in the Paragraph.

82.     Paragraph 82 purports to characterize certain laws, rules, or regulations and other documents, in particular Sarbanes-Oxley, SEC regulations, GAAP, and the Company's public disclosures.   Denholm is without information sufficient to form a belief as to the accuracy of Plaintiffs' characterization, and respectfully refers the Court to the referenced laws, rules, regulations, and statements for their contents, denying any allegations inconsistent therewith. Denholm denies that he, individually, "repeatedly represented" compliance with the standards cited in Paragraph 82.Denholm otherwise denies the allegations in the Paragraph.

### 4.  Throughout the Class Period, Defendants Represented, and Investors Understood, that ProPetro had Adequate Internal and Disclosure Controls and that All Related-Party Transaction has been Disclosed.

83.     Paragraph 83 purports to characterize the Company's public filings.   As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents.  Denholm denies that he, as an individual, "assured investors that ProPetro had internal controls in place that were adequate to prevent unauthorized related-party transactions and detect self-dealing, and disclosure controls to ensure that to the extent any such material transactions occurred that they would be promptly detected."  Denholm lacks information sufficient to form a belief as to the remaining allegations in the Paragraph, including that the specific representations identified in Paragraph 83 "were critical to investors."  Denholm otherwise denies the allegations in the Paragraph.

84.     Paragraph 84 purports to characterize the Company's public filings.   As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents.  Denholm denies any

remaining allegations in Paragraph 84, including that he, as an individual, made the representations cited in Paragraph 84.

85.    Paragraph 85 purports to characterize the Company's quarterly and annual SEC filings made prior to the IPO and secondary offerings.  As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents.  Denholm denies that Denholm, as an individual, "repeatedly represented and certified the adequacy of ProPetro's internal controls[.]"  Denholm is without information sufficient to form a belief as to the remaining allegations in the Paragraph, including whether these purported "representations . . . were particularly important to investors[.]"  Denholm otherwise denies the allegations in the Paragraph.

86.    Paragraph 86 purports to characterize the Company's quarterly and annual SEC filings made prior to the IPO and secondary offerings.  As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents.  Denholm denies that he, as an individual, "provided" the "reasonable assurance" in quarterly and annual SEC filings to which the first sentence of Paragraph 86 refers.   Denholm otherwise denies the allegations in the Paragraph.

87.    Denholm lacks information sufficient to form a belief as to the allegations in Paragraph 87, including the extent to which investors relied upon the representations alleged in Paragraph 87.

88.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's

controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby Transactions, and similar "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. Similarly, the Court struck all allegations relating to the expense reimbursements of Redman and Smith except to the extent that they occurred prior to the IPO and Secondary Offering. *Id.* Consequently, to the extent the reimbursement allegations in this Paragraph do not relate to reimbursements to Redman and Smith regarding ProPetro's controls made prior to IPO and Secondary Offering documents, Denholm does not respond to the allegations. The Court similarly struck allegations concerning Armour. To the extent Denholm is required to admit or deny the allegations in Paragraph 88:  Plaintiffs' allegations in Paragraph 88 purport to quote or summarize statements in certain documents, statements, and/or announcements by ProPetro and/or the Individual Defendants, including the Company's certifications and Forms 8-K, dated August 8, 2019, November 13, 2019, and March 16, 2020; and Form 10-K, dated June 22, 2020.  As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents. Denholm denies that he, as an individual, has "admitted" anything regarding ProPetro's internal controls.  Denholm denies that ProPetro entered any "related party transaction involving third-party entities owned or controlled by Denholm," and/or that any such transaction is "related" to any material weaknesses in ProPetro's controls. Denholm admits that he did not detect the share pledges by Redman, and did not detect the

improper use of Company funds.  Denholm is without information sufficient to form a belief as to the remaining allegations in Paragraph 88.

### 5. Redman's Share Pledges Were an Active and Knowing Violation of the Company's Internal Controls, Code of Conduct, insider Trading Policies, and Various Agreements.

89.    Plaintiffs' allegations in Paragraph 89 purport to quote or summarize the Company's Form 8-K, filed March 16, 2020.   As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

90.    Plaintiffs' allegations in Paragraph 90 purport to quote or summarize the Company's Form 8-K, filed March 16, 2020.   As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

91.    Plaintiffs' allegations in Paragraph 91 purport to quote or summarize the Company's disclosures.  As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents. Denholm denies that he, as an individual, made many or all of the representations to investors regarding ProPetro's controls to which Paragraph 91 presumably alludes.  Denholm otherwise denies the allegations in the Paragraph.

92.    Plaintiffs' allegations in Paragraph 92 purport to quote or summarize the Company's Code of Ethics and Conduct.   As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

93.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby Transactions, and similar "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. Plaintiffs' allegations in Paragraph 93 purport to quote or summarize the Company's Form 8-K, filed March 16, 2020.   As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents.    Denholm otherwise denies the allegations in the Paragraph.

94.    Plaintiffs' allegations in Paragraph 94 purport to quote or summarize the Company's Form 10-K, filed June 22, 2020.   As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

95. Denholm lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations alleged in Paragraph 95.

96. Plaintiffs' allegations in Paragraph 96 purport to quote or summarize the Company's Code of Ethics and Conduct. As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

97. Plaintiffs' allegations in Paragraph 97 purport to quote or summarize the Company's Code of Ethics and Conduct. As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

98. Plaintiffs' allegations in Paragraph 98 purport to quote or summarize the Company's Code of Ethics and Conduct. As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

99. Plaintiffs' allegations in Paragraph 99 purport to quote or summarize the Company's Code of Ethics and Conduct. As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegation to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

100.    Denholm is without information sufficient to form a belief regarding the assertions in Paragraph 100.

101.    Denholm is without information sufficient to form a belief as to the allegations in Paragraph 101.

102.    Denholm denies the allegations in Paragraph 102.

103.    Denholm denies the allegations in Paragraph 103, except admits that Redman pledged 371,200 shares in January 2017, representing all of his common shares at the time, and 230,000 shares in July 2018, as collateral for two separate personal loans.

104.    Denholm admits that Redman pledged 371,200 shares in January 2017, representing all of his common shares at the time, as collateral for a personal loan from Vista Bank, and that such loan was used to purchase the Preston Ranch. Denholm lacks knowledge or information sufficient to form a belief as to the value of Preston Ranch in January 2017.  Denholm admits the remaining allegations in Paragraph 104.

105.    Plaintiffs' allegations in Paragraph 105 purport to quote or summarize the Company's statements—specifically, the Company's Form 8-K, filed March 16, 2020, and Form 10-K, filed June 22, 2020.  As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegations to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents. Denholm denies that he, as an individual, made many or all of the representations to investors regarding ProPetro's controls to which Paragraph 105 presumably alludes. Denholm denies the remaining allegations in this Paragraph.

106.    Plaintiffs' allegations in Paragraph 106 purport to quote or summarize a document. As to those assertions, Denholm refers to the documents or recorded statements cited therein, and

admits the allegations to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents. Denholm admits the allegations in Paragraph 106, except he denies the negative pledge was executed on October 1, 2018.

107. Plaintiffs' allegations in Paragraph 107 purport to quote or summarize the Company's statements—specifically, the Company's Form 10-K, filed June 22, 2020. As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegations to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents. Denholm admits any remaining allegations in Paragraph 107; except that, Denholm is without information sufficient to form a belief as to whether the share pledges were successfully concealed "as a result of the Company's inadequate controls."

108. Plaintiffs' allegations in Paragraph 108 purport to quote or summarize the Company's statements—specifically, the Company's Form 8-K, filed March 16, 2020; and Form 10-K, filed June 22, 2020. As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegations to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents. Denholm is without information sufficient to form a belief as to the remaining allegations in Paragraph 108.

### 6. ProPetro's Rapid Growth.

109. Denholm admits the Company experienced rapid growth from the first quarter of 2017 through the first quarter of 2019, with a pause in growth during the third and fourth quarters

of 2018.  Denholm denies the remaining allegations in Paragraph 109, including that ProPetro "focused on revenue growth" because it "ben[t] to pressure as a new public company."

110.    Denholm admits the Company's revenue effectively tripled from the first quarter of 2017 through the first quarter of 2019.  Denholm denies that he, as an individual, made the misrepresentations alleged in Paragraph 110.  Denholm is without information sufficient to form a belief as to the remaining allegations in the paragraph, including whether anyone "misrepresented that the Company's legal, compliance, and accounting functions were maintaining the same pace of growth," because this allegation is vague and indecipherable, in that it is unclear what "growing" revenue and "growing" compliance functions at "the same pace" means.

111.    Denholm denies that ProPetro prioritized revenue growth during the Class Period. Denholm denies the remaining allegations in Paragraph 111.

112.    Denholm lacks information sufficient to form a belief as to the allegations in Paragraph 112, including the views of unidentified analysts.

### 7.    ProPetro CAO Denholm's Undisclosed Moonlighting at PBEX.

113.    The Court struck all allegations relating to PBEX. (Doc. 116). Accordingly, there is no need for Denholm to respond to Paragraph 113. Otherwise, Denholm denies the facts alleged in the Paragraph.

114.    The Court struck all allegations relating to PBEX. (Doc. 116). Accordingly, there is no need for Denholm to respond to Paragraph 114. Otherwise, Denholm denies the facts alleged in the Paragraph.

115.    The Court struck all allegations relating to PBEX. (Doc. 116). Accordingly, there is no need for Denholm to respond to Paragraph 115. Otherwise, Denholm denies the facts alleged in the Paragraph.

116.    The Court struck all allegations relating to PBEX. (Doc. 116). Accordingly, there is no need for Denholm to respond to Paragraph 116. Otherwise, Denholm denies the facts alleged in the Paragraph.

117.    The Court struck all allegations relating to PBEX. (Doc. 116). Accordingly, there is no need for Denholm to respond to Paragraph 117. Otherwise, Denholm denies the facts alleged in the Paragraph.

118.    The Court struck all allegations relating to PBEX. (Doc. 116). Accordingly, there is no need for Denholm to respond to Paragraph 118. Otherwise, Denholm denies the facts alleged in the Paragraph.

119.    The Court struck all allegations relating to PBEX. (Doc. 116). Accordingly, there is no need for Denholm to respond to Paragraph 119. Otherwise, Denholm denies the facts alleged in the Paragraph.

120.    The Court struck all allegations relating to PBEX. (Doc. 116). Accordingly, there is no need for Denholm to respond to Paragraph 120. Otherwise, Denholm denies the facts alleged in the Paragraph.

121.    The Court struck all allegations relating to PBEX. (Doc. 116). Accordingly, there is no need for Denholm to respond to Paragraph 121. Otherwise, Denholm denies the facts alleged in the Paragraph.

### 8. ProPetro Has a History of Related-Party Transaction, and Its Senior Executives and Directors Control Several Undisclosed Related Entities.

122. Plaintiffs' allegations in Paragraph 122 purport to quote or summarize the Company's SEC filings. As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegations to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

123. Plaintiffs' allegations in Paragraph 123 purport to quote or summarize the Company's SEC filings. As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegations to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents. Denholm denies any remaining allegations in Paragraph 123 to the extent they assert that ProPetro leased any property from Denholm or from a business owned, in whole or part, by Denholm.

124. Plaintiffs' allegations in Paragraph 124 purport to quote or summarize the Company's SEC filings. As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegations to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

125. Plaintiffs' allegations in Paragraph 125 purport to quote or summarize the Company's SEC filings. As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegations to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

126.    Plaintiffs' allegations in Paragraph 126 purport to quote or summarize the Company's Form 10-K, filed June 22, 2020.  As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegations to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents.  Denholm otherwise denies the allegations in the Paragraph.

127.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. To the extent Denholm is required to admit or deny the allegations in Paragraph 127, Denholm:

- Admits the allegations regarding FloCap Injection Services, LLC in bullet point two of Paragraph 127.

- Denies that the "Jeff Smith" who is a member of Energy Entrepreneur Fund is the same Jeff Smith who is a Defendant in this action; but admits the remaining allegations in bullet point five of Paragraph 127

- Is without information sufficient to form a belief as to the allegations regarding Ener-Coil, LLC in bullet point six of Paragraph 127.

- Is without information sufficient to form a belief as to the allegations regarding South of the Border Materials, LLC in bullet point seven of Paragraph 127.

- Is without information sufficient to form a belief as to the allegations regarding HR Double S, LLC in bullet point eight of Paragraph 127.

- Denies that the "Jeff Smith" who is member of Lore Venture Group is the same Jeff Smith who is a defendant in this action; but admits the remaining allegations in bullet point nine of Paragraph 127.

- Is without information sufficient to form a belief as to the allegations regarding D&J Realty, LLC in bullet point ten of Paragraph 127.

- Is without information sufficient to form a belief as to the allegations regarding Red Hogg, LLC in bullet point eleven of Paragraph 127.

128.    The Court struck Paragraph 128. (Doc. 116). Accordingly, there is no need for Denholm to respond to the Paragraph. Otherwise, Denholm denies the facts alleged in the Paragraph.

129.    The Court struck Paragraph 129. (Doc. 116). Accordingly, there is no need for Denholm to respond to the Paragraph. Otherwise, Denholm denies the facts alleged in the Paragraph.

130.    The Court struck Paragraph 130. (Doc. 116). Accordingly, there is no need for Denholm to respond to the Paragraph. Otherwise, Denholm denies the facts alleged in the Paragraph.

131.    The Court struck Paragraph 131. (Doc. 116). Accordingly, there is no need for Denholm to respond to the Paragraph. Otherwise, Denholm denies the facts alleged in the Paragraph.

9. **ProPetro Conducts Two Subsequent Secondary Offerings While Concealing Internal Control Deficiencies, Related-Party Transactions, and Redman's Improper Share Pledges.**

132.    Plaintiffs' allegations in Paragraph 132 purport to quote or summarize the Company's Forms S-1, filed November 2, 2017 and November 6, 2017. As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegations to the extent it is consistent with those documents and/or recorded statements, while denying the

allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

133. Plaintiffs' allegations in Paragraph 133 purports to quote or summarize the Company's Prospectus and its supplements, Registration Statement, and Registration Statement Amendment. As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegations to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents. Denholm is without information sufficient to form a belief as to the remaining allegations in Paragraph 133.

134. Plaintiffs' allegations in Paragraph 134 purport to quote or summarize the Company's press release, dated May 10, 2018. As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegations to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

135. Plaintiffs' allegations in Paragraph 135 purport to quote or summarize the Company's preliminary prospectus, filed May 10, 2018, and its supplements, filed May 11 and 14, 2018. As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegations to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents. Denholm is without information sufficient to form a belief as to the remaining allegations in Paragraph 135.

136.    Denholm is without information sufficient to form a belief as to allegations in Paragraph 136.

137.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm.  Denholm otherwise denies the allegations in the Paragraph.

138.    Plaintiffs' allegations in Paragraph 138 purport to quote or summarize the Company's 2017 Secondary Offering Prospectus, dated November 6, 2017, and the 2018 Secondary Offering Prospectus Supplement, dated May 14, 2018.  As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegations to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents.  Denholm admits that Redman entered into pledges covering substantial ProPetro shares as collateral for personal loans; but Denholm denies the remaining allegations in Paragraph 138. Denholm otherwise denies the allegations in the Paragraph.

### 10. ProPetro Experiences Major Board Turnover, Replacing its Chairman and Losing two of the Four Members of its Audit Committee.

139.    Plaintiffs' allegations in Paragraph 139 purport to quote or summarize the Company's Form 8-K, filed July 12, 2019.  As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegations to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the

extent it is inconsistent with those documents. Denholm further denies the July 2019 changes to the ProPetro Board and Audit Committee are "unexplained," but admits that the Company made changes to the composition of its Board and Audit Committee in the summer 2019 timeframe. Denholm otherwise denies the allegations in the Paragraph.

140. Plaintiffs' allegations in Paragraph 140 purport to quote or summarize the Company's Form 8-K, filed July 12, 2019. As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegations to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents. Denholm is without information sufficient to form a belief as to the allegation that "Armour is affiliated with certain of ProPetro's undisclosed related entities described above," as the allegation is vague and indecipherable in that it fails to identify the entities at issue. Denholm denies the remaining allegations in Paragraph 140, including that Steven Beal's resignation from the ProPetro Board and Audit Committee is without explanation. Denholm otherwise denies the allegations in the Paragraph.

141. Plaintiffs' allegations in Paragraph 141 purport to quote or summarize the Company's Form 8-K, filed August 1, 2019. As to those assertions, Denholm refers to the documents or recorded statements cited therein, and admits the allegations to the extent it is consistent with those documents and/or recorded statements, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

142. The Court struck all allegations relating to the Audit Committee's independence. (Doc. 116). Paragraph 142 contains only allegations relating to the Audit Committee's

independence and, therefore, Denholm is not required to respond to the allegations. Denholm otherwise denies the allegations in the Paragraph.

### 11. ProPetro Experiences Major Board Turnover, Replacing its Chairman and Losing two of the Four Members of its Audit Committee.

143.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. Similarly, the Court struck all allegations relating to the expense reimbursements of Redman and Smith except to the extent that they occurred prior to the IPO and Secondary Offering. *Id.* Consequently, to the extent the reimbursement allegations in this Paragraph do not relate to reimbursements to Redman and Smith regarding ProPetro's controls made prior to IPO and Secondary Offering documents, Denholm does not respond to the allegations. Therefore, Denholm does not respond to these allegations. Denholm is without information sufficient to form a belief as to the remaining allegations in Paragraph 143, except that Denholm admits that Redman and Smith received "hundreds of thousands of dollars" that have since been repaid to the Company.

144.    Plaintiffs' allegations in Paragraph 144 purport to quote or summarize statements in certain documents by ProPetro and/or the Individual Defendants.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm denies the allegations in the first sentence of Paragraph 144, and

denies the allegation that ProPetro unequivocally "represented to investors that ProPetro had adequate internal and disclosure controls." Denholm otherwise denies the allegations in the Paragraph.

145.    Plaintiffs' allegations in Paragraph 145 purport to quote or summarize statements in certain documents by ProPetro and/or the Individual Defendants. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm denies any remaining allegations in Paragraph 145.

### a. August 8, 2019—ProPetro Discloses an Internal Investigation Into Improper Expense Reimbursements and Related-Party Transactions.

146.    Plaintiffs' allegations in Paragraph 146 purport to quote or summarize statements in certain documents by ProPetro and/or the Individual Defendants, specifically, the Company's Form 8K and press release, filed August 8, 2019. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

147.    Plaintiffs' allegations in Paragraph 147 purport to quote or summarize statements in certain documents by ProPetro and/or the Individual Defendants, specifically, the Company's Form 8-K filed August 8, 2019. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

148.    Denholm admits the allegation that the Audit Committee investigation stemmed from an examination of ProPetro's decision to purchase hydraulic fracturing fleets from AFGlobal. To the extent that the allegations in Paragraph 148 relate to the Audit Committee's Independence, the Court struck these allegations and, therefore, Denholm is not required to respond to them. (Doc. 116).  Denholm is without information sufficient to form a belief as to the remaining allegations in Paragraph 148.

149.    Plaintiffs' allegations in Paragraph 149 purport to quote or summarize statements in certain documents by ProPetro and/or the Individual Defendants, specifically, the Company's Form 8-K filed August 8, 2019.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  To the extent that the allegations in Paragraph 149 relate to the Audit Committee's Independence, the Court struck these allegations and, therefore, Denholm is not required to respond to them. (Doc. 116).  Denholm admits that the Audit Committee examination focused on several transactions involving Redman and Smith, but is without information sufficient to form a belief as to whether and why those transactions are proper or improper.  Denholm otherwise denies the allegations in the Paragraph.

150.    Plaintiffs' allegations in Paragraph 150 purport to quote or summarize statements in certain documents by ProPetro and/or the Individual Defendants, specifically, the Company's Form 8-K, filed August 8, 2019, and Form 10-K, filed June 22, 2020.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm otherwise denies the allegations in the Paragraph.

151.    Plaintiffs' allegations in Paragraph 151 purport to quote or summarize statements in certain documents by ProPetro and/or the Individual Defendants, specifically, the Company's Form 10-K, filed June 22, 2020.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm otherwise denies the allegations in the Paragraph.

152.    Plaintiffs' allegations in Paragraph 152 purport to quote or summarize statements in certain documents by ProPetro and/or the Individual Defendants, specifically, the Company's Form 8-K, filed August 8, 2019.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm otherwise denies the allegations in the Paragraph.

153.    Plaintiffs' allegations in Paragraph 153 purport to quote or summarize statements in certain documents by ProPetro and/or the Individual Defendants and historical stock price data. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation to the extent it is consistent with that data, while denying the allegation to the extent it is inconsistent with that data.  Denholm is without information sufficient to form a belief as to the remaining allegations in Paragraph 153, including whether, or to what extent, this decline was associated with or caused by ProPetro's disclosures or as to the allegation that those disclosures "shook investors' faith in Defendants' representations that ProPetro maintained adequate internal and disclosure controls and that it had either prevented or detected and disclosed all material related-party transactions[.]"

154.    Plaintiffs' allegations in Paragraph 154 purport to quote or summarize statements in certain documents by media commentators or statements in certain documents by ProPetro and/or the Individual Defendants.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm is without information sufficient to form a belief as to the remaining allegations in Paragraph 154, including that the stock price drop was, in fact, "linked" to ProPetro disclosures.

155.    Plaintiffs' allegations in Paragraph 155 purport to quote or summarize statements in certain documents by media commentators and/or analysts.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm denies the allegation that ProPetro's disclosures were "opaque."  Denholm lacks information sufficient to form a belief as to any remaining allegations in Paragraph 155.

156.    Plaintiffs' allegations in Paragraph 156 purport to quote or summarize statements in certain documents by media commentators and/or analysts.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm otherwise denies the allegations in the Paragraph.

157.    Plaintiffs' allegations in Paragraph 157 purport to quote or summarize statements in certain documents by media commentators.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it

is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

158.    Plaintiffs' allegations in Paragraph 158 purport to quote or summarize statements in certain documents by media commentators and/or analysts. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

159.    Plaintiffs' allegations in Paragraph 159 purport to quote or summarize statements in certain documents by media commentators. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

### b. August 30, 2019—ProPetro's General Counsel Announces His Resignation in the Wake of the Audit Committee Investigation.

160.    Plaintiffs' allegations in Paragraph 160 purport to quote or summarize the Company's Form 8-K, filed August 30, 2019. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

161.    Plaintiffs' allegations in Paragraph 161 purports to summarize historical stock price data. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

162.    Plaintiffs' allegations in Paragraph 162 purport to quote or summarize statements in certain documents by media commentators and/or analysts, specifically, an Alta Corp. Capital report.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm is without information sufficient to form a belief as to any remaining allegations in the Paragraph, including whether any stock price movement was "in response" to any particular event or events.

163.     Plaintiffs' allegations in Paragraph 163 purport to quote or summarize statements in certain documents by media commentators and/or analyst reports, specifically a Simmons Energy report.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.

### c.    October 9, 2019—CAO Denholm Resigns.

164.    Plaintiffs' allegations in Paragraph 164 purport to quote or summarize the Company's Form 8-K, filed October 9, 2019.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm otherwise denies the allegations in the Paragraph.

165.    Plaintiffs' allegations in Paragraph 165 purport to quote or summarize the Company's Form 8-K, filed October 9, 2019.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.   Denholm otherwise denies the allegations in the Paragraph.

166.    Plaintiffs' allegations in Paragraph 166 purport to quote or summarize the Company's Form 8-K, filed October 9, 2019.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm otherwise denies the allegations in the Paragraph.

167.    Plaintiffs' allegations in Paragraph 167 purport to quote or summarize the Company's Form 8-K, filed October 9, 2019.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm otherwise denies the allegations in the Paragraph.

168.    The Court struck all allegations relating to the expense reimbursements of Redman and Smith except to the extent that they occurred prior to the IPO and Secondary Offering. (Doc. 116). Consequently, to the extent the reimbursement allegations in this Paragraph do not relate to reimbursements to Redman and Smith regarding ProPetro's controls made prior to IPO and Secondary Offering documents, Denholm does not respond to the allegations. Plaintiffs' remaining allegations in Paragraph 168 purport to quote or summarize the Company's Form 8-K, filed October 9, 2019.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

169.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or

misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm.

170.    Plaintiffs' allegations in Paragraph 170 purport to quote or summarize the Company's Form 8-K, filed October 9, 2019. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

171.    Plaintiffs' allegations in Paragraph 171 purport to quote or summarize the Company's Form 8-K, filed October 9, 2019. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

172.    Plaintiffs' allegations in Paragraph 172 purport to quote or summarize statements in certain documents by media commentators and/or analysts. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm is without information sufficient to form a belief as to any remaining allegations in the Paragraph.

173.    Plaintiffs' allegations in Paragraph 173 purport to quote or summarize statements in certain documents by media commentators and/or analysts. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to

the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

### d.    October 18, 2019—the Market Learns of the SEC Investigation.

174.    Plaintiffs' allegations in Paragraph 174 purport to quote or summarize statements in certain documents by media commentators and/or analysts.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm otherwise denies the allegations in the Paragraph.

175.    Plaintiffs' allegations in Paragraph 175 purport to summarize historical stock price data. As to that data, Denholm refers to the data cited therein, and admits the allegations to the extent it is consistent with that data, while denying the allegations to the extent it is inconsistent with that data.  Denholm otherwise denies the allegations in the Paragraph.

176.    Plaintiffs' allegations in Paragraph 176 purport to quote or summarize statements in certain documents by media commentators and/or analysts.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm is without information sufficient to form a belief as to any remaining allegations in the Paragraph.

177.    Plaintiffs' allegations in Paragraph 177 purport to quote or summarize statements in certain documents by media commentators and/or analysts.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm otherwise denies the allegations in the Paragraph.

178.    Plaintiffs' allegations in Paragraph 178 purport to quote or summarize statements in certain documents by media commentators and/or analysts.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm otherwise denies the allegations in the Paragraph.

**e.    October 31, 2019—Additional Details Regarding Denholm's Related-Party Transactions Emerge.**

179.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in Paragraph 179 do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. Denholm otherwise denies the allegations in the Paragraph.

180.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in Paragraph 180 do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm.  Denholm otherwise denies the allegations in the Paragraph.

181.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or

misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in Paragraph 181 do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. Therefore, Denholm does not respond to these allegations. Denholm otherwise denies the allegations in the Paragraph.

182. The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in Paragraph 182 do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. The Court also struck all portions of Plaintiffs' allegations regarding the Audit Committee's Independence. (Doc. 116). Therefore, Denholm is not required to respond to them. Denholm otherwise denies the allegations in the Paragraph.

183. The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in Paragraph 183 do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. Denholm otherwise denies the allegations in the Paragraph.

184. The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's

controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in Paragraph 184 do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. Denholm otherwise denies the allegations in the Paragraph.

185.    The Court struck the allegation that Denholm was a party to "related-party transactions" as it relates to any of the purported Clarabby transactions after the end of the Supplemental Offering—which are the only "related-party transactions" imputed by Plaintiffs to Denholm. (Doc. 116). Paragraph 185 concerns solely Denholm's alleged related-party transactions. Therefore, Denholm does not respond to these allegations. Plaintiffs' allegations in Paragraph 185 also purport to quote or summarize statements in certain documents by media commentators and/or analysts. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

186.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in Paragraph 186 not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. Plaintiffs' allegations in Paragraph 186 also purport to quote or summarize statements in certain documents by media commentators and/or analysts. As to those

assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

187.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in Paragraph 187 do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm.  Paragraph 187 purports to quote or summarize statements in the Company's Form 8-K filed November 13, 2019.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm otherwise denies the allegations in the Paragraph.

188.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in Paragraph 188 do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm.  Paragraph 188 purports to quote or summarize statements in the Company's Form 8-K filed November 13, 2019.  As to those assertions, Denholm refers to the

documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

189.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm.  Paragraph 189 purports to quote or summarize statements in the Company's Form 8-K filed November 13, 2019.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm otherwise denies the allegations in the Paragraph.

190.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm.  Paragraph 190 purports to quote or summarize statements in the Company's Form 8-K filed November 13, 2019.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it

is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

191.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm.  Paragraph 191 purports to quote or summarize statements in the Company's Form 8-K filed November 13, 2019.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm otherwise denies the allegations in the Paragraph.

192.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm.  Paragraph 192 purports to quote or summarize statements in the Company's Form 8-K filed November 13, 2019.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it

is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

193. The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. Paragraph 193 purports to quote or summarize statements in the Company's Form 8-K filed November 13, 2019. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

### f. March 16, 2020—ProPetro Discloses Redman's Resignation, Smith Steps Down, and ProPetro Discloses Additional Violations.

194. Denholm denies the first sentence of Paragraph 194, and denies that investors "question[ed] ProPetro or "the severity of the Committee's additional findings" in the early months of 2020, or that investors were "in the midst of . . . uncertainty" during this time. The remainder of Plaintiffs' allegations in Paragraph 194 purport to quote or summarize statements in certain documents by ProPetro, specifically a form 8-K filed on March 16, 2020. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise admits the remaining allegations in the Paragraph.

195.    Paragraph 195 purports to quote or summarize statements in the Company's Form 8-K filed March 16, 2020.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm is without information sufficient to form a belief as to any remaining allegations in Paragraph 195, including whether "Redman's forfeiture of compensation that was once worth several million dollars indicates that his 'resignation' was provided under exceptional circumstances."

196.    Paragraph 196 purports to quote or summarize the Company's Form 8-K filed March 16, 2020.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.

197.    Paragraph 197 purports to quote or summarize the Company's Form 8-K filed March 16, 2020.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm otherwise denies the allegations in the Paragraph.

198.    Paragraph 198 purports to summarize the Company's Form 8-K filed March 16, 2020.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm denies the allegation in Paragraph 198 that ProPetro's internal and disclosure controls were "deficient."

Denholm is without information sufficient to form a belief as to any remaining allegations in the Paragraph, including that the Redman transactions were "illicit."

199.    Denholm denies the allegations in Paragraph 199, except to the extent the Paragraph purports to summarize historical stock price data. As to that data, Denholm refers to the data cited therein, and admits the allegations to the extent it is consistent with that data, while denying the allegations to the extent it is inconsistent with that data.  Denholm is without information sufficient to form a belief as to whether any change in the ProPetro share price was "in response to the disclosures in the Form 8-K[.]"

200.    Plaintiffs' allegations in Paragraph 200 purport to quote or summarize statements in certain documents by media commentators and/or analysts, specifically a Reuters report dated March 16, 2020.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

201.    Plaintiffs' allegations in Paragraph 201 purport to quote or summarize statements in certain documents by media commentators, specifically a Reuters article. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

202.    Plaintiffs' allegations in Paragraph 202 purport to quote or summarize statements in certain documents by media commentators and/or analysts, specifically a Stephens report dated March 16, 2020.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents,

while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

203.    Plaintiffs' allegations in Paragraph 203 purport to quote or summarize statements in certain documents by media commentators and/or analysts, including a Reuters report dated March 19, 2020.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Further, Paragraph 203 contains allegations related to the Audit Committee's Independence. Denholm does not respond to these allegations as the Court previously struck them. (Doc. 116) Denholm is without information sufficient to form a belief as to any remaining allegations in the Paragraph.

**12. After the Class Period, ProPetro Confirms the Existence of Severe Internal Control Deficiencies.**

204.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. Similarly, the Court struck all allegations relating to the expense reimbursements of Redman and Smith except to the extent that they occurred prior to the IPO and Secondary Offering. *Id.* Consequently, to the extent the reimbursement allegations in this Paragraph do not relate to reimbursements to Redman and Smith regarding ProPetro's controls made prior to IPO and Secondary Offering documents, Denholm does not respond to the allegations. Plaintiffs' allegations in Paragraph 204 purport to quote or summarize the Company's

Form 10-K filed June 22, 2020. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

205. Plaintiffs' allegations in Paragraph 205 purport to quote or summarize the Company's Form 10-K filed June 22, 2020. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

206. Plaintiffs' allegations in Paragraph 206 purport to quote or summarize statements in the Company's Form 10-K filed June 22, 2020 and the content of the "COSO Franework."As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

207. Plaintiffs' allegations in Paragraph 207 purport to quote or summarize the Company's Form 10-K filed June 22, 2020. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

208. Plaintiffs' allegations in Paragraph 208 purport to quote or summarize the Company's Form 10-K filed June 22, 2020. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it

is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

209.    Plaintiffs' allegations in Paragraph 209 purport to quote or summarize the Company's Form 10-K filed June 22, 2020.    As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

210.    Plaintiffs' allegations in Paragraph 210 purport to quote or summarize the Company's Form 10-K filed June 22, 2020 and elements of the "COSO Framework."   As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm is without information sufficient to form a belief as to any remaining allegations in the Paragraph, including whether "ProPetro's [alleged] 'material weaknesses' also affected the 'principles associated with the control activities component of the COSO framework[.]" Denholm otherwise denies the allegations in the Paragraph.

211.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. Plaintiffs' allegations in Paragraph 211 also purport to quote or

summarize the Company's Form 10-K filed June 22, 2020 and elements of the "COSO Framework."   As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.   Denholm otherwise denies the allegations in this Paragraph.

212.   The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. Plaintiffs' allegations in Paragraph 212 purport to quote or summarize the Company's Form 10-K filed June 22, 2020 and elements of the "COSO Framework."   As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.   Denholm otherwise denies the allegations in the Paragraph.

213.   The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no

response is required by Denholm. Plaintiffs' allegations in Paragraph 213 also purport to quote or summarize the Company's Form 10-K filed June 22, 2020 and elements of the "COSO Framework."   As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm otherwise denies the allegations in the Paragraph.

214.    The Court struck all allegations relating to the expense reimbursements of Redman and Smith except to the extent that they occurred prior to the IPO and Secondary Offering. (Doc. 116). Consequently, to the extent the reimbursement allegations in this Paragraph do not relate to reimbursements to Redman and Smith regarding ProPetro's controls made prior to IPO and Secondary Offering documents, Denholm does not respond to the allegations. Plaintiffs' remaining allegations in Paragraph 214 purport to quote or summarize statements in the Company's Form 10-K dated June 22, 2020.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Plaintiffs' allegations in Paragraph 214 also purport to quote or summarize the Company's Form 10-K filed June 22, 2020 and elements of the "COSO Framework."   As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

215.    Plaintiffs' allegations in Paragraph 215 purport to quote or summarize the Company's Form 10-K filed June 22, 2020, the "COSO Framework," and Deloitte's opinion. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that

such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

216.    Plaintiffs' allegations in Paragraph 216 purport to quote or summarize the Company's Form 10-K filed June 22, 2020, the "COSO Framework," and Deloitte's opinion. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

217.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. The remainder of the Paragraph describes ProPetro's disclosure, Denholm refers to the document cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

218.    Denholm is without information sufficient to form a belief as to the allegations in Paragraph 218.

219.    Denholm admits the allegations in Paragraph 219.

**B. Additional Allegations of Scienter.**

220. Denholm denies the allegations in Paragraph 220.

221. The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. The Court also struck the allegations regarding PBEX. *Id.* Denholm, therefore, does not respond to the allegations alleged in Paragraph 221 relating to related-party transactions and PBEX. Similarly, the Court struck all allegations relating to the expense reimbursements of Redman and Smith except to the extent that they occurred prior to the IPO and Secondary Offering. *Id.* Consequently, to the extent the reimbursement allegations in this Paragraph do not relate to reimbursements to Redman and Smith regarding ProPetro's controls made prior to IPO and Secondary Offering documents, Denholm does not respond to the allegations. Denholm denies that he "failed to adhere to and enforce the Company's policies," and/or that he "knew about . . . fraud that was occurring within the Company," was a "primary acto[r] in that [alleged] fraud," and/or was a "principal beneficiary of ProPetro's inadequate control environment." Denholm denies creating a "culture of noncompliance." Denholm denies knowing "that statements [made by ProPetro] about maintaining effective internal controls, about adhering to the Company's Insider Trading Compliance Policy and Code of Ethics and Conduct, and about monitoring conflicts of interest were false." Denholm is without information sufficient to form a belief as to the remaining allegations in the Paragraph.

222.    Denholm admits the allegations in the first, second, fourth, and fifth sentences of Paragraph 222.  Denholm is without information sufficient to form a belief as to the allegations regarding Redman's state of mind contained in the seventh and eighth sentences of Paragraph 222. Denholm denies the remaining allegations in Paragraph 222.

223.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. Similarly, the Court struck all allegations relating to the expense reimbursements of Redman and Smith except to the extent that they occurred prior to the IPO and Secondary Offering. *Id.* Consequently, to the extent the reimbursement allegations in this Paragraph do not relate to reimbursements to Redman and Smith regarding ProPetro's controls made prior to IPO and Secondary Offering documents, Denholm does not respond to the allegations. Denholm is without information sufficient to form a belief as to whether Armour, Smith, and/or Redman violated any company policy knowingly or intentionally, intentionally "circumvented" Company policies, and/or made any false statement knowingly or intentionally. Denholm denies that these transactions represent a failure in the Company's internal and disclosure controls.  Denholm denies making knowingly false statements to investors.  Denholm denies that he ("the *Defendants*") has "admitted" any of the allegations as they relate to him. The remainder of the Paragraph describes ProPetro's disclosure, Denholm refers to the document cited therein, and admits the allegation that such statements were made to the extent it is consistent with those

documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm denies the remaining allegations in Paragraph 223.

224. Plaintiffs' allegations in Paragraph 224 purport to quote or summarize statements in certain documents by ProPetro and/or the Individual Defendants. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm lacks information sufficient to form a belief as to whether, as alleged in Paragraph 224, different or differently structured internal and disclosure controls would necessarily have "prevented and detected" the Redman and Smith transactions alleged in Paragraph 224. Denholm denies that the quoted statement of ProPetro in Paragraph 224—described by Plaintiffs as referring to ProPetro's "prior management team"—refers to him; instead, it refers only to the "former Principal Executive Officer [Redman] and Principal Financial Officer [Smith]." Denholm denies that he has "admitted" anything regarding the adequacy and/or deficiency of ProPetro's controls, and/or whether they suffered from any material weaknesses. Denholm denies that he himself "bears responsibility" for false statements by ProPetro regarding ProPetro's internal controls, if any. The remainder of the Paragraph describes ProPetro's disclosure, Denholm refers to the document cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm denies any remaining allegations in the Paragraph.

225. Denholm is without information sufficient to form a belief as to Smith and Redman's state of mind, actual knowledge and/or recklessness referenced in the first and second sentences of Paragraph 225. Denholm denies the remaining allegations in Paragraph 225.

**DENHOLM'S ORIG. ANS. TO PL.'S THIRD AM. COMPLAINT**                    **PAGE 68**

226.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. Denholm admits that he was ProPetro's Chief Accounting Officer, and that this position included some responsibility for ProPetro's accounting functions, "including audit preparation, SOX compliance, and internal and disclosure controls," as set forth in the second sentence of Paragraph 226. Denholm admits that he signed certain SEC filings on behalf of ProPetro (but not others), as set forth in the fifth sentence of Paragraph 226.  Denholm denies that he maintained sole or primary responsibility for any of these functions, however, and/or that his responsibility some of ProPetro's accounting functions included responsibility for review of individual credit card transactions or reimbursements by senior executives, and/or for designing or implementing mechanisms for such review. Denholm denies signing or authorizing any SEC filings upon which his signature does not actually appear.  Denholm denies the remaining allegations in Paragraph 226, including that he was "aware of the inadequate state of ProPetro's internal controls throughout the class period;" that Denholm "took advantage of material weaknesses;" and/or denies any inference of scienter, or actual scienter, on his part.

227.    The third sentence of Paragraph 227 purports to summarize the representations of Redman and Smith in the Company's public filings.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent

with those documents.  Denholm is without information sufficient to form a belief as to the allegations in the fourth sentence of Paragraph 227, including whether the reassignments of Redman and Smith evince any "lack of faith" in them by ProPetro. Denholm denies that, even if this were so, these Board decisions would be sufficient in themselves to "establish[h] a strong inference of . . . scienter."  Denholm is without information sufficient to form a belief as to the remaining allegations in Paragraph 227.

228.    The first six sentences of Paragraph 228 purport to quote or summarize the Company's Forms 8-K filed on October 9, 2019 and March 16, 2020. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm is without information sufficient to form a belief as to the remaining allegations in Paragraph 228, including whether they "create a strong inference of scienter."

229.    The first six sentences of Paragraph 229 purport to quote or summarize the Company's Forms 8-K filed on October 9, 2019 and March 16, 2020. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm denies the remaining allegations in Paragraph 229.

230.    The first six sentences of Paragraph 230 purport to quote or summarize the Company's Forms 8-K filed on July 12, 2019 and August 1, 2019; and its Form 10-K filed on June 22, 2020.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while

denying the allegation to the extent it is inconsistent with those documents.   Denholm denies that Armour's reassignments were "demotions."   Denholm is without information sufficient to form a belief as to whether changes to the ProPetro board alleged in Paragraph 230 can "suppor[t] a strong inference of scienter" as to other Defendants.   The Court further struck the allegations related to the Audit Committee's Independence contained in the Paragraph, to which Denholm does not respond. Denholm denies any remaining allegations in the Paragraph, including any allegation that the allegations cited therein can support a finding of scienter respecting Denholm.

231.    The first, third, fourth, fifth, and sixth sentences of Paragraph 231 purport to quote or summarize the Company's Forms 8-K filed on August 30, 2019 and October 9, 2019.   As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.   Denholm admits that he resigned from ProPetro and that Howell resigned from ProPetro during the period that followed the Audit Committee Investigation.   Denholm denies that his resignation from ProPetro supports a strong inference of Scienter, as alleged in the second sentence of Paragraph 231.   Denholm denies that, in the view of ProPetro or its Board, "the timing and circumstances of Denholm's and Howell's departure demonstrate[d] [its] underst[anding] that the lapses and failures of ProPetro's internal and disclosure controls were profound and originated at the highest levels of the Company." Denholm denies any remaining allegations in Paragraph 231.

232.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum,

Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. The Court also struck allegations relating to PBEX. *Id.* Denholm, therefore, does not respond to the allegations alleged in Paragraph 221 relating to related-party transactions and PBEX. Denholm denies that any of the allegations in Paragraph 232 demonstrate, evidence, or reflect either knowing or reckless deception of investors, or intentional and/or reckless misstatements or omissions regarding the management of ProPetro's internal or disclosure controls. Denholm admits that he was one of the personnel at ProPetro with some responsibility for its financial disclosure and its internal and disclosure controls, but denies "principle" responsibility for those items. Denholm denies the remaining allegations in Paragraph 232.

233.    The first, third, fourth, fifth, and sixth sentences of Paragraph 233 purport to quote or summarize the Company's Forms 8-K filed on August 8, 2019, and October 9, 2019; its Form 10-K filed on June 22, 2020; and its Form 10-Q filed on July 2, 2020. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm denies the remaining allegations in Paragraph 233, including that "[t]he fact that ProPetro took nearly a year to file its delinquent SEC filings supports a strong inference of scienter" and that this delay, itself, "indicates the seriousness of the underlying conduct."

234.    The first, second, third, and fourth sentences of Paragraph 234 purport to quote or summarize the Company's Forms 4, filed between March 17, 2017 and March 13, 2020. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such

statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.   To the extent that any remaining allegations in Paragraph 234 against undifferentiated "Defendants" ("*Defendants* used these statements to assure investors…, etc.) refer to Denholm, Denholm denies the allegations in Paragraph 234.  Denholm is without information sufficient to form a belief as to any remaining allegations in Paragraph 234 as regarding other Defendants.

### C.  Defendants' Materially False and Misleading Statements and Omissions.

235.    Denholm denies the allegations in Paragraph 235.

#### 1.  Materially False and Misleading Statements and Omissions Contained in the Offering Documents.

##### a.  Statements and Omissions Concerning Redman's Improper, Undisclosed Share Pledges.

236.    The Court struck Paragraph 236.  (Doc. 116). Therefore, Denholm does not respond to the Paragraph.

237.     The Court struck Paragraph 237. (Doc. 116). Therefore, Denholm does not respond to the Paragraph.

238.    The Court struck Paragraph 238. (Doc. 116). Therefore, Denholm does not respond to the Paragraph.

239.    The Court struck Paragraph 239. (Doc. 116). Therefore, Denholm does not respond to the Paragraph.

240.    The Court struck Paragraph 240. (Doc. 116). Therefore, Denholm does not respond to the Paragraph.

241.    The Court struck Paragraph 241. (Doc. 116). Therefore, Denholm does not respond to the Paragraph.

242.    The Court struck Paragraph 242. (Doc. 116). Therefore, Denholm does not respond to the Paragraph.

243.    The Court struck Paragraph 243. (Doc. 116). Therefore, Denholm does not respond to the Paragraph.

### b. Statements Concerning ProPetro's Internal Controls and Disclosure Controls and Procedures.

244.    Plaintiffs' allegations in Paragraph 244 purport to quote or summarize the Company's Form 8-K filed August 8, 2019, and its Form 10-K, filed June 22, 2020.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm denies remaining allegations in the Paragraph, including the assertion in the first sentence of the Paragraph that the quoted and/or summarized statements in Paragraph 244 were "materially false and misleading."

245.    The Court struck all allegations relating to the expense reimbursements of Redman and Smith except to the extent that they occurred prior to the IPO and Secondary Offering. (Doc. 116). Consequently, to the extent the reimbursement allegations in this Paragraph do not relate to reimbursements to Redman and Smith regarding ProPetro's controls made prior to IPO and Secondary Offering documents, Denholm does not respond to the allegations. Plaintiffs' remaining allegations in Paragraph 245 purport to quote or summarize the Company's Form 8-K filed August 8, 2019, and its Form 10-K, filed June 22, 2020.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm admits the allegations in Paragraph 245 that "Redman's undisclosed 2017 pledge, entered into prior to the IPO, was undetected by the Company's internal

and disclosure controls[.]"  Denholm is without information sufficient to form a belief as to the allegations in the Paragraph regarding Redman's state of mind, and/or whether Redman "knew that he had effectively flouted . . . controls."  Denholm denies the remaining allegations in Paragraph 245.

246.    Plaintiffs' allegations in Paragraph 246 purport to quote or summarize the Company's Secondary Offering Documents. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm otherwise denies the allegations in the Paragraph.

247.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. Similarly, the Court struck all allegations relating to the expense reimbursements of Redman and Smith except to the extent that they occurred prior to the IPO and Secondary Offering. *Id.* Consequently, to the extent the reimbursement allegations in this Paragraph do not relate to reimbursements to Redman and Smith regarding ProPetro's controls made prior to IPO and Secondary Offering documents, Denholm does not respond to the allegations. Plaintiffs' allegations in Paragraph 245 purport to quote or summarize the Company's Form 8-K filed August 8, 2019, and its Form 10-K, filed June 22, 2020.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were

made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm denies "the foregoing statements" cited in Paragraph 247 were false or misleading. Denholm otherwise denies the allegations in the Paragraph.

248.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. Denholm denies that it was "misleading" for any Defendant to state that ProPetro was "required to comply with the SEC's rules implementing Section 302 of [SOX]." Denholm admits that at the time of the Company's 2017 Secondary Offering Documents, its disclosure controls and procedures did not detect and/or ensure disclosure of some Redman and Smith transactions, including Redman's 2017 Pledge, that predated the filing of the 2017 Secondary Offering Documents. Denholm is without information sufficient to form a belief as to the remaining allegations in Paragraph 248, including the allegations that the transactions of the other Individual Defendants were "improper." Denholm otherwise denies the allegations in the Paragraph.

249.    Paragraph 249 incorporates by reference allegations other paragraphs in the Complaint, asserting that statements by various Defendants recited in those paragraphs were misleading or false for a variety of reasons. Denholm incorporates his answers to those incorporated paragraphs. Plaintiffs' allegations in Paragraph 249 also purport to quote or

summarize the 2018 Secondary Offering Documents and other filings and/or Company statements incorporated therein by reference.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies any remaining allegations in Paragraph 249.

### c.    Statements Concerning Related-Party Transactions.

250.    The Court struck Paragraph 250. (Doc. 116). Therefore, Denholm does not respond to the Paragraph.

251.    The Court struck Paragraph 251. (Doc. 116). Therefore, Denholm does not respond to the Paragraph.

252.    The Court struck Paragraph 252. (Doc. 116). Therefore, Denholm does not respond to the Paragraph.

253.    The Court struck Paragraph 253. (Doc. 116). Therefore, Denholm does not respond to the Paragraph.

254.    The Court struck Paragraph 243. (Doc. 116). Therefore, Denholm does not respond to the Paragraph.

255.    The Court struck Paragraph 255. (Doc. 116). Therefore, Denholm does not respond to the Paragraph.

### 2.    Materially False and Misleading Statements and Omissions Contained in ProPetro's Forms 10-Q.

### a.    Statements Concerning Internal and Disclosure Controls.

256.    Plaintiffs' allegations in Paragraph 256 purport to quote or summarize the Company's Form 10-Q, filed May 12, 2017.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it

is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm admits the remaining allegations in Paragraph 256.

257. Plaintiffs' allegations in Paragraph 257 purport to quote or summarize the Company's Form 10-Q, filed May 12, 2017. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm admits the remaining allegations in Paragraph 257.

258. Plaintiffs' allegations in Paragraph 258 purport to quote or summarize the Company's Form 10-Q, filed May 12, 2017. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm admits the remaining allegations in Paragraph 258.

259. The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. The Court also struck allegations relating to PBEX. *Id.* Denholm, therefore, does not respond to the allegations alleged in Paragraph 259 relating to PBEX. Similarly, the Court struck all allegations relating to the expense reimbursements of Redman and Smith except to the extent that they occurred prior to the IPO and Secondary Offering. *Id.* Consequently, to the extent the reimbursement allegations in this Paragraph do not relate to

reimbursements to Redman and Smith regarding ProPetro's controls made prior to IPO and Secondary Offering documents, Denholm does not respond to the allegations. The third, fifth, seventh, and ninth sentences of Paragraph 259 purport to quote or summarize the Company's Form 8-K, filed August 8, 2019, and its Form 10-K, filed June 22, 2020.  As to those assertions, Denholm refers to the documents and statements cited therein, and admits the allegation that such statements were made, or not made, to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm is without information sufficient to form a belief as to the remaining allegations in Paragraph 259.

260.    Plaintiffs' allegations in Paragraph 260 purport to quote or summarize the Company's Forms 10-Q filed between August 10, 2017 and May 9, 2018.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

261.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. The Court also struck allegations relating to PBEX. *Id.* Denholm, therefore, does not respond to the allegations alleged in Paragraph 261 relating to PBEX. Denholm denies that his statements, or those of ProPetro or any Defendant, were false or

misleading and/or that he made any false or misleading statement knowingly or recklessly. Denholm denies any remaining allegations in Paragraph 261.

262.    The Court struck all allegations of alleged false or misleading statements regarding ProPetro's internal controls after the secondary offerings. (Doc. 116). Paragraph 262 contains allegations relating to false or misleading statements allegedly made after the secondary offerings and, therefore, no response is required. Plaintiffs' allegations in Paragraph 262 purport to quote or summarize the Company's Forms 10-Q filed May 8, 2019, its Form 8-K filed November 13, 2019, and its Form 10-K filed June 22, 2020.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm denies any remaining allegations in Paragraph 262.

263.    Plaintiffs' allegations in Paragraph 263 purport to quote or summarize the Company's Form 10-Q, filed May 12, 2017, August 11, 2017, and November 2, 2017.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm denies the remaining allegations in Paragraph 263.

264.    Plaintiffs' allegations in Paragraph 264 purport to quote or summarize statements in certain documents by ProPetro and/or certain of the Individual Defendants.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  As to the allegation that the statements quoted or referenced in Paragraph 264 were false or misleading for reasons recited in

Paragraphs 278 and 279 of the Complaint, Denholm incorporates his responses to Paragraphs 278 and 279 of this Answer. Denholm denies the remaining allegations in Paragraph 264.

### b. Statements Concerning Related-Party Transactions

265.   The Court struck Paragraph 265. Therefore, Denholm does not respond to the Paragraph.

266.   The Court struck Paragraph 266. Therefore, Denholm does not respond to the Paragraph.

267.   The Court struck Paragraph 267. Therefore, Denholm does not respond to the Paragraph.

### 3. Materially False and Misleading Statements and Omissions Contained in ProPetro's Forms 10-K.

### a. Statements Concerning Internal Disclosure Controls.

268.   Paragraph 268 purports to quote or summarize the Company's Forms 10-K, filed March 27, 2018 and March 1, 2019. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

269.   Plaintiffs' allegations in Paragraph 269 purport to quote or summarize the Company's Forms 10-K, filed March 27, 2018 and March 1, 2019. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the paragraph.

270.   Plaintiffs' allegations in Paragraph 270 purport to quote or summarize the Company's Forms 10-K, filed March 27, 2018 and March 1, 2019. As to those assertions,

Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the paragraph.

271.    Plaintiffs' allegations in Paragraph 271 purport to quote or summarize the Company's Forms 10-K, filed March 27, 201 and March 1, 2019.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the paragraph.

272.    Plaintiffs' allegations in Paragraph 272 purport to quote or summarize the Company's Forms 10-K, filed March 27, 2018 and March 1, 2019.    As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm admits the remaining allegations in Paragraph 272.

273.    Plaintiffs' allegations in Paragraph 273 purport to quote or summarize the Company's Forms 10-K, filed March 27, 2018 and March 1, 2019.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the paragraph.

274.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum,

Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. The Court also struck allegations relating to PBEX. *Id.* Denholm, therefore, does not respond to the allegations alleged in Paragraph 274 relating to PBEX. Similarly, the Court struck all allegations relating to the expense reimbursements of Redman and Smith except to the extent that they occurred prior to the IPO and Secondary Offering. *Id.* Consequently, to the extent the reimbursement allegations in this Paragraph do not relate to reimbursements to Redman and Smith regarding ProPetro's controls made prior to IPO and Secondary Offering documents, Denholm does not respond to the allegations. Plaintiffs' remaining allegations in Paragraph 274 purport to quote or summarize the Company's Form 8-k, filed October 9, 2019. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm denies the remaining allegations in the Paragraph.

275.    Plaintiffs' allegations in Paragraph 275 purport to quote or summarize the Company's Form 8-K, filed November 13, 2019.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm is without information sufficient to form a belief as to any of the remaining allegations in Paragraph 275.

276.    Plaintiffs' allegations in Paragraph 276 purport to quote or summarize statements the Company's Form 10-K, filed March 1, 2019.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it

is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

277.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. The Court also struck allegations relating to PBEX. *Id.* Denholm, therefore, does not respond to the allegations alleged in Paragraph 277 relating to PBEX. Similarly, the Court struck all allegations relating to the expense reimbursements of Redman and Smith except to the extent that they occurred prior to the IPO and Secondary Offering. *Id.* Consequently, to the extent the reimbursement allegations in this Paragraph do not relate to reimbursements to Redman and Smith regarding ProPetro's controls made prior to IPO and Secondary Offering documents, Denholm does not respond to the allegations. Plaintiffs' remaining allegations in Paragraph 277 purport to quote or summarize the Company's Forms 8-K, filed October 9, 2019 and November 13, 2019; and its Form 10-K filed June 22, 2019. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm is without information sufficient to form a belief as to the remaining allegations in Paragraph 277.

278.    Plaintiffs' allegations in Paragraph 278 purport to quote or summarize the Company's Form 10-K, filed March 1, 2019. As to those assertions, Denholm refers to the

documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

279.    Plaintiffs' allegations in Paragraph 279 purport to quote or summarize the Company's Form 8-K, filed November 13, 2019.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm admits that "Redman's undisclosed 2017 Pledge and 2018 Pledge were undetected by the Company's internal and disclosure controls[.]"  Denholm is without information sufficient to form a belief as to whether Redman "knew that he had taken advantage of the [alleged] inadequacies in such controls[.]"  Denholm denies the remaining allegations in Paragraph 279, including the allegation that ProPetro's accurate description of its reporting obligations constitutes a materially false or misleading misstatement.

### b.  Statements Concerning Related-Party Transactions.

280.    The Court struck Paragraph 280. Therefore, Denholm does not respond to the Paragraph.

281.    The Court struck Paragraph 281. Therefore, Denholm does not respond to the Paragraph.

282.    The Court struck Paragraph 282. Therefore, Denholm does not respond to the Paragraph.

283.    The Court struck Paragraph 283. Therefore, Denholm does not respond to the Paragraph.

**4. Materially False and Misleading Statements and Omissions Contained in ProPetro's August 16, 2017, Form 8-K.**

284. The Court struck Paragraph 284. Therefore, Denholm does not respond to the Paragraph.

285. The Court struck Paragraph 285. Therefore, Denholm does not respond to the Paragraph.

**5. Materially False and Misleading Statements and Omissions Contained in ProPetro's Proxy Statements.**

286. The Court struck Paragraph 286. Therefore, Denholm does not respond to the Paragraph.

287. The Court struck Paragraph 287. Therefore, Denholm does not respond to the Paragraph.

288. The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. The Court also struck allegations relating to PBEX. *Id.* Denholm, therefore, does not respond to the allegations alleged in Paragraph 261 relating to PBEX. Other allegations in Paragraph 288 purport to quote or summarize the Company's Proxy, filed April 16, 2018. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents,

while denying the allegation to the extent it is inconsistent with those documents. Denholm is without information sufficient to form a belief as to any remaining allegations in Paragraph 288.

289.    Plaintiffs' allegations in Paragraph 289 purport to quote or summarize the Company's Proxy, filed April 16, 2018. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

290.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. The Court also struck allegations relating to PBEX. *Id.* Denholm, therefore, does not respond to the allegations alleged in Paragraph 290 relating to PBEX. Similarly, the Court struck all allegations relating to the expense reimbursements of Redman and Smith except to the extent that they occurred prior to the IPO and Secondary Offering. *Id.* Consequently, to the extent the reimbursement allegations in this Paragraph do not relate to reimbursements to Redman and Smith regarding ProPetro's controls made prior to IPO and Secondary Offering documents, Denholm does not respond to the allegations. Plaintiffs' remaining allegations in Paragraph 290 purport to quote or summarize the Company's Proxy, filed April 16, 2018. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while

denying the allegation to the extent it is inconsistent with those documents. Denholm is without information sufficient to form a belief as to any remaining allegations in Paragraph 290.

291.    The Court struck Paragraph 291. (Doc. 116). Therefore, Denholm does not respond to the Paragraph.

292.    The Court struck Paragraph 292. (Doc. 116). Therefore, Denholm does not respond to the Paragraph.

293.    The Court struck Paragraph 293. (Doc. 116). Therefore, Denholm does not respond to the Paragraph.

294.    The Court struck Paragraph 294. (Doc. 116). Therefore, Denholm does not respond to the Paragraph.

295.    The Court struck Paragraph 295. (Doc. 116). Therefore, Denholm does not respond to the Paragraph.

**6.    Materially False and Misleading Statements and Omissions Contained in ProPetro's Code of Ethics and Conduct.**

296.    Denholm admits that "Throughout the Class Period, ProPetro maintained a 'Code of Ethics and Conduct' (the 'Code') on its website," and referred to the Code in SEC filings. Denholm denies the remaining allegations in Paragraph 296.

297.    Plaintiffs' allegations in Paragraph 297 purport to quote or summarize the Company's Code of Conduct & Ethics at the time this action was filed.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm denies any remaining allegations in Paragraph 297.

298.    The Court struck all allegations of alleged false or misleading statements regarding ProPetro's internal controls after the secondary offerings. (Doc. 116). Paragraph 262 contains allegations relating to false or misleading statements allegedly made after the secondary offerings and, therefore, no response is required. To the extent Denholm is required to admit or deny the allegations in Paragraph 298, Plaintiffs' allegations in Paragraph 298 purport to quote or summarize the Company's Proxies filed April 16, 2018 and April 23, 2019.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm denies the remaining allegations in Paragraph 298.

299.    The Court struck all allegations of alleged false or misleading statements regarding ProPetro's internal controls after the secondary offerings. (Doc. 116). Paragraph 299 contains allegations relating to false or misleading statements allegedly made after the secondary offerings and, therefore, no response is required. To the extent Denholm is required to admit or deny the allegations in the Paragraph, Paragraph 299 purports to quote or summarize the Company's Forms 10-K, filed March 27, 2018, and March 1, 2019, and Proxies, filed April 16, 2018, and April 23, 2019.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm denies any remaining allegations in Paragraph 299.

300.    The Court struck all allegations of alleged false or misleading statements regarding ProPetro's internal controls after the secondary offerings. (Doc. 116). Paragraph 262 contains allegations relating to false or misleading statements allegedly made after the secondary offerings

and, therefore, no response is required. To the extent Denholm is required to admit or deny the allegations in the Paragraph, Paragraph 300 purports to quote or summarize the Company's 2017 Secondary Offering Documents.   As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm denies any remaining allegations in Paragraph 300.

301.    The Court struck all allegations of alleged false or misleading statements regarding ProPetro's internal controls after the secondary offerings. (Doc. 116). Paragraph 301 contains allegations relating to false or misleading statements allegedly made after the secondary offerings and, therefore, no response is required. To the extent Denholm is required to admit or deny the allegations in the Paragraph, Paragraph 301 purports to quote or summarize the Company's Form 10-K filed June 22, 2020.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm is without information sufficient to form a belief as to any remaining allegations in Paragraph 301.

### a.  Statements Concerning Related-Party Transactions.

302.    Paragraph 302 purports to quote or summarize the Company's Code of Conduct. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

303.    Paragraph 303 purports to quote or summarize the Company's Code of Conduct. As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

304.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm.  The Court also struck allegations relating to PBEX. *Id.* Denholm, therefore, does not respond to the allegations alleged in Paragraph 261 relating to PBEX. Similarly, the Court struck all allegations relating to the expense reimbursements of Redman and Smith except to the extent that they occurred prior to the IPO and Secondary Offering. *Id.* Consequently, to the extent the reimbursement allegations in this Paragraph do not relate to reimbursements to Redman and Smith regarding ProPetro's controls made prior to IPO and Secondary Offering documents, Denholm does not respond to the allegations. Paragraph 304 also purports to quote or summarize the Company's Code of Conduct and Ethics, and its Form 10-K filed June 22, 2020.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm is without information sufficient to form a belief as to the remaining allegations in

Paragraph 304, including whether different procedures and policies for reviewing related-party transactions would have prevented the Smith and Redman reimbursements from occurring; whether ProPetro's procedures for reviewing related-party transactions were "inconsistently followed" or "ineffective;" whether Redman's stock pledges created "an unavoidable conflict of interest between Redman and ProPetro stockholders;" or whether any of the issues raised by Plaintiffs in Paragraph 304 (except those expressly denied) rendered any of the statements summarized in Paragraphs 302 and 303 materially misleading and/or false.

**b.   Statements Concerning Internal and Disclosure Controls.**

305.    Paragraph 305 purports to quote or summarize the Company's Code of Conduct and Ethics.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm denies any remaining allegations in Paragraph 305.

306.    Paragraph 306 purports to quote or summarize the Company's Code of Conduct and Ethics.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm otherwise denies the allegations in the Paragraph.

307.    Paragraph 307 purports to quote or summarize the Company's Code of Conduct and Ethics.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm otherwise denies the allegations in the Paragraph.

308.     Denholm is without information sufficient to form a belief as to whether Redman and Smith "took advantage" of ProPetro's internal and disclosure controls, and/or whether the unspecified transactions to which Paragraph 308 refers were improper or personally benefitted Redman and/or Smith.  Denholm denies the remaining allegation in the Paragraph, including that the statements of prohibition, policy, and responsibility cited in Paragraphs 305 through 307, and referred to in Paragraph 308, were materially false or misleading.

> **c.     Defendant Redman and ProPetro Omitted to Disclose that Redman's Undisclosed Pledges Violated ProPetro's Code and Insider Trading Policy.**

309.     Paragraph 309 purports to quote or summarize the Company's Form 8-K filed March 16, 2020.  As to those assertions, Denholm refers to the documents cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm denies any remaining allegations in Paragraph 309.

### D.  Loss Causation

310.     Denholm denies the allegations in Paragraph 310.

311.     The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm.  The Court also struck allegations relating to PBEX. *Id.* Denholm, therefore, does not respond to the allegations alleged in Paragraph 261 relating to PBEX.

Denholm denies that any partial disclosure took place on October 18, 2019, and October 31, 2019; that any inflation was "removed" as the result of such alleged disclosure[s]; and/or that such alleged disclosures, or the substance of their contents, caused any economic injury to Plaintiffs or any member of the class. Denholm is without information sufficient to form a belief as to any remaining allegations in Paragraph 311.

312.    Paragraph 312 purports to quote or summarize the Company's Form 8-K filed August 8, 2019 and historical stock market data. As to those assertions, Denholm refers to the documents and/or data cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm is without information sufficient to form a belief as to the remaining allegations in the Paragraph, including whether this cited announcement "caused" the change and/or "fall" in ProPetro stock, caused some of that change, or caused none of that change.

313.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. The Court also struck allegations relating to PBEX. *Id.* Denholm, therefore, does not respond to the allegations alleged in Paragraph 313 relating to PBEX. Denholm denies the remaining allegations in Paragraph 313.

314.    Paragraph 314 purports to quote or summarize the Company's Form 8-K filed August 30, 2019 and historical stock market data.  As to those assertions, Denholm refers to the documents and/or data cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm is without information sufficient to form a belief as to the remaining allegations in the Paragraph, including whether this announcement "caused" the change and/or "fall" in ProPetro stock, caused some of that change, or caused none of that change.

315.    Denholm denies the allegations in Paragraph 315.

316.    Paragraph 316 purports to quote or summarize media reports and historical stock market data.  As to those assertions, Denholm refers to the documents and/or data cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm is without information sufficient to form a belief as to whether, as Paragraph 316 alleges, this disclosure "caused" the change and/or "fall" in ProPetro stock, caused some of that change, or caused none of that change.  Denholm denies any remaining allegations in the Paragraph.

317.    Denholm denies the allegations in Paragraph 317.

318.    The Court struck all allegations relating to the PT Petroleum and Clarabby Transactions except to the extent that they support the claim "that statements regarding ProPetro's controls made prior to the IPO and Secondary Offering documents were materially false or misleading." (Doc. 116). Consequently, to the extent the allegations concerning the PT Petroleum, Clarabby, and "related-party transactions" in this Paragraph do not relate to ProPetro's controls made prior to the IPO and Secondary Offering documents being materially false or misleading, no response is required by Denholm. The Court also struck allegations relating to PBEX. *Id.*

Denholm, therefore, does not respond to the allegations alleged in Paragraph 261 relating to PBEX. Paragraph 318 purports to quote or summarize a Culper report dated October 31, 2019, and historical stock market data.  As to those assertions, Denholm refers to the documents and/or data cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents. Denholm denies that the Culper report constituted a corrective disclosure, "reveal[ed]" anything about ProPetro.  Denholm is without information sufficient to form a belief as to the remaining allegations, including whether the Culper report "caused" the change and/or "fall" in ProPetro stock on or about October 31, 2019, caused some of that change, or caused none of that change.

319.     Denholm denies the allegations in Paragraph 319.

320.     Paragraph 320 purports to quote or summarize the Company's Form 8-K filed March 16, 2020 and historical stock market data.  As to those assertions, Denholm refers to the documents and/or data cited therein, and admits the allegation that such statements were made to the extent it is consistent with those documents, while denying the allegation to the extent it is inconsistent with those documents.  Denholm is without information sufficient to form a belief as to the remaining allegations in Paragraph 320, including whether the statements summarized in Paragraph 320 "caused" the change and/or "fall" in ProPetro stock on or about October 31, 2019, caused some of that change, or caused none of that change.

### E.  Loss Causation

321.     Denholm denies the allegations in Paragraph 321.

322.     Denholm denies the allegations in Paragraph 322.

323.     Denholm denies the allegations in Paragraph 323.

**F. Cause of Action Brought Pursuant to the Exchange Act.**

**COUNT I**
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**
**(Against Defendant ProPetro and the Individual Defendants)**

324. Denholm repeats and re-asserts his responses and answers to each and every allegation set forth above as if fully set forth herein.

325. Denholm denies the allegations in Paragraph 325 to the extent they allege that Denholm, as an individual Defendant, engaged in any or all of the conduct set forth therein. Denholm is without information sufficient to form a belief as to the allegations in Paragraph 325 as respecting other Defendants.

326. Denholm denies the allegations in Paragraph 326 to the extent they allege that Denholm, as an individual Defendant, engaged in any or all of the conduct set forth therein. Denholm is without information sufficient to form a belief as to the allegations in Paragraph 326 as respecting other Defendants.

327. Denholm denies the allegations in Paragraph 327 to the extent they allege that Denholm, as an individual Defendant, engaged in any or all of the conduct set forth therein. Denholm is without information sufficient to form a belief as to the allegations in Paragraph 327 as respecting other Defendants.

328. Denholm denies the allegations in Paragraph 328 to the extent they allege that Denholm, as an individual Defendant, engaged in any or all of the conduct set forth therein. Denholm is without information sufficient to form a belief as to the allegations in Paragraph 328 as respecting other Defendants.

329. Denholm denies the allegations in Paragraph 329 to the extent they allege that Denholm, as an individual Defendant, engaged in any or all of the conduct set forth therein.

Denholm is without information sufficient to form a belief as to the allegations in Paragraph 329 as respecting other Defendants.

330.    Denholm denies the allegations in Paragraph 330 to the extent they allege that Denholm, as an individual Defendant, engaged in any or all of the conduct set forth therein. Denholm is without information sufficient to form a belief as to the allegations in Paragraph 330 as respecting other Defendants.

331.    Denholm denies the allegations in Paragraph 331 to the extent they allege that Denholm, as an individual Defendant, engaged in any or all of the conduct set forth therein. Denholm is without information sufficient to form a belief as to the allegations in Paragraph 331 as respecting other Defendants.

332.    Denholm is without information sufficient to form a belief as to the allegations in Paragraph 332.

333.    Denholm denies the allegations in Paragraph 333 to the extent they allege that Denholm, as an individual Defendant, engaged in any or all of the conduct set forth therein. Denholm is without information sufficient to form a belief as to the allegations in Paragraph 333 as respecting other Defendants.

334.    Denholm denies the allegations in Paragraph 334 to the extent they allege that Denholm, as an individual Defendant, engaged in any or all of the conduct set forth therein. Denholm is without information sufficient to form a belief as to the allegations in Paragraph 334 as respecting other Defendants.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**(Against the Individual Defendants)**

335.    Denholm repeats and re-asserts his responses and answers to each and every allegation set forth above as if fully set forth herein.

336.    Denholm denies the allegations in Paragraph 336 to the extent they allege that Denholm, as an individual Defendant, engaged in any or all of the conduct set forth therein. Denholm is without information sufficient to form a belief as to the allegations in Paragraph 336 as respecting other Defendants.

337.    Denholm denies the allegations in Paragraph 337 to the extent they allege that Denholm, as an individual Defendant, engaged in any or all of the conduct set forth therein. Denholm is without information sufficient to form a belief as to the allegations in Paragraph 337 as respecting other Defendants.

338.    Denholm denies the allegations in Paragraph 338 to the extent they allege that Denholm, as an individual Defendant, engaged in any or all of the conduct set forth therein. Denholm is without information sufficient to form a belief as to the allegations in Paragraph 338 as respecting other Defendants.

339.    Denholm denies the allegations in Paragraph 339 to the extent they allege that Denholm, as an individual Defendant, engaged in any or all of the conduct set forth therein. Denholm is without information sufficient to form a belief as to the allegations in Paragraph 339 as respecting other Defendants.

340.    Denholm denies the allegations in Paragraph 340 to the extent they allege that Denholm, as an individual Defendant, engaged in any or all of the conduct set forth therein.

Denholm is without information sufficient to form a belief as to the allegations in Paragraph 340 as respecting other Defendants.

## V.    SECURITIES ACT CLAIMS

341.    Paragraphs 341–95 set forth Plaintiffs' Securities Act Claims. Denholm is not named as a Securities Act Defendant. Therefore, these Paragraphs make no allegations against him and he is not required to respond to the allegations in these Paragraphs.

**COUNT IV**
**Violations of Section 15 of the Securities Act in Connection with the IPO**
**(Against Defendants Redman and Smith)**

396.    Paragraphs 396–400 set forth Plaintiffs' Section 15 claims. Denholm is not named as a Section 15 Defendant.  Therefore, these Paragraphs makes no allegations against him and he is not required to respond to the allegations in these Paragraphs.

## VI.    CLASS ACTION ALLEGATIONS

401.    Denholm admits that Plaintiffs purport to bring this action under the cited authorities.  Denholm denies the remaining allegations in the Paragraph, including the class action allegations, except for numerosity, which Denholm admits.

402.    Denholm admits the allegations in Paragraph 402.

403.    Denholm is without information sufficient to form a belief as to the allegations in Paragraph 403.

404.    Denholm is without information sufficient to form a belief as to the allegations in Paragraph 404.

405.    Denholm is without information sufficient to form a belief as to the allegations in Paragraph 405.

406.     Denholm is without information sufficient to form a belief as to the allegations in Paragraph 406.

407.     Denholm is without information sufficient to form a belief as to the allegations in Paragraph 407.

## VII.    THE INAPPLICABILITY OF THE STATUTORY SAFE HARBOR

408.     Denholm denies the allegations in Paragraph 408.

409.     Denholm denies the allegations in Paragraph 409.

## VIII.   PRAYER FOR RELIEF

410.     Denholm denies that Plaintiffs are entitled to any of the relief set forth in the Complaint or to any other relief at law or in equity that Plaintiffs may request.

### AFFIRMATIVE DEFENSES

Denholm asserts the following defenses with respect to the causes of action alleged against him in the Complaint without assuming the burden of proof or persuasion where such burden rests on Plaintiffs.  Denholm reserves the right to supplement its defenses and/or raise additional defenses that may be available or appropriate.

### (1) Failure to State a Claim

The Complaint fails to state a claim against Denholm upon which relief can be granted.

### (2) Cannot Establish Class Action

This action, in whole or in part, is not maintainable as a class action under Federal Rule of Civil Procedure 23.

### (3) Cannot Meet Burden

Plaintiffs cannot meet their burden of proving the essential elements of a claim under Section 10(b) of the Exchange Act: (1) a material misstatement or omission, (2) by the

defendant, (3) made in connection with the purchase or sale of a security, (4) and with scienter, (5) on which the investor reasonably relied, (6) that resulted in economic loss, (7) proximately caused by the alleged misstatement or omission (*i.e.,* loss causation).

### (4) Failure to Plead False or Misleading Statements

Plaintiffs' purported claims and those of the putative class are barred because the Complaint fails to allege facts demonstrating false or misleading statements and to adequately describe the manner in which those statements were false or misleading as required by the Private Securities Litigation Reform Act ("PSLRA").

### (5) No Duty to Disclose

Plaintiffs' purported claims and those of the putative class are barred because Defendant had no duty of disclosure with respect to the alleged misrepresentations or omissions.

### (6) Immaterial

Plaintiffs' purported claims and those of the putative class are barred because the allegedly false and misleading statements were immaterial.

### (7) Mere Puffery

Plaintiffs' purported claims and those of the putative class are barred because the allegedly false and misleading statements were immaterial and non-actionable "puffery."

### (8) Bespeaks Caution Doctrine and Safe Harbor

Plaintiffs' purported claims and those of the putative class are barred by the "Bespeaks Caution Doctrine" and the "Safe Harbor Provision" of the PSLRA.

### (9) *Santa Fe* Doctrine

Plaintiffs' purported claims and those of the putative class are not actionable under the *Santa Fe* doctrine.

### (10) Fraud by Hindsight

Plaintiffs' purported claims and those of the putative class are barred as and to the extent that they are allegations of "fraud by hindsight."

### (11) No Scienter or Actual knowledge

Plaintiffs' purported claims and those of the putative class are barred because the Complaint fails to allege facts demonstrating a strong inference of scienter or actual knowledge of falsity, and Plaintiffs are unable to prove any such facts with regard to Denholm and as to each alleged misstatement.

### (12) Good Faith

Plaintiffs' purported claims and those of the putative class are barred because Denholm acted in good faith.

### (13) No Proximate Cause

Plaintiffs' purported claims and those of the putative class are barred because the Denholm's alleged actions or alleged omissions were not the direct or proximate cause of Plaintiffs' or the putative class' averred damages and requisite "loss causation" is lacking.

### (14) No Causal Link

Plaintiffs' purported claims and those of the putative class are barred because there is no causal link between the alleged misrepresentations and the harm alleged to have occurred.

### (15) Intervening and Superseding Causes

Any decline in the value in ProPetro shares was caused by intervening and superseding causes.

### (16) Affirmative and Independent Actions

Plaintiffs' purported claims and those of the putative class are barred because the damages allegedly suffered (which the Defendant contends there none) are the proximate result of affirmative and/or independent actions of one or more third persons or parties over whom Denholm had no control and for whom Denholm is not liable.

### (17) Statements Not Attributable to Denholm

Plaintiffs' purported claims and those of the putative class are barred to the extent that they are based on statements that are not attributable to Denholm.

### (18) No Reliance

Plaintiffs' purported claims and those of the putative class are barred because Plaintiffs cannot prove reliance on any alleged statement or omission.

### (19) No Fraud or Deceit

Plaintiffs' purported claims and those of the putative class are barred because Denholm did not employ any device, scheme, or artifice to defraud and did not engage in any act, practice, or course of conduct that operates or would operate as a fraud or deceit in connection with the purchase or sale of securities.

### (20) Fraud-on-the-Market

The Complaint fails to state a claim against Denholm based upon "fraud-on-the-market" principles for any class member who did not trade shares between the time the alleged misstatements were made and the time the purported "truth" was "revealed."

### (21) No Inducement

The Complaint fails to state a claim against Denholm based upon "fraud-on-the-market" principles because the alleged misrepresentations and omissions would not have induced a reasonable investor to misjudge the value of ProPetro.

### (22) Other Sources

To the extent Denholm failed to disclose material information, which Denholm denies, the "truth-on-the-market" doctrine precludes Plaintiffs' claims because the information at issue was credibly made available to the market by other sources.

### (23) No Knowledge

Plaintiffs' purported claims and those of the putative class are barred because Denholm did not know, and in the exercise of reasonable care could not have known, of any untruth or material omission that may be proved by Plaintiffs.

### (24) Failure to Mitigate

Plaintiffs' purported claims and those of the putative class are barred by Plaintiffs' failure to mitigate damages as required by law and/or to the extent any alleged damages are not attributable to alleged violations of law.

### (25) Plaintiffs' Negligence

Plaintiffs' purported claims and those of the putative class are barred based on the doctrines of contributory negligence, comparative negligence and/or assumption of the risk. Plaintiffs knew, or in the exercise of reasonable care should have known, the risks inherent in investing in the securities at issue and thus assumed the risk of a decline in value of their investments.

### (26) Estoppel, Laches, Waiver, Ratification, and Acquiescence, and Statutes of Limitation and Repose

Plaintiffs' purported claims and those of the putative class are barred, in whole or in part, by the doctrines of estoppel, laches, waiver, ratification, acquiescence and/or the applicable statutes of limitation and repose.

### (27) No Attorneys' Fees

Plaintiffs are not entitled to recover attorneys' fees in this action.

### (28) Unjust Enrichment

Any recovery by Plaintiffs and the putative class against Defendant would constitute unjust enrichment.

### (29) Lack of Standing

Plaintiffs lack standing to prosecute this action.

### (30) Additional Facts

Additional facts that are currently unknown to Denholm may be revealed through the course of discovery and further investigation that will support additional defenses.  Denholm asserts and reserves the right to assert such defenses in the future.

### (31) Unclean Hands

Plaintiffs' purported claims and those of the putative class are barred because they have "unclean hands."

### (32) Failure to Meet Burden

Plaintiffs cannot meet their burden of proving the essential elements of a claim under Section 20(a) of the Exchange Act: (1) a primary violation under Section 10(b)(2), power by Denholm to control the specific transaction or activity upon which the primary violation is predicated, and (3) actual participation by the Denholm (*i.e.,* exercise of control) in the

**DENHOLM'S ORIG. ANS. TO PL.'S THIRD AM. COMPLAINT**                    **PAGE 106**

operations of the primary violator in general.

### (33) No Assimilation and Comprehension

To the extent Denholm was in possession of any of the information the Plaintiffs claim he failed to disclose, which Denholm contends he was not, Denholm did not assimilate and comprehend the significance of that information due to its voluminous and opaque nature.

### (34) Pre-Existing Trading Programs

Plaintiffs' purported claims and those of the putative class are barred, in whole or in part, because the stock sales referenced in the Complaint occurred pursuant to pre-existing trading programs under SEC Rule 10b5-1.

### (35) Variability

Plaintiffs and members of the purported class are not similarly situated.  The potential claims of the purported class members reflect variability.

Respectfully submitted,

**BELL NUNNALLY & MARTIN LLP**

*/s/ Craig M. Warner*
Craig M. Warner
State Bar No. 24084158
cwarner@bellnunnally.com
Parker A. Burns
State Bar No. 24091843
pburns@bellnunnally.com

2323 Ross Avenue, Suite 1900
Dallas, Texas 75201
214-740-1400 Telephone
214-740-1499 Facsimile

**VEDDER PRICE LLP**
Jeff J. Ansley
State Bar No. 00790235
jansley@vedderprice.com
100 Crescent Ct. Suite 350
Dallas, Texas 75201

**ATTORNEYS FOR DEFENDANT
IAN DENHOLM**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served electronically to all counsel of record on the XXXX day of December 2021, via the Court's CM/ECF system.

*/s/ Craig M. Warner*
Craig M. Warner