**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

NYKREDIT PORTEFØLJE
ADMINISTRATION A/S, OKLAHOMA
FIREFIGHTERS PENSION AND
RETIREMENT SYSTEM, OKLAHOMA
LAW ENFORCEMENT RETIREMENT
SYSTEM, OKLAHOMA POLICE PENSION
AND RETIREMENT SYSTEM, OKLAHOMA
CITY EMPLOYEE RETIREMENT SYSTEM,
POLICE AND FIRE RETIREMENT SYSTEM
OF THE CITY OF DETROIT, Individually and
on behalf of all other similarly situated,
    *Plaintiffs,*

VS.

PROPETRO HOLDING CORP., ET AL.,
    *Defendants.*

CASE No. MO:19-CV-00217-DC

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION
<u>FOR CLASS CERTIFICATION</u>**

HUGHES HUBBARD & REED LLP
1775 I Street, N.W.
Washington, D.C.  20006-2401
Tel: (202) 721-4600
Fax: (202) 721-4646

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................1

ARGUMENT ..................................................................................................................4

I.  PLAINTIFFS MUST PROVE THAT CLASS CERTIFICATION IS
    WARRANTED ...................................................................................................4

II. PLAINTIFFS' PROPOSED CLASS SHOULD BE DIVIDED INTO TWO
    CLASSES ...........................................................................................................5

III. THE EXCHANGE ACT CLASS CANNOT BE CERTIFIED ...........................6

    A.  Plaintiffs And Their Counsel Fail to Meet Rule 23's Adequacy
        Requirements ...........................................................................................6

        1.  *Plaintiffs' Counsel Is Not Adequate*.............................................6

        2.  *Plaintiffs Are Not Adequate* ........................................................9

    B.  Plaintiffs Have Failed To Provide A Method For The Class-Wide
        Calculation Of Damages ........................................................................12

        1.  *Torchio Does Not Provide A Sound Class-Wide Damages
            Methodology* ...............................................................................12

        2.  *The Failure To Provide An Adequate Class-wide Damages
            Methodology Requires Denial Of Class Certification* ...............14

    C.  The Overbroad Exchange Act Class Period Must Be Modified ............15

        1.  *The Exchange Act Class Period Cannot Start Before May
            12, 2017*......................................................................................15

        2.  *The Exchange Act Class Period Must End On August 9,
            2019 or November 13, 2019 At The Latest* .................................17

            a.  Reliance On Prior Statements About Internal
                Controls Would Have Been Unreasonable After
                August 8, 2019................................................................18

            b.  As A Matter Of Law, Investors Could Not Have
                Relied On Prior Statements About Internal Controls
                After November 13, 2019 ................................................20

**TABLE OF CONTENTS**

**Page**

IV.   THE SECURITIES ACT CLASS CANNOT BE CERTIFIED .......................................21

    A.   OLERS Is An Inadequate Plaintiff .........................................................................21

    B.   Individualized Issues of Injury, Traceability And Reliance Make Certification Improper .......................................................................................22

CONCLUSION..........................................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Italian Pasta Co. Sec. Litig.*, 2007 WL 927745 (W.D. Mo. Mar. 26, 2007) ..................................................................................................................18, 20

*Anstead v. Virginia Mason Medical Center*, 2022 WL 1641425 (W.D. Wa. 2022).......................10

*APA Excelsior III L.P. v. Premiere Techs., Inc.*, 476 F.3d 1261 (11th Cir. 2007) ..................24, 25

*In re Ariad Pharm., Inc. Sec. Litig.*, 842 F.3d 744 (1st Cir. 2016)................................................22

*Basic Inc. v. Levinson*, 485 U.S. 224 (1988)................................................................................17

*Berger v. Compaq Computer Corp.*, 257 F.3d 475 (5th Cir. 2001)......................................6, 9, 10

*Bridgewater v. Double Diamond-Delaware, Inc.*, 2011 WL 1671021 (N.D. Tex. Apr. 29, 2011) ....................................................................................................................14

*Brokop v. Farmland Partners Inc.*, 2021 WL 4916240 (D. Colo., Jul. 23, 2021)........................16

*Byes v. Telecheck Recovery Services, Inc.*, 173 F.R.D. 421 (E.D. La. 1997)..............................6, 9

*Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996)........................................................4, 14

*Chavez v. Plan Benefit Svcs.*, 957 F.3d 542 (5th Cir. 2020)......................................................1, 4

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2016 WL 215476 (S.D. Tex. Jan. 19, 2016) ......................................................................................................................24, 25

*Comcast Corp. v. Behrend*, 569 U.S. 17 (2013) .......................................................................4, 12

*Corley v. Orangefield Indep. Sch. Dist.*, 152 Fed. Appx. 350 (5th Cir. Oct. 13, 2005) ....................................................................................................................14

*Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913 (7th Cir. 2011) .....................................................................................................................6, 9

*In re Data Access Sys. Sec. Litig.*, 103 F.R.D. 130 (D.N.J. 1984)...............................................19

*Dura Pharmaceuticals Inc. v. Broudo*, 544 U.S. 336 (2005) .......................................................25

*In re Enron Corp. Sec. Deriv. and ERISA Litig.*, 529 F. Supp. 2d. 644 (S.D. Tex. 2006) ....................................................................................................................25

*In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427 (S.D. Tex. 2002)..................................................11

# TABLE OF AUTHORITIES

**Page**

*In re Fed. Nat. Mortg. Ass'n Sec., Derivative & "ERISA" Litig.*, 247 F.R.D. 32
(D.D.C. 2008) ...............................................................................................17, 20

*Freeman v. Laventhol & Horwath*, 915 F.2d 193 (6th Cir. 1990)...................................15

*Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014)................................17

*Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 7406418 (N.D. Cal. Dec.
22, 2016) .....................................................................................................18, 20

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F.
Supp. 2d 1040 (S.D. Tex. 2012) .......................................................................6, 11

*Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2009)...................................12

*In re IndyMac Mort.-Backed Sec. Litig.*, 286 F.R.D. 226 (S.D.N.Y. 2012) ....................24

*In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) .................................15

*In re Initial Public Offering Sec. Litig.*, 227 F.R.D. 65 (S.D.N.Y. 2004)........................23

*Int'l Bhd. of Teamsters, Airline Div. v. Frontier Airlines, Inc.*, 2013 WL 627149
(D. Colo. Feb. 19, 2013) ......................................................................................10

*In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133 (N.D. Tex. 2014)...............4, 9, 21

*Krim v. pcOrder.com, Inc.*, 402 F.3d 489 (5th Cir. 2005) .............................................22

*In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171 (N.D. Cal. 2017) .....................22, 23

*Loritz v. Exide*, 2015 WL 6790247 (C.D. Cal. July 21, 2015) ............................3, 13, 14

*In re LTV Sec. Litig.*, 88 F.R.D. 134 (N.D. Tex. 1980) ................................................17

*Ludlow v. B.P., PLC*, 800 F.3d 674 (5th Cir. 2015) ....................................................12

*In re Lyft Inc. Sec. Litig.*, 2021 WL 3711470 (N.D. Cal. Aug. 20, 2021) ......................23

*In re Nature's Sunshine Products Inc. Secs. Litig.*, 251 F.R.D. 656 (D. Utah.
2008) ...................................................................................................................20

*O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732 (5th Cir. 2003) ..................4

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 2018 WL 3861840
(N.D. Ohio Aug. 14, 2018) ...................................................................................14

*Prantil v. Arkema Inc.*, 986 F.3d 570 (5th Cir. 2021)...............................................4, 23

*In re Sanofi-Aventis Sec. Litig.*, 293 F.R.D. 449 (S.D.N.Y. 2013) ................................17

## TABLE OF AUTHORITIES

**Page**

*In re SCOR Holding (Switzerland) AG Litig.*, 537 F. Supp. 2d 556 (S.D.N.Y. 2008) ...............................................................................................15, 16

*SEB Inv. Mgmt. AB v. Symantec Corp.*, 2021 WL 1540996 (N.D. Cal. Apr. 20, 2021) ...............................................................................................7, 8

*Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598 (5th Cir. 2006) ............................................4

*In re SunEdison, Inc. Sec. Litig.*, 329 F.R.D. 124 (S.D.N.Y. 2019) ........................................5, 25

*TransUnion, LLC v. Ramirez*, 141 S.Ct. 2190 (2021) ...........................................................22, 24

*Unger v. Amedisys Inc.*, 401 F.3d 316 (5th Cir. 2005) ..................................................6, 11, 15, 21

*W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 325 F.R.D. 280 (D. Minn. 2018) ..............................................................................17, 18, 21

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...................................................................4

*In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267 (S.D.N.Y. 2003)..............................................24

**Statutes and Rules**

15 U.S.C. § 77k(a) ...............................................................................................................24, 25

Fed. R. Civ. P. 23...................................................................................................... *passim*

Fed. R. Civ. P. 30(b)(6)....................................................................................................8, 10

**Regulations**

17 C.F.R. § 230.174(d) ....................................................................................................15

17 C.F.R. § 242.101(b)(1)....................................................................................................15

Prospectus Delivery for Aftermarket Transactions, Securities Act Release No. 6763, Exchange Act Release No. 25546, 53 Fed. Reg. 11841, 1988 WL 237444 (Apr. 4, 1988)....................................................................................15

Defendants ProPetro Holding Corp. ("ProPetro" or the "Company"), Dale Redman, Jeffrey Smith, Ian Denholm, and Spencer D. Armour (collectively, "Defendants") respectfully submit this memorandum of law in opposition to Plaintiffs' motion for class certification, dated May 27, 2022 (ECF 126, the "Motion").[1]

## **INTRODUCTION**

"A class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only, and creative uses are perilous. It is no secret that certification can coerce a defendant into settling on highly disadvantageous terms regardless of the merits of the suit." *Chavez v. Plan Benefit Svcs.*, 957 F.3d 542, 547 (5th Cir. 2020). Therefore, "[t]he court must rigorously consider both Rule 23(a)'s prerequisites and the Rule 23(b) class type" in evaluating Plaintiffs' motion for class certification. *Id.* at 546.

Based on their formulaic motion for class certification, Plaintiffs appear to assume that their proposed class should be certified because they are large institutional investors, their lawyers are experienced, and ProPetro's shares are publicly traded. But this casual approach to a motion for class certification is insufficient to satisfy the necessary "rigorous analysis" of Rule 23's requirements. As set forth below, in Defendants' motion to exclude Plaintiffs' designated expert

---

[1]     "Plaintiffs" refers to Nykredit Portefølje Administration A/S, Oklahoma Firefighters Pension and Retirement System ("OFPRS"), Oklahoma Law Enforcement Retirement System ("OLERS"), Oklahoma Police Pension and Retirement System ("OPPRS"), Oklahoma City Employee Retirement System ("OCERS"), and Police and Fire Retirement System of the City of Detroit ("Detroit"). OFPRS, OLERS, OPPRS and OCERS are collectively referred to as the "Oklahoma Funds." "P. Ex." refers to the exhibits attached to the joint declaration of James A. Harrod and Daniel L. Berger, dated May 27, 2022 (ECF 126-1). "Ex." refers to the exhibits attached to the accompanying declaration of Shahzeb Lari, dated July 22, 2022. "TAC" refers to Plaintiffs' Third Amended Complaint (ECF 81). Cites to "Tr." are to the transcripts of depositions taken in this action (Exs. A-G, K). "Torchio Report" refers to the Expert Report of Frank C. Torchio (ECF 126-9). "Montgomery Report" refers to the Expert Report of John Montgomery (Ex. Q).

(Frank C. Torchio), and in the report of Defendants' economic expert, John Montgomery, Plaintiffs have failed to prove that class certification is warranted here with respect to their claims under either the Securities Exchange Act of 1934 (the "Exchange Act") or the Securities Act of 1933 (the "Securities Act").

*The Securities Act Class*.  As the Court has already found, only one Plaintiff (OLERS) has standing to assert claims under the Securities Act.  OLERS, however, is an inadequate class representative: the OLERS representative charged with managing this litigation has admitted that he has no knowledge of Plaintiffs' Securities Act claims, has made no effort to supervise this action, and has abdicated his responsibilities to counsel (who are themselves inadequate, as discussed below).  Moreover, contrary to the requirements of Rule 23, individual issues predominate over issues common to the Securities Act class: (i) purchasers of ProPetro stock after September 13, 2017 will have to individually "trace" their shares to ProPetro's March 17, 2017 initial public offering (the "IPO"); (ii) purchasers after May 8, 2018 will have to individually prove reliance on the IPO documents; and (iii) purchasers after August 8, 2019 will not be able to show reliance or damages.  *See infra* Sec. IV.

*The Exchange Act Class.*  Plaintiffs' proposed Exchange Act class also cannot be certified.

First, neither Plaintiffs nor their counsel are adequate class representatives.  Although Plaintiffs have submitted identical boilerplate declarations claiming that they are actively involved in supervising this litigation, their deposition testimony has revealed that—despite their repeated representations to this Court—Plaintiffs have done nothing to supervise counsel, coordinate with each other, confirm the accuracy of their own declarations, or comply with their discovery obligations.  Instead, Plaintiffs have turned over the keys to this litigation to their counsel, who

themselves have failed to comply with a standing order from a federal judge and submitted inaccurate declarations to this Court regarding their non-compliance. *See* Sec. III.A.

Second, to certify an Exchange Act class, Plaintiffs have to prove that damages are capable of measurement on a class-wide basis through the application of a sound damages methodology tailored to the facts of the case and Plaintiffs' theory of liability. Plaintiffs rely on their expert to satisfy this requirement but, instead of proposing a workable damages methodology, he simply contends that "if a class is certified by the court, [he] could, if requested, calculate damages on a class-wide basis" based on generalized damages principles applicable to any securities fraud case. Another federal court has already (and correctly) rejected this exact approach by Torchio in similar circumstances to those presented here. *See Loritz v. Exide*, 2015 WL 6790247 (C.D. Cal. July 21, 2015). Because Torchio's approach must be rejected, Plaintiffs cannot show class-wide damages and an Exchange Act class cannot be certified. *See infra* Sec. III.B.

Third, even if the Court were inclined to certify an Exchange Act class, the class proposed by Plaintiffs is impermissibly overbroad. Plaintiffs seek to invoke the fraud-on-the-market presumption of reliance throughout the entire proposed class period (March 17, 2017 to March 13, 2020) in order to satisfy Rule 23. However, this presumption of reliance does not apply to the SEC-mandated "quiet period" immediately following the IPO. Nor does it apply to the period after the Company announced that it was investigating its internal controls and that its prior statements about its internal controls could not be relied on. A class cannot be certified for these periods—therefore, the Exchange Act class cannot start before May 17, 2017 and cannot extend past August 8, 2019, or November 13, 2019 at the very latest. *See* Sec. III.C.

Accordingly, Plaintiffs' request for class certification should be denied or, alternatively, the requested classes and periods should be significantly curtailed.

**ARGUMENT**

**I.   PLAINTIFFS MUST PROVE THAT CLASS CERTIFICATION IS WARRANTED**

A court may certify a class only if it finds that plaintiffs have proven by a preponderance of the evidence that each element of Rule 23 is met. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51, (2011).   This analysis frequently entails "some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped." *Id.* at 351.  "Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996).  "And its analysis must stay close to the facts and law of the case, spurning reliance on generalizations about what types of disputes may be fit for a class." *Chavez*, 957 F.3d at 546.  Moreover, "the district court must consider how a trial on the merits would be conducted if the class were certified." *Prantil v. Arkema Inc.*, 986 F.3d 570, 574 (5th Cir. 2021) (internal quotations omitted).

"[I]t is the plaintiffs['] burden to present evidence showing that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation." *In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 137 (N.D. Tex. 2014) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)) (internal emphasis omitted). Plaintiffs must also establish the demanding predominance and superiority requirements of Rule 23(b)(3), and the other prerequisites for class certification, such as standing, membership in the putative class, and appropriate proposed class definitions.  See Fed. R. Civ. P. 23; *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 601 (5th Cir. 2006); *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 742-43 (5th Cir. 2003).

## II.   PLAINTIFFS' PROPOSED CLASS SHOULD BE DIVIDED INTO TWO CLASSES

Plaintiffs request certification of a single class of ProPetro investors meant to encompass both class members asserting claims under the Exchange Act and class members asserting claims under the Securities Act as follows: "all persons and entities who (a) purchased, or otherwise acquired ProPetro common stock on the open market from March 17, 2017 to March 13, 2020, both dates inclusive (the 'Class Period'), and were damaged thereby; or (b) purchased ProPetro common stock in or traceable to the Company's March 17, 2017 Initial Public Offering." Motion at 1.

Plaintiffs' proposed class must be treated as two separate classes: (i) investors who purchased ProPetro common stock between March 17, 2017 and March 13, 2020 (the "Exchange Act Class"); and (ii) investors who purchased ProPetro common stock in or traceable to its IPO (the "Securities Act Class"). *See* Fed. R. Civ. P. 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this rule.").

Separating investors into two such classes is appropriate given that Plaintiffs' Exchange Act claims encompass more Defendants, challenge many more disclosures by those Defendants, are asserted on behalf of a significantly larger class of investors, require proof of different elements to establish liability, and raise distinct issues relating to class certification. *See* ECF at 116; *In re SunEdison, Inc. Sec. Litig.*, 329 F.R.D. 124, 132-33 (S.D.N.Y. 2019) (dividing single proposed class into two classes, one for Securities Act claims and one for Exchange Act claims).[2]

---

[2]     Only investors who directly purchased or who can trace their purchases to the 25 million shares issued in ProPetro's IPO would qualify as Securities Act plaintiffs, while the Exchange Act plaintiffs would include all purchasers of ProPetro common stock for a three-year period during which ProPetro had an average weekly trading volume of 1.5 million shares. TAC ¶ 42; Motion at 6.

### III.    THE EXCHANGE ACT CLASS CANNOT BE CERTIFIED

#### A.    Plaintiffs And Their Counsel Fail to Meet Rule 23's Adequacy Requirements

"The adequacy determination is made based on the circumstances of each case." *Byes v. Telecheck Recovery Services, Inc.*, 173 F.R.D. 421, 428 (E.D. La. 1997). The relevant question is whether "class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1055 (S.D. Tex. 2012) (quoting *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005)). "Adequacy is for the plaintiffs to demonstrate; it is not up to defendants to disprove the presumption of adequacy." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 481 (5th Cir. 2001).

Plaintiffs assert that they have satisfied their burden because they are institutional investors who have been "actively engaged" in this litigation and their counsel are experienced in securities fraud class actions. *See* Motion. at 8-11; Fed. R. Civ. P. 23(a)(4); Fed. R. Civ. P. 23(g)(4). Given the factual developments to date, this conclusory assertion is insufficient to demonstrate adequacy.

#### 1.    *Plaintiffs' Counsel Is Not Adequate*

As detailed in Defendants' prior submission to the Court (ECF 135), the conduct of Plaintiffs' counsel to date—in particular, their misrepresentations to this Court in sworn declarations and their continued flouting of a standing order issued by another federal court—has "demonstrated a lack of integrity that casts serious doubt on their trustworthiness as representatives of the class." *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011) (finding counsel inadequate based on inappropriate conduct).

On April 21, 2021, Judge Alsup of the United States District Court for the Northern District of California found that Bernstein Litowitz Berger & Grossman LLP ("BLBG") had misled the court regarding matters relevant to its appointment as class counsel in a then-pending securities

fraud class action.  *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 2021 WL 1540996, at *1 (N.D. Cal. Apr. 20, 2021).  Judge Alsup found that BLBG's undisclosed employment relationship with the individual representative of the lead plaintiff tasked with supervising BLBG raised concerns about an improper "pay to play" *quid pro quo* arrangement between BLBG and the lead plaintiff representative.  *Id.* at *1.  Consequently, Judge Alsup ordered BLBG to notify all class members of the underlying issues at its own cost and further ordered, that for the next three years, BLBG must "bring this order to the attention of the assigned judge and the ***decision-maker for the lead plaintiff*** who is to select counsel" in cases in which BLBG sought appointment as class counsel. *Id.* at *2 (emphasis added).

BLBG did not notify the Court of Judge Alsup's order until thirteen months later.  On May 27, 2022, BLBG and Grant & Eisenhofer P.A. ("G&E") submitted a joint declaration in support of Plaintiffs' class certification motion in which they represented that each Lead Plaintiff had "considered [Judge Alsup's] order and reaffirm their selection of Class Counsel."  ECF 126-1, ¶ 15.[3]

---

[3]     BLBG and G&E also did not disclose Judge Alsup's order in their L.R. CV-23 response. *See* ECF 126-2 at ¶ 10 ("There are no other matters to bring to the Court's attention at this time").

[4]     The OFPRS representative attempted to recant his sworn testimony in a declaration submitted to the Court days after he testified. *See infra* at Sec. III.A.2; ECF 133, ¶¶ 3-5.

In an attempt to cover up these failings, counsel filed an untimely and unauthorized "Supplemental Joint Declaration" on July 1, 2022. ECF 130. In this new declaration, BLBG and G&E acknowledged that their prior declaration was false because they never provided Judge Alsup's order to three of the Plaintiffs (OPPRS, OLERS and OCERS); did not provide the order to OFPRS in this case; and that none of the Oklahoma Funds had considered the order or reaffirmed their selection of counsel at the time the initial declaration was filed. ECF 130, ¶¶ 3-6. BLBG and G&E claimed that they had now provided Judge Alsup's order to each Plaintiff and that each Plaintiff had now reaffirmed their selection. *Id.* ¶ 6.



Indeed, it appears that BLBG and G&E's intention from the outset was merely to notify their individual contacts at each Plaintiff that they planned to represent to the Court that their selection as counsel had been reaffirmed, without any such action being taken by each Plaintiffs' decision-makers. *See* ECF 140 at ¶ 8.

---

5

In light of this continuing misconduct, counsel are not appropriate representatives for the class. *See, e.g.*, *Creative Montessori Learning Centers*, 662 F.3d at 918 ("When class counsel have demonstrated a lack of integrity, a court can have no confidence that they will act as conscientious fiduciaries of the class."); *Byes*, 173 F.R.D. at 427 (counsel and representative inadequate where counsel prepared and representative unintentionally signed a false affidavit and where representative lacked understanding of the suit).

### 2.    *Plaintiffs Are Not Adequate*

Plaintiffs are also inadequate.  The only factual support for Plaintiffs' contention that they are adequate class representatives are identical boilerplate declarations submitted by each Plaintiff in which they claim to be actively involved in supervising this litigation.  *See* Motion at 10, P. Exs. B-G; *Berger*, 257 F.3d. at 479 (adequacy requirement of Rule 23(a)(4) "mandates an inquiry into […] the willingness and ability of the [class] representatives to take an active role in and control the litigation to protect the interests of the absentees.").  These declarations are exactly the type of generic and factually devoid declarations that courts in this Circuit have held insufficient to show adequacy.  *See, e.g.*, *In re Kosmos*, 299 F.R.D. at 142 n. 64, 146-47 (rejecting substantively similar declaration).

Furthermore, ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████  It is therefore unsurprising that Plaintiffs have entirely failed to comply with their obligations under both this Court's orders and the applicable procedural rules:

9

- Under the Court's scheduling order, the date for completion of Plaintiffs' document production was June 7, 2022.  *See* ECF 116 at 9.



-                                                                                                  While Plaintiffs "need not be legal scholars and are entitled to rely on counsel" in some respects, they are required to "understand the actions in which they are involved, and that understanding should not be limited to derivative knowledge acquired solely from counsel." *Berger,* 257 F.3d at 483 n.18.

Plaintiffs' deposition testimony also disproves the representations contained in the

---

6       *See, e.g.*, *Int'l Bhd. of Teamsters, Airline Div. v. Frontier Airlines, Inc.*, 2013 WL 627149, at *5 (D. Colo. Feb. 19, 2013) ("The majority view appears to be that information is within a deponent's 'control' and thus 'reasonably available' for purposes of Rule 30(b)(6) when the deponent 'either can secure [information] from the related entity to meet its business needs or acted with it in the transaction that gave rise to the suit.'"); *Anstead v. Virginia Mason Medical Center*, 2022 WL 1641425, at *4 (W.D. Wa. 2022) ("The crux of the matter is not the identity of the holder or the location of the information, but whether the organization may obtain that information through reasonable efforts.").

November 15, 2019 joint declaration they submitted in support of their appointment as lead

plaintiffs (ECF 35-6):

- Plaintiffs represented that they had convened a conference call to discuss "the facts and merits" of their claims and their litigation strategy before moving for lead plaintiff status. *Id.* ¶ 12. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████

- This call took place three years ago. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

In sum, Plaintiffs have not shown that "they, and not counsel, are directing the litigation."

*In re Heartland Payment Sys., Inc.*, 851 F. Supp. at 1055 (quoting *Unger*, 401 F.3d at 321).  To

the contrary, it is apparent that Plaintiffs, or at least their individual representatives, are simply

following counsel's directions.

Plaintiffs' handling of Judge Alsup's order exemplifies the problem. ████████████



---

7    These facts alone defeat Plaintiffs' suggestion that the Court's preliminary appointment of them as lead plaintiffs is somehow dispositive of their adequacy under Rule 23(a)(4).  *See* Motion at 10.  In any event, the adequacy analysis is far more searching than the initial lead plaintiff determination.  *See In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 441 (S.D. Tex. 2002) (noting that the inquiry at the initial appointment of the Lead Plaintiff "is not as searching as the one triggered by a subsequent motion for class certification.").

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████ This raises similar concerns about the

relationships between counsel and Plaintiffs' representatives as raised by Judge Alsup.

**B.        Plaintiffs Have Failed To Provide A Method For The Class-Wide Calculation Of Damages**

In order to satisfy Rule 23(b)(3)'s predominance requirement, Plaintiffs must provide a

sound damages methodology capable of calculating damages on a class-wide basis and consistent

with their theory of liability. *See, e.g.*, *Comcast Corp. v. Behrend*, 569 U.S. 17, 34 (2013); *Ludlow*

*v. B.P., PLC*, 800 F.3d 674, 682-83 (5th Cir. 2015). Plaintiffs rely exclusively on Torchio's report

to satisfy this requirement. *See* Motion at 18-19. However, as set forth in Defendants'

accompanying *Daubert* motion, Torchio fails to provide a damages methodology tailored to

Plaintiffs' claims. The deficiencies in Torchio's report are detailed in the *Daubert* motion, which

is incorporated herein by reference, but a brief summary of those defects is also provided below.[8]

1.        *Torchio Does Not Provide A Sound Class-Wide Damages Methodology*

Plaintiffs assert that Torchio has conducted an event study that measures the declines in

ProPetro's stock price attributable to the alleged fraud (*i.e.*, damages). *See* Motion at 18-19. That

---

[8]      Torchio's opinion on the possibility of calculating class-wide damages is insufficient to justify class certification, regardless of whether the Court finds it admissible under *Daubert*. "[O]pinion testimony should not be uncritically accepted as establishing a Rule 23 requirement merely because the court holds the testimony should not be excluded, under *Daubert* or for any other reason. . . Under Rule 23 the district court must be satisfied or persuaded, that each requirement is met before certifying a class. Like any evidence, admissible expert opinion may persuade its audience, or it may not." *Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 323 (3d Cir. 2009) (internal citations and quotations omitted).

assertion is false.

Torchio Report Secs. VII-VIII.

Rather, Torchio has simply provided a general overview of various event study techniques that could be used to calculate damages if he is asked to do so. *See* Torchio Report ¶¶ 179-217. The fundamental deficiency in this approach is that, beyond pointing to general principles applicable to any securities fraud case, it does not explain how Torchio would calculate class-wide damages based on the particular facts and allegations at issue in this case. In fact, ████████████████████████████████████████████████████:



*See* ECF 116.

This is the same approach Torchio took in *Loritz v. Exide*, 2015 WL 6790247 (C.D. Cal. July 21, 2015), where he submitted an opinion on class-wide damages methodology substantively identical to his opinion here. *Compare* Torchio Report Secs. VII-VIII *with* Ex. H. The *Loritz* court rejected Torchio's approach, finding that, although "Torchio … discusses general techniques for computing damages in securities fraud cases … Torchio fails to tie these theories to the facts of this case or to each other—in other words, he fails to propose one model explaining how he

would use these techniques in concert to calculate damages in this case." 2015 WL 6790247, at *22. The flaw remains the same. "When a class plaintiff presents a damages model that is vague, indefinite, and unspecific, or simply asserts … that there are unspecified 'tools' available to measure damages, the model amounts to 'no damages model at all,' and the class cannot be certified." *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 2018 WL 3861840, at *19 (N.D. Ohio Aug. 14, 2018); *see also* Montgomery Report Sec. VII.

> 2. *The Failure To Provide An Adequate Class-wide Damages Methodology Requires Denial Of Class Certification*

Courts outside this Circuit have occasionally held that, although plaintiffs' failure to provide a class-wide damages model means that a damages class cannot be certified, a liability class can still be certified under Rule 23(c)(4)'s allowance of so-called "issue classes." *See, e.g.*, *Loritz*, 2015 WL 6790247 at *23-24; Fed. R. Civ. P. 23(c)(4) ("When appropriate, an action may be brought or maintained as a class action with respect to particular issues"). This approach is not permissible in the Fifth Circuit. Rather, in this Circuit, "a cause of action, as a whole, must satisfy the predominance requirement" of Rule 23(b)(3). *Castano*, 84 F.3d at 745 n.21. "To hold otherwise would permit plaintiffs to evade the predominance requirement through the nimble use of subdivision (c)(4)." *Corley v. Orangefield Indep. Sch. Dist.*, 152 Fed. Appx. 350, 355 (5th Cir. Oct. 13, 2005) (internal quotations omitted).

Thus, Plaintiffs must establish that class certification is appropriate for both damages and liability purposes—their failure to prove that a damages class can be certified requires denial of class certification in its entirety. *See, e.g.*, *Bridgewater v. Double Diamond-Delaware, Inc.*, 2011 WL 1671021, at *14 (N.D. Tex. Apr. 29, 2011) (declining to sever liability from damages and denying class certification).

## C.    The Overbroad Exchange Act Class Period Must Be Modified

To establish their compliance with the predominance requirements of Rule 23(b), Plaintiffs are proceeding under the fraud-on-the-market theory, which gives rise to a rebuttable presumption of reliance on the alleged misstatements during the putative class period. *See* Motion at 11-13. As discussed below, this presumption does not apply for certain portions of the proposed Exchange Act Class Period, which requires the period to be shortened at both the front and back ends.

### 1.    *The Exchange Act Class Period Cannot Start Before May 12, 2017*

"To support this rebuttable presumption, a securities plaintiff must prove, *inter alia*, that the security at issue is traded in an efficient market." *Unger*, 401 F.3d at 322 (internal quotations omitted). Plaintiffs rely on Torchio's opinion to show that ProPetro traded on an efficient market throughout the Exchange Act Class Period, from the Company's IPO on March 17, 2017 to March 13, 2020. *See* Motion at 13-18. However, courts have held that IPO markets are not efficient: a "primary market for newly issued securities is not efficient or developed under any definition of these terms." *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006) (internal quotation omitted); *see also Freeman v. Laventhol & Horwath*, 915 F.2d 193, 199 (6th Cir. 1990) (same). Therefore, the market for newly-issued securities is presumed to be inefficient during the SEC-mandated "quiet period" following an IPO. *See In re SCOR Holding (Switzerland) AG Litig.*, 537 F. Supp. 2d 556, 577-79 (S.D.N.Y. 2008).

During a quiet period, the SEC prohibits an IPO issuer and securities analysts employed at firms associated with the IPO from publicly disclosing certain information about the issuer. *See* 17 C.F.R. §§ 230.174(d), 242.101(b)(1). These restrictions are maintained because of "[d]oubts . . . about whether, immediately after the completion of an initial public offering, information concerning the issuer will have been disseminated as broadly as information relating to comparable companies having a reporting history under the Exchange Act." Prospectus Delivery for

15

Aftermarket Transactions, Securities Act Release No. 6763, Exchange Act Release No. 25546, 53 Fed. Reg. 11841, 1988 WL 237444, at *3 (Apr. 4, 1988).  The quiet period restrictions reflect "the opinion of the SEC" that "the market in a new security has likely not yet become efficient as that term is understood in the fraud-on-the-market context—*i.e.*, such a market does not yet reflect all publicly available information." *In re SCOR Holding*, 537 F. Supp. 2d at 577 (internal quotations omitted).

After its IPO, ProPetro entered a SEC-imposed "quiet period" from March 17, 2017 through April 11, 2017.  *See* Torchio Report ¶ 27.  As Plaintiffs and Torchio have conceded:

- "[T]here was little, new, important, or significant information during the Quiet Period." Torchio Report ¶ 77. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *In re SCOR Holding*, 537 F. Supp. 2d at 576-78.[9]

████████████████████████████████████████████████████████████████

- ProPetro was not eligible to file a Form S-3 during the quiet period. *See* Motion at 16 n.7.

- ████████████████████████████████████████████████████████████████

In sum, Plaintiffs have not proffered any basis to show that the market was efficient during the quiet period, much less rebut the presumption of inefficiency that applies to that period.  *See In re SCOR Holding*, 537 F. Supp. 2d at 575-79 (excluding quiet period purchasers from proposed class because, during this period, only one analyst covered the stock, the company could not file a

---

[9]    *See also Brokop v. Farmland Partners Inc.*, 2021 WL 4916240, at *18 (D. Colo., Jul. 23, 2021) (excluding first year of proposed class period in absence of evidence showing relationship between company-related news and price movements).

Form S-3, and there was no evidence of market reaction to new information); Montgomery Report Sec. VIII (explaining the lack of indicators of market efficiency during the quiet period). Therefore, the Exchange Act Class Period cannot begin until the end of the quiet period on April 11, 2017. However, the first misstatement alleged by Plaintiffs after that date is on May 12, 2017. TAC ¶ 256. As the class period cannot start until the first alleged misstatement, the Exchange Act Class Period cannot commence until May 12, 2017. *See, e.g.*, *In re Sanofi-Aventis Sec. Litig.*, 293 F.R.D. 449, 459 n.12 (S.D.N.Y. 2013) (class period should start on date of first misstatement).

2.    *The Exchange Act Class Period Must End On August 9, 2019 or November 13, 2019 At The Latest*

"[A]ny showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 269 (2014) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988)). Courts have uniformly found that the presumption of reliance is rebutted when "a curative disclosure ha[s] been made so as to render it unreasonable for an investor, or the market, to continue to be misled by the defendants' alleged misrepresentations," and that the class period must end as of the date of that disclosure. *See, e.g.*, *In re Fed. Nat. Mortg. Ass'n Sec., Derivative & "ERISA" Litig.*, 247 F.R.D. 32, 38 (D.D.C. 2008) ("*Fannie Mae*") ("Fannie Mae's corrective disclosure cured the fraud on the market and thus rebutted the presumption of reliance."); *W. Va. Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 325 F.R.D. 280, 292 (D. Minn. 2018) ("A plaintiff cannot establish reliance after a corrective disclosure unveiled the fraud and, therefore, the fraud was no longer 'reflected in the market price at the time of his transaction.'"); *In re LTV Sec. Litig.*, 88 F.R.D. 134, 148 (N.D. Tex. 1980) ("The post-announcement purchasers are confronted with factual defenses unique to them. More specifically, post-announcement purchasers would be hard put to

travel upon a fraud on the market theory. Instead, these purchasers present the court with individualized assessments different from those who purchased before.").[10]

>            a.    Reliance On Prior Statements About Internal Controls Would Have
>                  <u>Been Unreasonable After August 8, 2019</u>

On August 8, 2019, ProPetro announced that its Audit Committee was conducting an investigation into its internal controls relating to conflicts of interest, related party transactions and expense reimbursements. *See* Ex. I (8/8/19 Form 8-K) at 2; TAC ¶¶ 146-52. The Company further disclosed that it was "likely to conclude that certain internal control deficiencies, ***rising to a level of material weakness***, resulting in the Company's disclosure controls and procedures not being effective … [and] management may identify additional deficiencies that rise to a level of material weakness." TAC ¶ 150 (quoting Ex. I at 2) (emphasis in original). This disclosure allegedly "shook investors' faith in Defendants' representations that ProPetro maintained adequate internal and disclosure controls" (*id.* ¶ 153), caused ProPetro's stock price to decline, and led to extensive analyst coverage predicting further negative news. *Id.* ¶¶ 153-59.

Once the Company disclosed that it was likely to conclude that its internal controls were deficient, any reliance on prior statements about the sufficiency of those controls would have been unreasonable—at that point, the market was aware that the Company's prior statements about its internal controls were unreliable. *See, e.g.*, *In re Am. Italian Pasta Co. Sec. Litig.*, 2007 WL 927745, at *4 (W.D. Mo. Mar. 26, 2007) (closing class period on day that company announced

---

[10]    To the extent that Plaintiffs contend that the questions of reliance, the scope of the appropriate class period, and the curative nature of the Company's disclosures are not appropriately considered at the class certification stage, such arguments have been uniformly rejected. *See, e.g.*, *W. Va. Pipe Trades*, 325 F.R.D. at 293 ("Courts have regularly examined the date of corrective disclosure at the class-certification stage in order to decide whether the class period should be modified."); *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 7406418, at *7–9 (N.D. Cal. Dec. 22, 2016) (finding that the presumption of market efficiency was rebutted as of the date of a corrective disclosure).

commencement of SEC inquiry and delays in financial results because "investors (and the market) knew on [that day] that financial information previously disseminated by Defendants was suspect and should not be relied upon"); *In re Data Access Sys. Sec. Litig.*, 103 F.R.D. 130, 144 (D.N.J. 1984) (ending class period on day that company disclosed that its previous financial statements appeared to be materially misstated because "it was not reasonable for individuals or the market to rely on that financial information").

Indeed, ████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████ In

Torchio's view, "institutional investors [such as Nykredit] have significant experience in evaluating investments and assessing the effect of new information on the future prospects of a traded company's stock," so much so that institutional investors are a "proxy for market efficiency." Torchio Report ¶ 145. ██████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

Accordingly, the Exchange Act Class Period should end on August 8, 2019.

19

  b.  As A Matter Of Law, Investors Could Not Have Relied On Prior Statements About Internal Controls After November 13, 2019

Alternatively, the Exchange Act Class Period must end on November 13, 2019, when ProPetro announced that it had identified a number of internal controls deficiencies and material weaknesses "that resulted in the Company's internal control over financial reporting and disclosure controls and procedures not being effective," and warned that "***investors should no longer rely on management's report on internal control over financial reporting***." *See* TAC ¶¶ 187-190 (emphasis in original); Ex. L (11/13/19 Form 8-K) at 2. As a matter of law, investors could not have continued to rely on ProPetro's prior statements about the sufficiency of its internal controls after this unequivocal disclaimer and warning.

Numerous courts faced with virtually identical facts have found that reliance is unreasonable and can no longer be presumed—and the class period must end—once a company expressly warns investors that its prior statements should no longer be relied upon. *See Fannie Mae*, 247 F.R.D. at 36, 38-41 (ending class period on the day company explicitly warned investors that its prior financial statements "should no longer be relied upon" and that it anticipated a restatement); *In re Nature's Sunshine Products Inc. Secs. Litig.*, 251 F.R.D. 656, 666-67 (D. Utah. 2008) (ending class period on the day company announced that its prior financial statements "should not be relied upon"); *Hayes*, 2016 WL 7406418, at *7-8 (ending class period on day that defendant disclosed "that its prior financial statements 'should not be relied upon'").[11]

---

[11] Any argument that the extent of the alleged fraud was not "fully" disclosed until March 16, 2020 misses the point. As courts have uniformly found, the question is not when the scope of the alleged misconduct was revealed, but at what point it became unreasonable for investors to rely on the defendants' prior statements in light of disclosures about the unreliability of those statements. *See, e.g., Nature's Sunshine Prods.*, 251 F.R.D. at 666; *Fannie Mae*, 247 F.R.D. at 35-40. Similarly, although Plaintiffs may argue that subsequent declines in ProPetro's stock price undermine the conclusion that the August 8 and November 13 disclosures were fully curative, the magnitude of subsequent stock price declines have no bearing on whether the August 8 and November 13 announcements defeat a presumption of reliance. *See, e.g., Am. Italian Pasta*, 2007

20

This rationale applies with equal force here.  The Exchange Act Class Period must end on November 13, 2019, at the very latest.[12]

## IV.    THE SECURITIES ACT CLASS CANNOT BE CERTIFIED

### A.    OLERS Is An Inadequate Plaintiff

OLERS is the only Plaintiff with standing to assert Section 11 claims.  *See* ECF 105 at 61. The adequacy failings discussed above (*supra* at Sec. III.A) are especially acute with respect to OLERS.

This utter lack of engagement defeats any showing of adequacy.  *See, e.g.*, *In re Kosmos*, 299 F.R.D. at 147  (finding Section 11 lead plaintiff inadequate where she had not read challenged documents, could not identify any false statements, had "virtually no knowledge about the case

---

WL 927745, at *4 ("Even if the price dropped after the article was published, the date of 'full correction' need not coincide with the stock price's absolute nadir.").

[12]    In addition, as explained in the Montgomery Report, Torchio's analysis of market volatility in March 2020 is flawed.  Once his model is corrected, it is apparent that the March 16, 2020 corrective disclosure alleged by Plaintiffs had no statistically significant impact on ProPetro's stock price.  *See* Montgomery Report Sec. VI.  Once that corrective disclosure is excluded, the final corrective disclosure alleged by Plaintiffs is on October 31, 2019.  *See* TAC ¶¶ 318-319; *W. Va. Pipe Trades Health & Welfare Fund*, 325 F.R.D. at 292-93.

and . . . does not understand [the] allegations or the core themes permeating the litigation.") (internal quotations omitted).

### B.    Individualized Issues of Injury, Traceability And Reliance Make Certification Improper

Where, as here, Plaintiffs seek to certify a class under Rule 23(b)(3), they must prove that "common issues of law or fact predominate over any questions affecting only individual members." *Unger*, 401 F.3d at 320 (internal quotations omitted); *see also* Fed. R. Civ. P. 23(b)(3); Motion at 11.    Plaintiffs' proposed Securities Act Class cannot satisfy this predominance requirement for several independent reasons, which demonstrate that individualized issues of proof will overwhelm the class action mechanism.

*Post-September 13, 2017 Purchasers.*  To have Section 11 standing, plaintiffs must show that they either purchased securities in the challenged IPO or can trace their shares to the IPO. *See, e.g.*, *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 492 (5th Cir. 2005); *In re Ariad Pharm., Inc. Sec. Litig.*, 842 F.3d 744, 755-56 (1st Cir. 2016).  "[T]his traceability requirement is satisfied as a matter of logic, when stock has only entered the market via a single offering," such as an IPO.  *Krim*, 402 F.3d at 496 (citations omitted).  Once additional shares enter the market through post-IPO events and commingle with the existing pool of IPO shares, purchasers must prove traceability: "[i]f a company issues multiple rounds of stock under different registration statements, this requires proof that the plaintiff's shares are traceable to the misleading statement and not to an innocent one. Otherwise, the plaintiff has not been damaged, and has no standing to sue."  *In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1179 (N.D. Cal. 2017); *see also TransUnion, LLC v. Ramirez*, 141 S.Ct. 2190, 2204-08 (2021) (every class member must have suffered an injury-in-fact and have standing to recover damages).

22

As Plaintiffs concede, there were at least three separate instances where additional ProPetro shares entered the market after the IPO:

- Prior to the IPO, a number of existing private ProPetro stockholders entered into "lock-up agreements," whereby they agreed not to sell their ProPetro shares for 180 days after the IPO. *See* Ex. M (IPO Prospectus) at 109; TAC ¶ 45. Once that lock-up period expired on September 13, 2017, millions of additional, non-IPO shares entered the market.

- On November 2, 2017, ProPetro conducted a secondary offering of 10 million shares. TAC ¶ 132.

- On May 10, 2018, Company conducted another secondary offering of 12 million shares. *Id.* at ¶134.

Investors that purchased ProPetro securities after any of these dates will have to *individually* prove that their purchases are traceable to the IPO—and will have differing burdens depending on whether they purchased after the expiration of the lock-up period, after the November 2, 2017 offering or the May 10, 2018 offering. Even if such proof were possible, it would require thousands of individualized mini-trials. *See, e.g.*, *Krim*, 402 F.3d at 501-02 (declining to use "statistical tracing" despite the burden that individualized tracing would place on the court); *In re Initial Public Offering Sec. Litig.*, 227 F.R.D. 65, 118 (S.D.N.Y. 2004) ("the modern practice of electronic delivery and clearing of securities trades, in which all deposited shares of the same issue are held together in fungible bulk, makes it virtually impossible to trace shares to a registration statement once additional unregistered shares have entered the market"); Montgomery Report Sec. X. This alone warrants denial of certification of a Securities Act Class. *See, e.g.*, *Prantil*, 986 F.3d at 579 .

At a minimum, it requires that the Securities Act Class Period end on September 13, 2017, when the lock-up period expired. *See, e.g.*, *In re Lendingclub*, 282 F. Supp. 3d at 1180 (only shares purchased before expiration of lock-up period were traceable to IPO); *In re Lyft Inc. Sec. Litig.*, 2021 WL 3711470, at *3 n.2 (N.D. Cal. Aug. 20, 2021) (accepting unopposed argument that class

period should end on date of lock-up expiration).[13]

**Post-May 9, 2018 Purchasers.**  Section 11 plaintiffs are generally not required to show reliance because Section 11 "creates a presumption that any person acquiring such security was legally harmed by the defective registration statement." *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 476 F.3d 1261, 1271 (11th Cir. 2007) (internal quotation omitted).  However, once an issuer releases an earnings statement covering a period of at least 12 months after the effective date of the challenged registration statement, this presumption of reliance ends.  *See id.*; 15 U.S.C. § 77k(a).  Any plaintiff who purchases stock after such an earnings statement becomes available must establish actual reliance.  *See, e.g.*, *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2016 WL 215476, at *10 (S.D. Tex. Jan. 19, 2016).

On May 9, 2018, ProPetro filed a 10-Q which, read in conjunction with ProPetro's 2017 10-K (filed March 27, 2018), contained consolidated financial statements for the period from April 1, 2017 to March 31, 2018—*i.e.*, for a period of at least 12 months after ProPetro's IPO registration statement became effective on March 16, 2017.  *See* Ex. N, Ex. O; *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 289 (S.D.N.Y. 2003) ("earning statement" may consist of one report or any combination of reports including Forms 10-K and 10-Q); *In re IndyMac Mort.-Backed Sec. Litig.*, 286 F.R.D. 226, 240 (S.D.N.Y. 2012) (Forms 10-K and 10-Q are "earnings statements" for Section 11 purposes).[14]  Therefore, any Securities Act Class members who purchased ProPetro securities

---

[13]    Some courts have found that traceability is not appropriately addressed at the class certification stage.  Those decisions generally address the issue in the abstract (*i.e.*, they do not address the factual circumstance where post-IPO shares have entered the market) and pre-date the Supreme Court's holding in *TransUnion* that every member of a proposed class must have suffered an injury-in-fact; a Section 11 plaintiff that cannot show traceability has not suffered any such injury.

[14]    Plaintiffs may argue that these filings do not qualify as earnings statements because Plaintiffs claim they misrepresented the Company's internal controls.  Courts in this Circuit have

after May 9, 2018 will have to prove *actual* reliance on the IPO registration statement on an individualized basis. *See* 15 U.S.C. § 77k(a); *APA Excelsior III L.P.*, 476 F.3d at 1271.

   ***Post-August 8, 2019 and November 13, 2019 Purchasers.*** As defined, the Securities Act Class also includes investors who purchased ProPetro stock after the Company disclosed the Audit Committee investigation on August 8, 2019, and after it expressly warned investors that they should not rely on prior statements regarding ProPetro's internal controls on November 13, 2019. *See infra* at Sec. III.C.2.b. Such investors cannot be included in the Securities Act Class because a "class that included purchasers who acquired shares after [these dates] would be unlikely to satisfy the predominance requirement of Rule 23(b)(3), given the individual issues of purchaser knowledge and reliance that would arise." *In re SunEdison, Inc. Secs. Litig.*, 329 F.R.D. at 135 (ending class period for Section 11 claims at date of curative disclosure); TAC ¶ 354 (November 13, 2019 disclosure "made clear that Defendants' statements in the IPO Offering Documents were materially false and misleading and omitted to disclose material facts"); *infra* at Sec. III.C.2.[15]

## CONCLUSION

   For the foregoing reasons, Defendants respectfully request that Plaintiffs' motion for class certification be denied in its entirety.

---

rightly rejected that argument. *See In re Cobalt Int'l Energy, Inc.*, 2016 WL 215476 at *10 (rejecting this argument because "[t]he clear language of [15 U.S.C. § 77k(a)] and the legislative history reflect that the term 'earning statement' is unqualified and should be given its general meaning."). In any event, Plaintiffs do not contend that the earnings or financial information contained in these filings was inaccurate.

[15]  Plaintiffs' proposed class definition does not limit the Securities Act Class to investors who were damaged by the alleged fraud. For example, investors who sold all their shares before the first corrective disclosure alleged by Plaintiffs (August 8, 2019) would be included as class members, despite the fact that they did not suffer any injury from the alleged fraud. *See, e.g., Dura Pharmaceuticals Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("[I]f [] the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). If a Securities Act Class is certified, it should be limited to damaged investors. *See, e.g., In re Enron Corp. Sec. Deriv. and ERISA Litig.*, 529 F. Supp. 2d. 644, 699 (S.D. Tex. 2006).

DATED: July 22, 2022                    Respectfully submitted,


                                        **HUGHES HUBBARD & REED LLP**

                                        By: /s/ Kevin T. Abikoff
                                        Kevin T. Abikoff (Texas Bar No. 24034118)
                                        Benjamin S. Britz (admitted *pro hac vice*)
                                        Sean M. Reilly (admitted *pro hac vice*)
                                        Jonathan Zygielbaum (admitted *pro hac vice*)
                                        1775 I Street, NW
                                        Washington, DC 20006
                                        Telephone: (202) 721-4600
                                        Fax: (202) 721-4646
                                        Email: kevin.abikoff@hugheshubbard.com
                                        Email: benjamin.britz@hugheshubbard.com
                                        Email: sean.reilly@hugheshubbard.com
                                        Email: jonathan.zygielbaum@hugheshubbard.com

                                        Shahzeb Lari (admitted *pro hac vice*)
                                        One Battery Park Plaza
                                        New York, NY 10004-1482
                                        Telephone: (212) 837 6000
                                        Fax: (212) 422 4726
                                        Email: shahzeb.lari@hugheshubbard.com

                                        *Attorneys for Defendants ProPetro Holding Corp.
                                        and Spencer D. Armour, III*

                                        **WINSTEAD PC**

                                        By: /s/ Toby M. Galloway
                                        Toby M. Galloway (Texas Bar No. 00790733)
                                        Matthias Kleinsasser (Texas Bar No. 24071357)
                                        300 Throckmorton Street
                                        Suite 1700
                                        Fort Worth, Texas 76102
                                        Telephone: (817) 420-8200
                                        Fax: (817) 420-8201
                                        Email: tgalloway@winstead.com
                                        Email: mkleinsasser@winstead.com

                                        *Attorneys for Defendant Dale Redman*

                                        **BELL NUNNALLY & MARTIN LLP**

                                        By: /s/ Craig M. Warner

26

Craig M. Warner (Texas Bar No. 24084158)
2323 Ross Avenue
Suite 1900
Dallas, Texas 75201
Telephone: (214) 740-1400
Fax: (214) 740-1499
Email: cwarner@bellnunnally.com

*Attorney for Defendant Ian Denholm*

**EDMUNDSON SHELTON WEISS PLLC**

By: /*s*/ J. Kevin Edmundson
J. Kevin Edmundson (Texas Bar No. 24044020)
Jesse Z. Weiss (Texas Bar No. 24013728)
317 Grace Lane
Suite 210
Austin, Texas 78746
Telephone: (512) 596-3058
Fax: (512) 532-6637
Email: kevin@eswpllc.com
Email: jesse@eswpllc.com

*Attorneys for Defendant Jeffrey Smith*

27

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served electronically to counsel of record on July 22, 2022, via the Court's CM/ECF system.

/s/ Kevin T. Abikoff
Kevin T. Abikoff