**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

NYKREDIT PORTEFØLJE
ADMINISTRATION A/S, OKLAHOMA
FIREFIGHTERS PENSION AND
RETIREMENT SYSTEM, OKLAHOMA
LAW ENFORCEMENT RETIREMENT
SYSTEM, OKLAHOMA POLICE PENSION
AND RETIREMENT SYSTEM, OKLAHOMA
CITY EMPLOYEE RETIREMENT SYSTEM,
POLICE AND FIRE RETIREMENT SYSTEM
OF THE CITY OF DETROIT, Individually and
on behalf of all other similarly situated,
    *Plaintiffs,*

VS.

PROPETRO HOLDING CORP., ET AL.,
    *Defendants.*

CASE No. MO:19-CV-00217-DC

**DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF
FRANK C. TORCHIO**

HUGHES HUBBARD & REED LLP
1775 I Street, N.W.
Washington, D.C.  20006-2401
Tel: (202) 721-4600
Fax: (202) 721-4646

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...........................................................................................................................3

    I.       THE GOVERNING LEGAL STANDARDS ................................................................3

           A.      Admissibility Standard for Expert Opinions..............................................3

           B.      Application of *Daubert* At Class Certification Stage ...............................4

    II.     TORCHIO'S PROPOSED CLASS-WIDE DAMAGES METHODOLOGY DOES NOT SATISFY *DAUBERT* AND *PRANTIL* ....................................................................5

           A.      Torchio's Opinion On A Class-Wide Damages Methodology ...............................5

           B.      Torchio's Approach Has Previously Been Rejected In The Same Circumstances..7

           C.      Torchio's Approach Is Foreclosed By *Prantil*...........................................9

CONCLUSION........................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Blood Reagents Antitrust Litigation*, 783 F.3d 183 (3d Cir. 2015)....................................5, 6

*In re BofI Holding, Inc. Secs. Litig.*, 2021 U.S. Dist. LEXIS 159675 (S.D. Cal. Aug. 24, 2021) .............................................................................................................8

*Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547 (E.D. La. 2015)............................................10

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) .........................................................1

*Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240 (5th Cir. 2020) ..............................9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)................................. passim

*DeMarco v. Lehman Bros., Inc.*, 222 F.R.D. 243 (S.D.N.Y. 2004)............................................2, 3

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ...............................................................4

*Johnson v. Arkema, Inc.*, 685 F.3d 452 (5th Cir. 2012).....................................................4

*King v. Cardinal Services, LLC*, 2021 WL 1377261 (E.D. Tex. Apr. 11, 2021) ...........................4

*Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347 (5th Cir. 2007) ................................................10

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).............................................................3

*Langley v. Int'l Bus. Machs. Corp.*, 2019 WL 7284946 (W.D. Tex. Dec. 23, 2019)................4, 10

*Loritz v. Exide*, 2015 WL 6790247 (C.D. Cal. July 21, 2015) ...........................................2, 3, 7, 8

*Ludlow v. BP, P.L.C.*, 800 F.3d 674 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1824 (2016)..............................................................................................................1

*Moore v. Ashland Chem. Inc.*, 151 F.3d 269 (5th Cir. 1998) .......................................................3, 6

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 2018 WL 3861840 (N.D. Ohio Aug. 14, 2018) ...........................................................................................7, 9

*Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 100 F. App'x 296 (5th Cir. 2004) .............................................................................................................9

*Prantil v. Arkema*, 986 F.3d 570 (5th Cir. 2021)...............................................................4, 5, 6, 9

*Priest v. Sandoz, Inc.*, 2017 U.S. Dist. LEXIS 216166 (W.D. Tex. 2017)...............................4, 10

*In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244 (D.C. Cir. 2013) ........................1

*Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116 (S.D.N.Y. 2014).....................................9

*Spegele v. USAA Life Ins. Co.*, 336 F.R.D. 537 (W.D. Tex. 2020) .................................................4

*Watkins v. Telsmith, Inc.*, 121 F.3d 984 (5th Cir. 1997).................................................................3

**Statutes and Rules**

Fed. R. Evid. 401 ............................................................................................................................2

Fed. R. Evid. 702 .........................................................................................................................2, 3

Fed. R. Civ. P. 23 ...................................................................................................................1, 5, 6, 9

Defendants ProPetro Holding Corp. ("ProPetro" or the "Company"), Dale Redman, Jeffrey Smith, Ian Denholm, and Spencer D. Armour respectfully submit this motion to exclude the expert report and opinion of Plaintiffs' expert, Frank C. Torchio, as it relates to the availability of class-wide damages under Section 10(b) of the Securities Exchange Act of 1934.[1]

## PRELIMINARY STATEMENT

To satisfy the predominance requirement of Rule 23(b)(3) and certify a class, plaintiffs have to prove that damages are "capable of measurement on a class-wide basis," and that the damages methodology proposed by plaintiffs would "measure only those damages attributable" to their theory of liability. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013); *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 683 (5th Cir. 2015) ("in order to certify a class, the damages methodology must be sound and must produce commonality of damages"), *cert. denied*, 136 S. Ct. 1824 (2016).  In the words of the D.C. Circuit: "[n]o damages model, no predominance, no class certification." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013).

Plaintiffs' only evidence supporting the availability of a class-wide damages methodology is the report of their economic expert, Frank C. Torchio ("Torchio").  Plaintiffs assert that Torchio has conducted an event study that measures the declines in ProPetro's stock price attributable to the alleged fraud (*i.e.*, damages). *See* Plaintiffs' Motion for Class Certification at 18-19.  That is

---

[1]    "Plaintiffs" refers to Nykredit Portefølje Administration A/S ("Nykredit"), Oklahoma Firefighters Pension and Retirement System ("Oklahoma Firefighters"), Oklahoma Law Enforcement Retirement System ("Oklahoma Law Enforcement"), Oklahoma Police Pension and Retirement System ("Oklahoma Police"), Oklahoma City Employee Retirement System ("Oklahoma City"), and the Police and Fire Retirement System of the City of Detroit ("Detroit PFRS").  "Ex." refers to the exhibits attached to the July 22, 2022 declaration of Shahzeb Lari. "Torchio Report" refers to Torchio's expert report (ECF 126-9); "Torchio Tr." refers to the transcript of Torchio's deposition in this matter (Ex. G); "Montgomery Report" refers to the expert report of Defendants' economic expert, John Montgomery (Ex. Q).

inaccurate. ███████████ ███████████████

████████████████████████████████████████████

████████████████████████████████████. *See* Torchio Tr. at 43:7-21; 70:14-90;

98:20-99:10; Torchio Report Secs. VII-VIII.

Rather, Torchio has simply opined that "if a class is certified by the court, [he] could, if requested, calculate damages on a class-wide basis by the principles and methodologies" he discusses in his report. Torchio Report ¶ 218. The fundamental deficiency in this so-called methodology is that, beyond pointing to general principles applicable to any securities fraud case, it does not explain how Torchio would calculate class-wide damages based on the particular facts and allegations at issue in this case.

This is substantively identical to the approach that Torchio unsuccessfully took in *Loritz v. Exide*, 2015 WL 6790247 (C.D. Cal. July 21, 2015). The *Loritz* court rejected Torchio's proposed class-wide damages methodology because "Torchio … discusses general techniques for computing damages in securities fraud cases …[but] Torchio fails to tie these theories to the facts of this case or to each other—in other words, he fails to propose one model explaining how he would use these techniques in concert to calculate damages in this case." 2015 WL 6790247, at *22.

The *Loritz* court is not the only federal court to have rejected an opinion by Torchio. Another federal court has found Torchio's testimony—offered to support a fraud-on-the-market theory—to be "both so facially unreliable as to be inadmissible under Fed. R. Evid. 702 and so plainly irrelevant as to be inadmissible under Fed. R. Evid. 401." *DeMarco v. Lehman Bros., Inc.*, 222 F.R.D. 243, 249 (S.D.N.Y. 2004). That court found that Torchio's opinion "[i]n no way . . . survive[d] the 'rigorous analysis' . . . required for class certification," and it described his approach

as "irrelevant on its face," "transparently unreliable," and "appear[ing] to be based on no methodology whatsoever." *Id*. at 248-49.

Torchio's analysis here suffers the same flaws as his analyses in *DeMarco* and *Loritz*. As further discussed below, Torchio's expert opinion regarding the availability of class-wide Section 10(b) damages should be excluded under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## ARGUMENT

### I.   THE GOVERNING LEGAL STANDARDS

#### A.   Admissibility Standard for Expert Opinions

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b)   the testimony is based on sufficient facts or data;
(c)   the testimony is the product of reliable principles and methods; and
(d)   the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.   Under *Daubert*, expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997).

When evaluating these requirements, district courts act as "gatekeepers" in overseeing the admission of expert testimony, whether scientific or otherwise. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 145 (1999).   The district court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in

3

the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Priest v. Sandoz, Inc.*, 2017 U.S. Dist. LEXIS 216166, at *7-8 (W.D. Tex. 2017).

An expert's opinion is too unreliable to admit into evidence "when 'there is simply too great an analytical gap between the data and the opinion proffered.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 461 (5th Cir. 2012) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). "The expert's assurances that he [or she] has utilized generally accepted scientific methodology is insufficient.  Even if the expert is qualified and the basis of his or her opinion is reliable, the underlying methodology must have also been correctly applied to the case's particular facts in order for the expert's testimony to be relevant." *Langley v. Int'l Bus. Machs. Corp.*, 2019 WL 7284946, at *2 (W.D. Tex. Dec. 23, 2019).  In the final analysis, "the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial." *King v. Cardinal Services, LLC*, 2021 WL 1377261, at *1 (E.D. Tex. Apr. 11, 2021).

**B.     Application of *Daubert* At Class Certification Stage**

Until the Fifth Circuit's recent decision in *Prantil v. Arkema*, 986 F.3d 570 (5th Cir. 2021), there was some ambiguity about the extent to which *Daubert* applied to expert opinions at the class certification stage in this Circuit. *See, e.g.*, *Spegele v. USAA Life Ins. Co.*, 336 F.R.D. 537, 545 (W.D. Tex. 2020). *Prantil* clarified that *Daubert* applies with "full force" at the class certification stage:

> And, we ask, when the cementing of relationships among proffered class members of liability or damages or both turns on scientific evidence should we insist that the metric of admissibility be the same for certification and trial. We answer that question in the affirmative; the *Daubert* hurdle must be cleared when scientific evidence is relevant to the decision to certify.

*Prantil*, 986 F.3d at 575.

4

The Fifth Circuit explained that the necessity of applying *Daubert* at class certification is simply "a natural extension of the Supreme Court's admonition … to conduct a 'rigorous analysis' of the proposed class's conformity with Rule 23." *Id.* (citing *In re Blood Reagents Antitrust Litigation*, 783 F.3d 183, 187 (3d Cir. 2015)). "This 'rigorous analysis' applies to expert testimony critical to proving class certification requirements." *In re Blood Reagents*, 783 F.3d at 187. "Expert testimony that is insufficiently reliable to satisfy the *Daubert* standard cannot prove that the Rule 23(a) prerequisites have been met in fact, nor can it establish through evidentiary proof that Rule 23(b) is satisfied. This is consistent with [the Fifth Circuit's] prior holding that the class certification inquiry ... must be made based on adequate admissible evidence to justify class certification. Thus, if an expert's opinion would not be admissible at trial, it should not pave the way for certifying a proposed class." *Prantil*, 986 F.3d at 575-76.

## II.   TORCHIO'S PROPOSED CLASS-WIDE DAMAGES METHODOLOGY DOES NOT SATISFY *DAUBERT* AND *PRANTIL*

### A.   Torchio's Opinion On A Class-Wide Damages Methodology

The majority of Torchio's report is devoted to his analysis of market efficiency. *See* Torchio Report at 12-64.[2] His opinion on class-wide damages is contained in two sections of the report, Sections VII and VIII:

- Section VII sets forth a general overview of various event study techniques that can be used to calculate damages under Section 10(b). *See id.* ¶¶ 179-217. This section, ███████████████████████████████████████████. Torchio Tr. at 98:25; *see* Ex. P, at Sec. V; Ex. H, at Sec. VII G. It is entirely generic and does not contain any mention of the Defendants, claims or allegations in this action.

- Section VIII, which is only eight paragraphs long, states that Torchio could use the general principles identified in Section VII to calculate damages on

---

[2]   Although there are a number of deficiencies in Torchio's market efficiency analysis as set forth in the report of Defendants' economic expert, John Montgomery, Defendants have not moved to exclude that portion of Torchio's opinion and report.

a class-wide basis if he is asked to do so.  In particular, he appears to state that he would employ an event study to consider whether the alleged corrective disclosures identified in the TAC informed the market that the statements challenged in the TAC were false, and whether (and by how much) ProPetro's stock price was inflated during the purported class period. *See* Torchio Report ¶¶ 218-224.

That is the extent of Torchio's opinion on the availability of class-wide damages. Basically, he states that he could conduct a damages analysis if Plaintiffs ask him to do so.  In addition, ███████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████. *See, e.g.*, Torchio Tr. at 96:5-9 ████████

████████████████████████████████████████████████████

███████████████████████████████████████████████; 97:21-98:3

("████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████;

98:8-13 █████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████; *see also* Montgomery Report Sec. VII (examining Torchio's failure to explain how he would apply the general principles identified in his report).

This is patently insufficient to satisfy the predominance requirements of Rule 23(b) or to pass muster under *Daubert* and *Prantil*.  *See, e.g.*, *Moore*, 151 F.3d at 277 (under *Daubert*, courts need not admit testimony that is based purely on the ipse dixit of the expert); *In re Blood Reagents*, 783 F.3d at 187 ("actual, not presumed, conformance with the Rule 23 requirements remains necessary, and [a] party's assurance to the court that it intends or plans to meet the requirements

is insufficient"); *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 2018 WL 3861840, at \*19 (N.D. Ohio Aug. 14, 2018) ("When a class plaintiff presents a damages model that is vague, indefinite, and unspecific, or simply asserts … that there are unspecified 'tools' available to measure damages, the model amounts to 'no damages model at all,' and the class cannot be certified.").

### B.   Torchio's Approach Has Previously Been Rejected In The Same Circumstances

Indeed, one federal court has already rejected this precise approach by Torchio.  In *Loritz v. Exide*, the plaintiffs asserted that the defendants made misleading statements and omitted material information about Exide's lack of compliance with environmental regulations and about Exide's worsening financial condition during a two-year class period, purportedly in violation of Section 10(b) and Section 11.  *See* 2015 WL 6790247, at \*21 (C.D. Cal. July 21, 2015).  The plaintiffs alleged that the falsity of the challenged statements was revealed by four corrective disclosures between April 4, 2013 and May 24, 2013.  *See id.*, at \*24.

Torchio submitted an expert report on behalf of the plaintiffs at the class certification stage, asserting that Section 10(b) damages could be calculated on a class-wide basis.  *See id.*, at \* 22. Torchio's opinion on the availability of a class-wide damages methodology was substantively identical to his opinion here.  *Compare* Torchio Report Secs. VII-VIII, *with* Ex. H. Sec. VII G. The *Loritz* court rejected Mr. Torchio's approach, finding that, although "Torchio … discusses general techniques for computing damages in securities fraud cases … Torchio fails to tie these theories to the facts of this case or to each other—in other words, he fails to propose one model explaining how he would use these techniques in concert to calculate damages in this case." 2015 WL 6790247, at \*22.  In reaching that conclusion, the court noted that Torchio's failure to tie his generic methodology to the plaintiffs' claims was particularly problematic given the nature of

7

those claims which alleged multiple misrepresentations; multiple corrective disclosures at different points in time, each allegedly correcting multiple misrepresentations; and "some of the allegedly concealed facts arose or were made known to the company (and thus for the first time could have been disclosed) during the class period." *See id.*, at \*22.  Given these complicating factors, the court found that Torchio's assertion that he could calculate class-wide damages based on general event study principles was insufficient.

*Loritz* is on all fours with the situation here.  As noted, Torchio's reports are substantively identical on the question of class-wide damages (if anything his report here is even more formulaic).  Plaintiffs' Section 10(b) claims here are also remarkably similar in nature to those in *Loritz*.  Plaintiffs challenge multiple statements that were made at various points in time over a three-year period and are alleged to be false for different reasons (DE 113 at 6-7)[3]; Plaintiffs contend that the falsity of these statements was revealed by five separate corrective disclosures from August 8, 2019 to March 20, 2020 (TAC ¶¶ 143-203; 310-320); and the TAC acknowledges that the Company only became aware of some of the allegedly misrepresented facts during the course of the Class Period.  *See, e.g.*, *id.* ¶¶ 10, 14-15.[4]

---

[3]    The Court has limited Plaintiffs' Section 10(b) claims to (i) statements regarding the adequacy of ProPetro's internal and disclosure controls in relation to improper expense reimbursements to Redman and Smith and related-party transactions made between March 17, 2017 and May 10, 2018; and (ii) statements regarding the adequacy of ProPetro's internal and disclosure controls in relation to Redman's pledging of ProPetro's stock as collateral for personal loans made between March 17, 2017 and March 20, 2020.  *See* ECF 116 at 6-7.

[4]    Plaintiffs may argue that Torchio's approach was found acceptable in *In re BofI Holding, Inc. Secs. Litig.*, 2021 U.S. Dist. LEXIS 159675, \*15-30 (S.D. Cal. Aug. 24, 2021).  That case has no bearing here.  As Torchio explained in the report he submitted in *BofI*, he was only required to conduct an analysis of damages stemming from a single corrective disclosure.  *See* Ex. P ¶ 95.  In that circumstance, the *BofI* court found that Torchio's opinion sufficiently identified an appropriate class-wide damages methodology.  By contrast, here—as in *Loritz*—Plaintiffs have alleged numerous corrective disclosures over a one-year period about multiple issues which arose at different points in time.  *See* TAC ¶¶ 143-203; 310-320.

Other federal courts have similarly found that a generalized expert opinion on class-wide damages that is not tethered to the facts and theories at issue is insufficient to support class certification in securities fraud cases. *See, e.g., Ohio Pub. Emps. Ret. Sys.*, 2018 WL 3861840 at *19; *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 142 (S.D.N.Y. 2014) ("without assurance beyond [plaintiffs' proffered expert]'s say-so, the Court cannot conclude that there is a damages model that will permit the calculation of damages on a classwide basis."). And, although not in the securities fraud context, the Fifth Circuit has rejected similar efforts to support class certification with nothing more than a general "approach" to calculating damages. *See, e.g., Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 258 (5th Cir. 2020) (reversing class certification based on an expert's "preliminary overview of how … damages might be calculated"); *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 100 F. App'x 296, 299 (5th Cir. 2004) (affirming denial of certification where an expert merely asserted that "multiple regression analysis ***could*** be used to calculate damages…").

### C.    Torchio's Approach Is Foreclosed By *Prantil*

Although the cases discussed in the preceding section found that an expert's generalized contentions about the availability of class-wide damages without any attempt to tie those generalizations to the facts of the particular case were insufficient to satisfy Rule 23, they did not rule on whether such expert opinions were admissible under *Daubert*. However, the logic of those cases—especially when viewed through the prism of *Prantil's* holding that an expert's analysis cannot be used "to justify class certification" unless it "would be admissible at trial" (986 F.3d at 574-76)—fully supports the exclusion of Torchio's opinion.

As noted, ███████████████████████████████████ ███████████████████████████████. *See* Torchio Tr. at 99:2-15. In light of that fact, his flat assertion that he ***could*** calculate class-wide damages ***if*** he is asked to do so (Torchio Report

9

¶ 218) would clearly not be admissible at trial—nothing in *Daubert* or the Federal Rules of Evidence authorizes a trial court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. *See Priest*, 2017 U.S. Dist. LEXIS 216166, at *9; *see also Langley*, 2019 WL 7284946 at *2 ("the underlying methodology must have also been correctly applied to the case's particular facts in order for the expert's testimony to be relevant").

This is particularly true given



. *See supra* at 9, n.3; ECF 116 at 6-7; Torchio Tr. at 13:25-14:6, 77:21-79:22.

An expert opinion premised on facts and legal theories not at issue in the underlying litigation cannot satisfy *Daubert's* relevance and reliability criteria. *See, e.g., Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) ("[t]he expert's testimony must be reliable at each and every step or else it is inadmissible. 'The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*.'") (internal citations omitted); *Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547, 551 (E.D. La. 2015) ("The question here is whether the reasoning or methodology 'fits' the facts of the case and will thereby assist the trier of fact to understand the evidence") (internal citations omitted).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Torchio's opinion regarding the availability of class-wide Section 10(b) damages be excluded.

10

DATED: July 22, 2022

Respectfully submitted,

**HUGHES HUBBARD & REED LLP**

By: /s/ Kevin T. Abikoff
Kevin T. Abikoff (Texas Bar No. 24034118)
Benjamin S. Britz (admitted *pro hac vice*)
Sean M. Reilly (admitted *pro hac vice*)
Jonathan Zygielbaum (admitted *pro hac vice*)
1775 I Street, NW
Washington, DC 20006
Telephone: (202) 721-4600
Fax: (202) 721-4646
Email: kevin.abikoff@hugheshubbard.com
Email: benjamin.britz@hugheshubbard.com
Email: sean.reilly@hugheshubbard.com
Email: jonathan.zygielbaum@hugheshubbard.com

Shahzeb Lari (admitted *pro hac vice*)
One Battery Park Plaza
New York, NY 10004-1482
Telephone: (212) 837 6000
Fax: (212) 422 4726
Email: shahzeb.lari@hugheshubbard.com

*Attorneys for Defendants ProPetro Holding Corp. and Spencer D. Armour, III*

**WINSTEAD PC**

By: /s/ Toby M. Galloway
Toby M. Galloway (Texas Bar No. 00790733)
Matthias Kleinsasser (Texas Bar No. 24071357)
300 Throckmorton Street
Suite 1700
Fort Worth, Texas 76102
Telephone: (817) 420-8200
Fax: (817) 420-8201
Email: tgalloway@winstead.com
Email: mkleinsasser@winstead.com

*Attorneys for Defendant Dale Redman*

11

**BELL NUNNALLY & MARTIN LLP**

By: /s/ Craig M. Warner
Craig M. Warner (Texas Bar No. 24084158)
2323 Ross Avenue
Suite 1900
Dallas, Texas 75201
Telephone: (214) 740-1400
Fax: (214) 740-1499
Email: cwarner@bellnunnally.com

*Attorney for Defendant Ian Denholm*

**EDMUNDSON SHELTON WEISS PLLC**

By: /s/ J. Kevin Edmundson
J. Kevin Edmundson (Texas Bar No. 24044020)
Jesse Z. Weiss (Texas Bar No. 24013728)
317 Grace Lane
Suite 210
Austin, Texas 78746
Telephone: (512) 596-3058
Fax: (512) 532-6637
Email: kevin@eswpllc.com
Email: jesse@eswpllc.com

*Attorneys for Defendant Jeffrey Smith*

12

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing was served electronically to counsel of record on July 22, 2022, via the Court's CM/ECF system.

                                        /s/ Kevin T. Abikoff
                                        Kevin T. Abikoff