**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| NYKREDIT PORTEFØLJE ADMINISTRATION A/S, OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM, OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, OKLAHOMA CITY EMPLOYEE RETIREMENT SYSTEM, POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, Individually and on behalf of all others similarly situated, | § § § § § § § § § § | No. MO:19-CV-217-DC |
| *Plaintiffs,* | § § | |
| v. | § § | |
| PROPETRO HOLDING CORP., DALE REDMAN, JEFFREY SMITH, IAN DENHOLM, and SPENCER D. ARMOUR III, | § § § § | |
| *Defendants.* | § § § § § | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**
**OF SETTLEMENT PURSUANT TO FED. R. CIV. P. 23**

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES .................................................................................................. iii

I.   INTRODUCTION ........................................................................................................... 1

II.  FACTUAL AND PROCEDURAL BACKGROUND OF THE LITIGATION .................... 2

III. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............... 5

    A.   Description of the Settlement and Plan of Allocation ..................................... 5

    B.   Standards for Preliminary Approval of a Settlement Under Rule 23 ............................ 5

        1.   The Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel ........................................................................ 7

        2.   The Settlement Is Sufficient in Light of the Potential Risks and Delays ............... 8

        3.   The Litigation Is at a Point Suitable for Settlement ............................................. 10

        4.   The Settlement Should Be Preliminarily Approved in Light of the Range of Possible Recovery ................................................................................................ 10

        5.   The Opinion of Lead Counsel Supports Approval ............................................... 11

IV.  THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS TO PERMIT DISSEMINATION OF THE NOTICE .................................................................. 11

        1.   The Settlement Class Members Are Numerous .................................................... 12

        2.   There Are Questions of Law or Fact Common to the Settlement Class ............... 13

        3.   Plaintiffs' Claims Are Typical of the Settlement Class's Claims ........................ 14

        4.   Plaintiffs Have Fairly and Adequately Protected the Interests of the Settlement Class…. .................................................................................................................. 15

        5.   Questions Common to the Settlement Class Predominate Over Individual Questions and a Class Action Is Superior to Other Available Means of Adjudication ......................................................................................................... 17

V.   NOTICE OF THE SETTLEMENT SHOULD BE APPROVED ....................................... 18

VI.  THE PROPOSED SCHEDULE SHOULD BE APPROVED ............................................ 20

VII. CONCLUSION ............................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)....................................................................................17, 18

*In re Beef Indus. Antitrust Litig.*,
   607 F.2d 167 (5th Cir. 1979) .............................................................................19

*Bridges v. Ridge Natural Resources, LLC*,
   MO:18-CV-00134-DC, 2020 WL 7495252 (W.D. Tex. Jan. 3, 2020)......................................6

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ........................................................................5, 8

*Daves v. Dallas County Texas*,
   Civil Action No. 3:18-CV-0154-N, 2018 WL 4537202 (N.D. Tex. 2018) ..............................14

*In re Deepwater Horizon*,
   739 F.3d 790 (5th Cir. 2014) ........................................................................5, 13

*In re Deepwater Horizon*,
   785 F.3d 1003 (5th Cir. 2015) .....................................................................15, 16

*In re Dell Inc.*,
   No. A–06–CA–726–SS, 2010 WL 2371834 (W.D. Tex. June 11, 2010)...............................12

*Feder v. Electronic Data Sys. Corp.*,
   429 F.3d 125 (5th Cir. 2005) .............................................................................15

*Hernandez v. City of Houston, Texas*,
   Civil Action No. 4:16-3577, 2019 WL 2869157 (S.D. Tex. 2019) ........................................14

*In re Katrina Canal Breaches Litig.*,
   628 F.3d 185 (5th Cir. 2010) .............................................................................19

*Kirkpatrick v. HomeAway.com Inc.*,
   NO. 1:16-CV-733-LY, 2020 WL 7680558 (W.D. Tex. 2020)................................................12

*Krim v. pcOrder.com, Inc.*,
   210 F.R.D. 581 (W.D. Tex. 2002) .......................................................................13

*Lehocky v. Tidel Tech., Inc.*,
   220 F.R.D. 491 (S.D. Tex. 2004)..........................................................................13

*Lewis v. Newman*,
   59 F.R.D. 525 (S.D.N.Y. 1973) ............................................................................8

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ..................................................................................8

*Manchacha v. Chater*,
   927 F.Supp. 962 (E.D. Tex. 1996) ........................................................................10

*Newby v. Enron Corp.*,
   394 F.3d 296 (5th Cir. 2004) ..................................................................................7

*Patel v. Reata Pharmaceuticals Inc.*,
   549 F. Supp. 3d 559 (E.D. Tex. 2021) ..................................................................16

*Pettway v. Am. Cast Iron Pipe Co.*,
   576 F.2d 1157 (5th Cir. 1978) ..............................................................................11

*Rooney v. EZCORP, Inc.*,
   330 F.R.D. 439 (W.D. Tex. 2019) ........................................................................14

*Rougier v. Applied Optoelectronics, Inc.*,
   Civil Action No. 4:17-cv-02399, 2019 WL 6111303 (S.D. Tex. Nov. 13,
   2019) ..............................................................................................................13, 16

*Spegele v. USAA Life Ins. Co.*,
   336 F.R.D. 537 (W.D. Tex. 2020) ........................................................................13

*United States v. Tex. Educ. Agency*,
   679 F.2d 1104 (5th Cir. 1982) ..............................................................................11

*Vine v. PLS Fin. Servs., Inc.*,
   331 F.R.D. 325 (E.D. Tex. 2019) ..........................................................................18

**Statutes**

15 U.S.C. § 77u-4 ............................................................................................16, 19

15 U.S.C. § 77z-1, *et seq.* ........................................................................................16

**Other Authorities**

Fed. R. Civ. P. 23 ..................................................................................... *passim*

Fed. R. Civ. P. 12(f) ..................................................................................................3

Lead Plaintiffs Nykredit Portefølje Administration A/S, Oklahoma Firefighters Pension and Retirement System, Oklahoma Law Enforcement Retirement System, Oklahoma Police Pension and Retirement System, and Oklahoma City Employee Retirement System, together with plaintiff Police and Fire Retirement System of the City of Detroit (collectively, "Plaintiffs") hereby submit this unopposed motion for preliminary approval of the settlement of the Action.  Plaintiffs request that the Court grant preliminary approval of the Settlement because it satisfies the applicable standards set forth in Rule 23(e)(1) of the Federal Rules of Civil Procedure.

## I.    INTRODUCTION

After three years of hard-fought litigation, Plaintiffs, on behalf of themselves and the proposed Settlement Class, have agreed to settle all claims asserted in this Action, in exchange for $30,000,000, as set forth in the Stipulation and Agreement of Settlement dated as of September 22, 2022 (the "Settlement Agreement").[1]  This Proposed Settlement is a very favorable recovery in light of the costs, risks, and delays of further litigation and the range of possible recovery.

In agreeing to resolve the Action, Plaintiffs and Lead Counsel were well informed of the strengths and weakness of the case, as a result of their extensive investigation of the claims, their briefing of the motions to dismiss, briefing of Plaintiffs' motion for class certification, the extensive discovery conducted, and the formal mediation process and other settlement negotiations.  Plaintiffs respectfully submit that the Settlement appropriately balances Plaintiffs' objective of securing the highest possible monetary recovery for the Settlement Class against the significant risk that they could receive a smaller recovery—or no recovery at all—after further litigation if Plaintiffs failed to prove their claims.  As discussed below, Plaintiffs faced significant risks in establishing Defendants' liability and proving damages.

---

[1] The Settlement Agreement is attached hereto as Exhibit 1.  All capitalized terms not otherwise defined shall have the meanings ascribed to them in ¶ 1 of the Settlement Agreement.

Approval of a class action settlement is a two-step process.  *See* Fed. R. Civ. P. 23(e)(1), (2).  At this stage, Plaintiffs request only that the Court grant preliminary approval of the Settlement, which will allow notice to be sent, and will set a date for the proposed final approval hearing (the "Settlement Hearing").  Next, at the Settlement Hearing, the Court will be asked to determine whether the Settlement is fair, reasonable, and adequate based on more detailed motion papers to be submitted in support of the proposed Settlement prior to that hearing.

## II.    FACTUAL AND PROCEDURAL BACKGROUND OF THE LITIGATION

This dispute arises out of Defendants' statements regarding the Company's internal controls, which were designed to prevent misconduct and inaccuracies in ProPetro's financial reports and regulatory filings, as well as statements regarding ProPetro's Code of Ethics and related-party transaction policy.  Plaintiffs contend that these statements were false and misleading in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Sections 11 and 15 of the Securities Act of 1933 ("Securities Act").  These allegations were based on (i) ProPetro's own public disclosures, (ii) Lead Counsel's investigation of public information, and (iii) interviews with former ProPetro employees.  The Complaint asserts that Defendants' statements about the state of and adherence to the Company's internal controls and policies were revealed through a series of five corrective disclosures between August 2019 through March 2020, each of which caused ProPetro's share price to decline, causing loses to investors.  Plaintiffs' Third Amended Class Action Complaint ("Complaint") (Doc. 81) at ¶¶ 10, 147, 149-152 (August 8, 2019); 160 (August 30, 2019); 176 (October 18, 2019); 179-193 (October 31, 2019); 104, 107, 196, 228 (March 16, 2020).[2]

---

[2] References to "¶" are to the numbered paragraphs of the Complaint.

An initial complaint was filed on September 16, 2019 against Defendants and several other individuals and entities in the Western District of Texas, styled *Logan v. ProPetro Holding Corp., et al.*, Case No. 7:19-CV-217. (Doc. 1). On November 15, 2019, Lead Plaintiffs filed a joint motion for appointment as lead plaintiffs and the appointment of Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") and Grant & Eisenhofer P.A. ("Grant & Eisenhofer") as lead counsel. (Doc. 35). On December 16, 2019 the Court granted Lead Plaintiffs' motion. (Doc. 43).

On July 30, 2020, after a substantial investigation and the filing of two prior amended complaints (*see* Docs. 55 and 73), Plaintiffs served and filed the operative Complaint. (Doc. 81). The Complaint asserts claims on behalf of a class consisting of all persons and entities who (a) purchased, or otherwise acquired ProPetro common stock on the open market from March 17, 2017 to March 13, 2020, both dates inclusive (the "Class Period"), and were damaged thereby; or (b) purchased ProPetro common stock in or traceable to the Company's March 17, 2017 Initial Public Offering ("IPO"). *Id.* The Complaint alleges, *inter alia,* that Defendants made materially false and misleading statements about ProPetro's internal controls. *Id.*

On August 31, 2020, Defendants filed motions to dismiss the Complaint. (Docs. 89-93). Plaintiffs filed an omnibus memorandum of law in opposition to Defendants' motions on September 30, 2020, (Doc. 97), and Defendants filed their replies on October 30, 2020. (Docs. 99-104). On September 13, 2021, the Court entered an order granting in part and denying in part Defendants' motions to dismiss the Complaint. (Doc. 105). Following the Court's ruling, discovery in this Action commenced in October 2021 and continued through August 2022.

On October 22, 2021, Defendants filed a motion to strike portions of the Complaint under Federal Rule of Civil Procedure 12(f) contending that these potions were rendered "immaterial" and "impertinent" by the Court's September 13, 2021 order (the "Motion to Strike"). (Doc. 109). On November 5, 2021, Plaintiffs filed an opposition to the Motion to Strike (Doc. 110), and on

March 18, 2022, the Court granted the Motion to Strike (Doc. 116).  On April 1, 2022, Defendants filed their answers to the Complaint.  (Docs. 119-124).

On May 27, 2022, Plaintiffs filed their motion for class certification (the "Class Certification Motion") and supporting papers, including a report from an expert on market efficiency.  (Doc. 126).  On July 1, 2022, Plaintiffs filed four supplemental declarations in support of the Class Certification Motion.  (Docs. 130-133).  On July 5, 2022, Defendants filed a motion to strike the supplemental declarations dated July 1, 2022 contending that they were untimely and improper declarations.  (Doc. 135).  On July 19, 2022, Plaintiffs filed an opposition to Defendants' July 5, 2022 motion to strike the supplemental declarations.  (Doc. 139).  On July 22, 2022 Defendants filed their opposition to Plaintiffs' Class Certification Motion and a motion to exclude Plaintiffs' market efficiency expert.  (Docs. 144, 146).

The Parties conducted an initial mediation in August 2021 with Robert A. Meyer, Esq. of JAMS, an experienced mediator.  Although the initial mediation did not result in a settlement, the Parties remained in touch with Mr. Meyer and scheduled a second mediation, which took place in May 2022.  Both mediations were preceded by the exchange of detailed mediation submissions addressing issues of liability and damages, and the May 2022 mediation also included presentations made to the mediator.  The May 2022 mediation did not result in a settlement, but the Parties continued to engage in settlement discussions through Mr. Meyer from May 2022 through August 2022.  Ultimately, Mr. Meyer made a mediator's proposal that the Parties settle the action for $30,000,000, which the Parties considered on a double-blind basis.

On August 11, 2022, Mr. Meyer informed the Parties that both sides had accepted the proposal.  The Parties thereafter executed a Term Sheet memorializing their agreement.  On August 22, 2022, the Parties jointly filed a motion to stay in consideration of their agreement to settle the Action (Doc. 167).  On August 23, 2022, the Court issued a text order granting the Parties' motion.

III.     **THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

A.     **Description of the Settlement and Plan of Allocation**

The Proposed Settlement provides that Defendants will pay $30 million in cash into an Escrow Account for the benefit of the Settlement Class.  This consideration, after deduction of any Taxes, Notice and Administration Costs, Litigation Expenses, and attorneys' fees, as provided for in the Settlement Agreement or approved by the Court (the "Net Settlement Fund"), will be distributed among the Settlement Class Members who submit timely and valid Proof of Claim Forms in accordance with the Plan of Allocation set forth in the Notice.  Plaintiffs believe that the Proposed Settlement is an excellent recovery based on the claims asserted in the Action, and is in all respects, fair, adequate, reasonable, and in the best interests of the Settlement Class.

Under the Plan of Allocation, the Claims Administrator will calculate each Authorized Claimant's Recognized Claim based on the information supplied in their Proof of Claim Form. The Plan of Allocation allocates the Net Settlement Fund to Settlement Class Members on a *pro rata* basis after determining the Settlement Class Members' Recognized Claim.  The Plan of Allocation takes into account the dates and prices at which the Claimant purchased and sold their shares of ProPetro common stock and the statute under which they would be able to assert claims. The Plan of Allocation was determined with the assistance of Plaintiffs' expert, Frank Torchio, of Forensic Economics.  Plaintiffs submit that the Plan of Allocation is fair and reasonable and should be approved together with the Settlement at the Settlement Hearing.

B.     **Standards for Preliminary Approval of a Settlement Under Rule 23**

In the Fifth Circuit, there is a strong policy in favor of voluntarily settlement of litigation, and particularly so in class actions.  *See, e.g., Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (noting "overriding public interest in favor of settlement," "[p]articularly in class action suits"); *In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014) (same).

5

Federal Rule of Civil Procedure 23(e) requires judicial approval of class action settlements. The procedure for approval of a proposed class action settlement is a well-established, two-step process. *First*, the Court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class, *see* Fed. R. Civ. P. 23(e)(1); and *second*, after notice has been provided and a hearing has been held, the Court determines whether to grant final approval of the settlement, *see* Fed. R. Civ. P. 23(e)(2).

A court should grant preliminary approval to authorize notice of a settlement to the class upon a finding that it "will likely be able" to (i) finally approve the settlement under Rule 23(e)(2) and (ii) certify the class for purposes of the settlement. Fed. R. Civ. P. 23(e)(1)(B). This codifies case law indicating that Courts should grant preliminary approval where "the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of a class representative or of segments of the class, or of excessive compensation for attorneys, and appears to fall within the range of possible approval[.]" *Bridges v. Ridge Natural Resources, LLC*, MO:18-CV-00134-DC, 2020 WL 7495252, at *4 (W.D. Tex. Jan. 3, 2020) (quotation and alteration omitted).

At final approval, the Court will have to determine whether the proposed Settlement is "fair, reasonable, and adequate." Rule 23(e)(2). In considering whether a settlement is fair, reasonable, and adequate, Rule 23(e)(2) provides that the Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). In addition, the Fifth Circuit has historically considered these six factors

in evaluating the adequacy of a proposed class action settlement:

> (1) [whether there is] evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs' [*sic*] prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members.

*Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004).

### 1. The Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel

There is no collusion or fraud behind the Proposed Settlement, as evidenced by the process through which the Parties reached their agreement. The Proposed Settlement was reached only after a lengthy process that involved two mediation sessions as well as several months of negotiations through an experienced mediator. In addition, Lead Counsel have many years of experience litigating securities class actions and have negotiated scores of other class settlements which have been approved by courts throughout the country. Lead Counsel enjoy well-deserved reputations for skill and success in the prosecution and favorable resolution of securities class actions and other complex civil matters. *See* § IV.4, *infra*. Similarly, Defendants have been at all times represented by law firms with reputations for the tenacious defense of class actions and other complex civil matters. The Proposed Settlement was negotiated by senior lawyers for Plaintiffs and Defendants, who were assisted by Mr. Meyer.

The terms of the Proposed Settlement likewise show that the Settlement Class was fairly and adequately represented in the course of these proceedings and the Proposed Settlement is not collusive. With the exception of the potential for Plaintiffs to seek reimbursement for their time in prosecuting this Action, which is expressly permitted by the Private Securities Litigation Reform Act of 1995 ("PSLRA") and routinely accepted by courts, the terms of the Proposed Settlement treat Plaintiffs exactly the same as other Settlement Class Members. Additionally, the limits of

proposed attorneys' fees and Litigation Expenses are well within the range of compensation and reimbursement amounts that courts frequently award in these types of cases.  The first factor of the Fifth Circuit's test is therefore satisfied.

### 2. The Settlement Is Sufficient in Light of the Potential Risks and Delays

The Proposed Settlement provides for a Settlement Amount of $30,000,000 in cash.  This recovery is a substantial result for the Settlement Class, especially in light of the history of this case and the risks of continued litigation and trial.  Thus, the benefit of the present Settlement must be compared to the risk that no recovery or a lesser recovery might be achieved after trial and likely appeals, most likely years into the future.  As with every complex litigation of this kind, Plaintiffs face formidable obstacles to recovery at trial, both with respect to liability and damages.  Indeed, this Court has already dismissed significant portions of Plaintiffs' claims, exemplifying the litigation risks.  By agreeing to the Proposed Settlement, Plaintiffs ensure a significant recovery for the Settlement Class while avoiding the risks and delays of expensive and protracted litigation.  The Proposed Settlement thus also satisfies the Fifth Circuit test's second and fourth factors.

### a. The Complexity, Expense, and Likely Duration of This Action

In evaluating a proposed settlement in securities and shareholder litigations, courts have frequently recognized that such cases are "notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973).  Thus, when considering "the complexity, expense, and likely duration" of cases such as this Action, settlements are particularly appropriate.  *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *see also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).  In addition to the general complexity of securities cases, there are several factors that make it more likely that, should the Proposed Settlement be rejected, this case would require additional large expenditures of time and money and there would be a significant risk that the Settlement Class would obtain a result far less beneficial than the one provided by the Proposed

Settlement.  These factors include:

- Defendants are represented by very capable counsel well versed in the defense of complex securities class actions.  Furthermore, the Individual Defendants have each retained separate law firms to represent them, further increasing litigation costs.

- If the Action were to go to trial, it would require many months of effort and involve hundreds of exhibits, addressing complicated disclosure matters, briefing multiple vigorously contested evidentiary motions, and expending substantial additional expenses.  The outcome of such a trial would by no means be certain.

- Even if Plaintiffs secured a judgement on behalf of the Settlement Class following a trial that is larger than the Settlement Amount, given the time value of money, such a future recovery may not be more beneficial than receiving the benefits of the Proposed Settlement now.  Moreover, unlike the Proposed Settlement, a judgement would likely be appealed, adding further costs and uncertainty.

The above factors, which are by no means exhaustive, demonstrate that, given the significant risks inherent in this litigation, the result achieved by the Proposed Settlement substantially benefits the Settlement Class and warrants the Court's preliminary approval.

### b.      Risks to Liability and Damages, and in Certifying the Class

Plaintiffs believe that, if this case were to proceed to trial, the allegations in the Complaint would ultimately be borne out by the evidence.  Nevertheless, Plaintiffs also recognize that there are significant hurdles to proving liability and damages at trial.  Defendants have previously asserted formidable defenses in their motions to dismiss the Action, such as that the alleged misstatements are not actionable because they are neither materially false, (Doc. 93 at 8), nor (in the case of the Exchange Act claims) made with the requisite scienter, (*id.* at 24-26).  If this Action does not settle, Defendants are likely to continue to make these and other arguments, including the currently pending issue of whether or not the Court should certify this case as a class action.

Even if the Court certifies the class and Plaintiffs are able to establish liability at trial, they will still face substantial risks in proving loss causation and damages.  Issues relating to loss causation and damages are also likely to ultimately be determined by an inherently unpredictable

"battle of the experts."  Thus, the $30 million payment, particularly in the context of the significant risks and uncertainties of proving liability and damages, weighs strongly in favor of approval.

### 3.  The Litigation Is at a Point Suitable for Settlement

Plaintiffs have conducted an extensive investigation and the Parties have conducted extensive fact discovery.  Accordingly, the Parties "have arrived at a compromise with a full understanding of the legal and factual issues surrounding this case." *Manchacha v. Chater*, 927 F.Supp. 962, 967 (E.D. Tex. 1996) (footnote omitted).  Thus, the third factor in the Fifth Circuit's test likewise counsels in favor of preliminarily approving the Proposed Settlement.

### 4.  The Settlement Should Be Preliminarily Approved in Light of the Range of Possible Recovery

Given the possibility that this Action may have resulted in a recovery of less than the proposed Settlement Amount (including the possibility that there be no recovery at all), the $30,000,000 recovery achieved by the Proposed Settlement is significant.  In addition to the burden of proving falsity and (with respect to claims based on the Exchange Act) scienter, Defendants have also moved to prevent Plaintiffs from certifying this Action as a class action.  Defendants have also raised very significant loss causation arguments that could drastically reduce investors' recoverable damages.  In the mediation process, Plaintiffs asserted that damages could be greater than $500 million, but when considering credible arguments Defendants made believe that the most realistic maximum damages are approximately $240 million; Defendants asserted that the maximum damages were much lower.  As such, the $30,000,000 recovery contemplated by the Proposed Settlement represents a very good result for the Settlement Class, and meets the fifth factor of the Fifth Circuit's test.

### 5.  The Opinion of Lead Counsel Supports Approval

A strong initial presumption that the settlement is fair and reasonable is created where, as here, experienced counsel have negotiated a settlement at arm's length, with the assistance of a mediator.  *United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982).  The Fifth Circuit has recognized that courts must rely to a large degree on the judgement of competent counsel, terming such counsel the "linchpin" of an adequate settlement.  *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983).  Lead Counsel acquired a thorough understanding of this Action as a result of independently investigating claims, conducting extensive discovery, and participating in negotiations with Defendants, and submit that the Proposed Settlement is appropriate and should be approved.  The views of Lead Counsel must be accorded great weight.  *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978).  At this stage, where other Settlement Class Members have not yet had the opportunity to provide their input, Lead Counsel's opinion is sufficient to satisfy the sixth factor of the Fifth Circuit's test.

For these and all of the foregoing reasons, the Court should grant preliminary approval of the Settlement and direct that notice of the Settlement be given to members of the Settlement Class.

## IV.   THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS TO PERMIT DISSEMINATION OF THE NOTICE

In connection with final approval, the Court will be asked to certify the Settlement Class—for settlement purposes only—pursuant to Rules 23(a) and 23(b)(3).  At the preliminary approval stage, the Court should determine whether it "will likely be able to" grant certification to the Settlement Class at final approval.  Fed. R. Civ. P. 23(e)(1)(B)(ii).

Certification of a settlement class is appropriate where the proposed class and proposed class representatives meet the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and the two requirements of Rule 23(b)(3): that questions of law or fact

common to the members of the class predominate over any individual issues of rule or law, and

that a class action is superior to other available methods to adjudicate the controversy.

Here, the Parties have stipulated to the certification of the Settlement Class for settlement

purposes only.  Settlement Agreement ¶ 2.  Plaintiffs request that the Court certify the Settlement

Class defined in the Settlement Agreement, comprising "all persons and entities who (a) purchased

or otherwise acquired ProPetro common stock on the open market during the Class Period, and

were damaged thereby, or (b) purchased ProPetro common stock in or traceable to the Company's

March 17, 2017 Initial Public Offering." *Id.* ¶ 1(ss).[3]  Here, the proposed Settlement Class meets

the requirements of and satisfies Rule 23(a) and 23(b)(3).  The Settlement Class is the same the

class that Plaintiffs previously moved to certify, and the Appendix that Plaintiffs submitted in

compliance with Local Rule Appendix A is equally applicable here.  *See* ECF No. 126-1.

### 1.  The Settlement Class Members Are Numerous

There are thousands of members of the proposed Settlement Class.  "Under Rule 23(a)(1),

a class may be certified only if 'the class is so numerous that joinder of all members is

impracticable.'" *Kirkpatrick v. HomeAway.com Inc.*, NO. 1:16-CV-733-LY, 2020 WL 7680558,

at *4 (W.D. Tex. 2020) (quotation omitted).  "[T]he Fifth Circuit has held the numerosity

requirement is 'generally assumed to have been met in class action suits involving nationally

traded securities.'" *In re Dell Inc.*, No. A–06–CA–726–SS, 2010 WL 2371834, at *2 (W.D. Tex.

June 11, 2010) (quoting *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1039 (5th Cir.1981)).

ProPetro's common stock traded on the NYSE with an average weekly trading volume of

---

[3] "Excluded from the Settlement Class are Defendants; ProPetro's affiliates and subsidiaries; the Officers and directors of ProPetro and its subsidiaries and affiliates at all relevant times; members of the Immediate Family of any excluded person; heirs, successors and assigns of any excluded person or entity; and any entity in which any excluded person has or had a controlling interest.  Also excluded from the Settlement Class are any persons and entities that submit a request for exclusion that is accepted by the Court." *Id.*

approximately 1.5 million shares during the Class Period and there were 100,849,840 shares of its common stock outstanding as of March 13, 2020.  (Doc. 126-9 ("Torchio Report") at ¶ 26).  "[T]he sheer number of shareholders alone, . . . indicates joinder of all class members is impracticable." *Lehocky v. Tidel Tech., Inc.*, 220 F.R.D. 491, 499 (S.D. Tex. 2004) (footnote omitted) (finding numerosity where company traded on the NASDAQ had over 17 million shares outstanding). Additionally, shares of ProPetro common stock traceable to the Company's IPO, during which approximately 25 million shares were issued, evidences numerosity.  ¶ 42.  Courts in this district have found that in instances where large volumes of shares were sold pursuant to an IPO, numerosity is satisfied even if the exact number of class members cannot be determined.  *See Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 587 (W.D. Tex. 2002) (finding numerosity was satisfied).

## 2. There Are Questions of Law or Fact Common to the Settlement Class

Courts require commonality, a question of law or fact common to the proposed class, in order to satisfy Rule 23(a)(2).  *Spegele v. USAA Life Ins. Co.*, 336 F.R.D. 537, 548 (W.D. Tex. 2020); Fed. R. Civ. P. 23(a)(2).  The Fifth Circuit holds that Rule 23's commonality requirement simply requires that class members "have suffered the same injury" and "raise at least one contention that is central to the validity of each class member's claims."  *In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014).  "The claims of all Class Members hinge on common contentions that are capable of being resolved class-wide."  *Rougier v. Applied Optoelectronics, Inc.*, Civil Action No. 4:17-cv-02399, 2019 WL 6111303, at *6 (S.D. Tex. Nov. 13, 2019).  Similar to *Rougier*, Plaintiffs allege that Defendants made misrepresentations and omissions via public press releases, ¶¶ 2, 53, 134, 146, 176, 321, 337, earnings calls, ¶¶ 59, 145, 146, 156, and SEC filings, ¶¶ 55, 67, 85, 86, 89, 166, 190-191. "The materiality and veracity of those statements will be proven class-wide."  *Rougier*, 2019 WL 6111303, at *6.

13

In this matter, the claims of each Settlement Class member are subject to common proof.  Plaintiffs allege that Defendants made "uniform representations . . . to the class concerning the accuracy of [ProPetro's] publicly reported" declarations concerning, *inter alia*, the adequacy of its internal controls.  *Rooney v. EZCORP, Inc.*, 330 F.R.D. 439, 445-46 (W.D. Tex. 2019). Furthermore, Plaintiffs' allegations "implicate multiple questions common to the class, including whether Defendants' statements . . . violated federal securities law, . . . and the extent to which the market price of [ProPetro's] . . . shares w[ere] affected by various public statements and disclosures made by Defendants."  *Id.* Finally, the "injury"—a loss of value in ProPetro's share price—is common among the Settlement Class Members.  These common questions of law and fact satisfy Rule 23(a)(2)'s commonality requirement.

### 3.  Plaintiffs' Claims Are Typical of the Settlement Class's Claims

Under Rule 23(a)(3), Plaintiffs must demonstrate that "the claims of the representative parties are typical of the claims of the class."  Fed. R. Civ. P. 23(a)(3).  "[C]ommonality and typicality . . . tend to merge," as both requirements "serve as guideposts for determining . . . whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Daves v. Dallas County Texas*, Civil Action No. 3:18-CV-0154-N, 2018 WL 4537202, at *2 (N.D. Tex. 2018).  The typicality test "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent."  *Hernandez v. City of Houston, Texas*, Civil Action No. 4:16-3577, 2019 WL 2869157, at *3 (S.D. Tex. 2019).

Here, Plaintiffs' claims are typical of the other Settlement Class Members' claims because they are all investors who acquired ProPetro common stock during the Class Period or in or traceable to the IPO, and were all misled by the same false and misleading statements that Plaintiffs allege were disseminated by Defendants.  *See* ¶¶ 324-400.

### 4. Plaintiffs Have Fairly and Adequately Protected the Interests of the Settlement Class

Under Rule 23(a)(4)'s adequacy prerequisite, courts examine whether "the representative parties will fairly and adequately protect the interests of the class."  To determine adequacy, the Fifth Circuit utilizes a three-prong test, where the proposed class representatives must show that:

> (1) there are no conflicts of interest between them and the proposed class; (2) the proposed class representatives have the willingness and ability to play an active role in the litigation and vigorously represent the class, while protecting the interests of the absentee class members; and (3) that class counsel has the competence and ability to vigorously conduct the litigation.

*Feder v. Electronic Data Sys. Corp.*, 429 F.3d 125, 129-30 (5th Cir. 2005).

Plaintiffs satisfy all three prongs.  ***First***, there are no conflicts between Plaintiffs and the Settlement Class.  Plaintiffs are "part of the class and possess the same interest" as well as "suffer the same injury as the class members interests . . . .'"  *In re Deepwater Horizon*, 785 F.3d 1003, 1015 (5th Cir. 2015) ("*Deepwater Horizon II*").  Like other potential Settlement Class Members, Plaintiffs purchased ProPetro common stock during the Class Period and were subjected to the same alleged fraudulent course of conduct by the Defendants.  ¶ 334.  Additionally, Oklahoma Law Enforcement, like other potential Settlement Class Members, purchased shares of ProPetro common stock in or traceable to the IPO, wherein the IPO's offering documents allegedly made and disseminated material misstatements.  ¶ 389.  There are no conflicts between Plaintiffs and the Settlement Class they seek to represent.

***Second***, Plaintiffs have the willingness and ability to play an active role in the litigation and vigorously represent the Settlement Class.  Here, Plaintiffs made significant investments in ProPetro stock during the Class Period, are familiar with the case, have been actively engaged in the litigation, and regularly communicate with counsel regarding the status of the case.  (*See* Docs. 126-3, 126-5, 126-7, 131, 132).  Plaintiffs have supervised and been involved in the case throughout

and have been engaged with and expended substantial effort responding to Defendants' extensive discovery requests, including sitting for depositions.  (*See id.*).

Plaintiffs are also exactly the types of institutional investors Congress sought to encourage to lead securities class actions when it enacted the PSLRA.  15 U.S.C. §§ 77u-4, 77z-1, *et seq.*  The "PSLRA has been construed to afford a preference for securities fraud litigation to be directed by institutional investors."  *Patel v. Reata Pharmaceuticals Inc.*, 549 F. Supp. 3d 559, 571 (E.D. Tex. 2021).  All of the Plaintiffs are sophisticated investors that manage billions of dollars and have the institutional knowledge and understanding that make them ideal Class Representatives.  Indeed, as this Court previously found, "[Plaintiffs] are jointly an adequate representative of the putative class."  Order Appointing Lead Plaintiff and Approving Lead Counsel (Doc. 43), at p. 8.  Nothing has changed to call into question that preliminary finding.  There is no reason to doubt that Plaintiffs will continue to uphold their duties and responsibilities if certified as class representatives.

*Third*, Lead Counsel's "participation in the suit and their experience in complex securities class actions support a finding that they will adequately represent the interests of the Class." *Rougier*, 2019 WL 6111303, at *7.  The Court-appointed firms serving as Lead Counsel, BLB&G and Grant & Eisenhofer, are experienced in prosecuting class actions, having successfully prosecuted securities class actions in this Court and throughout the country.  BLB&G and Grant & Eisenhofer are routinely appointed as class counsel in courts across the nation in securities class actions.  Lead Counsel's firm resumes were previously submitted to the Court.  (Docs. 126-20, 126-21).  The Proposed Settlement was reached only after Lead Counsel spent considerable time on this Action for the benefit of ProPetro investors.  Lead Counsel's work included investigating and drafting three amended complaints, opposing Defendants' motions to dismiss, retaining a damages expert to help assess the total potential class-wide damages in this Action, participating in two separate mediation sessions, engaging in extensive discovery (including producing over 30,000

pages of documents to Defendants, reviewing a significant amount of the over 350,000 pages of documents produced by Defendants, defending multiple depositions, and participating in numerous meet and confer sessions between the Parties), and moving this Court for class certification. BLB&G's and Grant & Eisenhofer's significant securities class action experience make them knowledgeable and capable of evaluating cases to determine when a settlement is beneficial to investors, or when the prudent course would be to continue litigation.  Thus, Lead Counsel should be appointed as Class Counsel for the Settlement Class.

### 5. Questions Common to the Settlement Class Predominate Over Individual Questions and a Class Action Is Superior to Other Available Means of Adjudication

To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Plaintiffs satisfy these criteria.

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997).  When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate.  *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986).  Plaintiffs have previously submitted detailed briefing that evidences how issues surrounding Defendants' alleged conduct, such as whether their statements and omissions were materially false or misleading, and whether their conduct caused damages to Plaintiffs and the Settlement Class, are common to each Settlement Class Member. (*See* Doc. 126 Sections III.C.1, III.C.2).   If each Settlement Class Member were to bring an individual action, each would be required to demonstrate the same misrepresentations and/or

omissions to prove liability.   Thus, this case illustrates the principle that the predominance requirement is "readily met" in many securities fraud class actions.   *Amchem*, 521 U.S. at 625.

In considering superiority under Rule 23(b)(3), courts analyze four factors: (a) the class members' interest in individually controlling their separate actions; (b) the extent and nature of existing litigation by class members concerning the same claims; (c) the desirability of concentrating the litigation in a particular forum; and (d) the likely difficulties of managing a class action.   *See Vine v. PLS Fin. Servs., Inc.*, 331 F.R.D. 325, 341 (E.D. Tex. 2019).

Here, the Settlement Class Members' interests in individually adjudicating separate actions are minimal; Plaintiffs are not aware of any separate actions brought on an individual or group basis by ProPetro's shareholders; the Western District of Texas, where the Company is based and many witnesses reside, is the appropriate forum for litigating this matter; and there are no issues in management of the class action and Proposed Settlement.   *See id.* (finding Rule 23(b)(3) satisfied where no "single member would pursue her own action[;]" "no other actions commenced by or against members of the class have been filed"; "each of the events in question occurred in Texas and Texas law applies, making this forum an appropriate forum for this dispute"; and the "case does not present especially troubling management or administration issues").   Thus, a class action is the superior method of adjudication here.

Plaintiffs have satisfied all the requirements of Rules 23(a) and (b)(3).   The Court should preliminarily certify the Settlement Class for settlement purposes.

## V.    NOTICE OF THE SETTLEMENT SHOULD BE APPROVED

Rule 23 of the Federal Rules of Civil Procedure requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."   Fed. R. Civ. P. 23(c)(2)(B).   "Under Rule 23(e),

a settlement notice need only satisfy the broad reasonableness standards imposed by due process." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010) (internal quotations omitted). "[T]he word 'reasonable' cannot be ignored." *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 179 (5th Cir. 1979) (internal quotations omitted). "Notice . . . therefore requires that class members be given information reasonably necessary for them to make a decision whether to object to the settlement." *In re Katrina Canal*, 628 F.3d at 197.

The proposed Notice advises Settlement Class Members of, *inter alia*: (i) the terms of the Proposed Settlement; (ii) the proposed Plan of Allocation; and (iii) information regarding Lead Counsel's forthcoming motion for an award of Attorneys' Fees and Litigation Expenses.[4]  The Notice also provides specific information regarding the Settlement Hearing, and sets forth the procedures and deadlines for: (i) submitting a Proof of Claim Form; (ii) requesting exclusion from the Settlement; and (iii) objecting to any aspect of the Settlement, including the proposed Plan of Allocation, and Lead Counsel's request for attorneys' fees and Litigation Expenses.[5]

As outlined in the proposed Preliminary Approval Order, the proposed Claims Administrator, JND Legal Administration ("JND"), under the direction of Lead Counsel, will notify Settlement Class Members of the Proposed Settlement.  JND was selected following a bidding process among three potential administrators, because of its significant experience in serving as the claims administrator in securities class actions.

---

[4] As set forth in the Notice, Lead Counsel, on behalf of Plaintiffs' Counsel, will formally move the Court for an award of attorneys' fees in an amount not to exceed 20% of the Settlement Amount plus interest earned on that amount at the same rate as earned by the Settlement Fund and for expenses paid or incurred in prosecuting the Action in an amount not to exceed $750,000, which may include reimbursement to Plaintiffs for their time and expenses incurred in representing the Settlement Class.

[5] The content of the proposed Notice also meets the requirements of the PSLRA.  In addition to the foregoing, the Notice includes: (i) a statement of the amount to be distributed, in the aggregate and on an average per-share basis; (ii) a statement of the potential outcome of the case; and (iii) a brief statement that explains the reasons why the Parties are proposing the Settlement.  See 15 U.S.C. §78u-4(a)(7).

JND will mail the Notice and Proof of Claim Form substantially in the forms of Exhibits A-1 and A-2 to the Settlement Agreement by First-Class U.S. mail to all potential Settlement Class Members who can be reasonably identified, including those identified by ProPetro and those identified by brokers and other nominee owners. *See* Proposed Order ¶¶ 7(a), 9. This direct notice will be supplemented by publication of the Summary Notice in both *Investors Business Daily* and *PR Newswire*. In addition, copies of the Notice and Proof of Claim Form, along with other documents and information relevant to the Settlement, will be posted on the Settlement website, www.ProPetroSecuritiesLitigation.com, and on Lead Counsel's websites.

Accordingly, Lead Counsel respectfully submit that the proposed notice program is adequate and should be approved by the Court.

## VI.   THE PROPOSED SCHEDULE SHOULD BE APPROVED

In connection with preliminary approval of the Proposed Settlement, the Court must also set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims, opting out of the settlement, and objecting to the Settlement. Plaintiffs respectfully submit the schedule set forth in Appendix A for the Court's consideration, as set forth in the proposed Preliminary Approval Order. Plaintiffs request that the Settlement Hearing be scheduled at the Court's earliest convenience at least 110 days after entry of the Preliminary Approval Order. All other dates will flow from the date of entry of the Preliminary Approval Order or the date of the Settlement Hearing.

## VII.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order submitted herewith which will: (i) preliminarily approve the Settlement; (ii) approve the proposed form and manner of notice to Settlement Class Members; and (iii) set a date and time for the Settlement Hearing to consider final approval of the Settlement.

DATED:  September 22, 2022

Respectfully submitted,

*/s/ James A. Harrod*

**BERNSTEIN LITOWITZ BERGER &**
   **GROSSMANN LLP**
Jeroen van Kwawegen
James A. Harrod
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jeroen@blbglaw.com
jim.harrod @blbglaw.com

**GRANT & EISENHOFER P.A.**
Daniel L. Berger
Caitlin M. Moyna
485 Lexington Avenue
New York, NY 10017
Telephone: (646) 722-8500
Facsimile: (646) 722-8501
dberger@gelaw.com
cmoyna@gelaw.com

*Counsel for Plaintiffs, Lead Counsel for the*
*Settlement Class and proposed Class*
*Counsel*

**MARTIN & DROUGHT, P.C.**
Gerald T. Drought
State Bar No. 06134800
Federal Bar No. 8942
Frank B. Burney
State Bar No. 03438100
Bank of America Plaza, 25th Floor
300 Convent Street
San Antonio, Texas 78205
Telephone: (210) 227-7591
Facsimile: (210) 227-7924
gdrought@mdtlaw.com
fburney@mdtlaw.com

*Liaison Counsel for Plaintiffs*

**CLARK HILL PLC**
Ronald A. King
212 E. Cesar Chavez Ave
Lansing, MI 48906
Telephone: (517) 318-3015
Facsimile: (517) 318-3068
rking@clarkhill.com

*Counsel for Plaintiff Police and Fire*
*Retirement System of the City of Detroit*

**Appendix A**

| Event | Deadline | Example Dates* |
|---|---|---|
| Preliminary Approval Order Entered | n/a | September 29, 2022 |
| Commence Mailing of Notice | 20 business days after entry of Preliminary Approval Order ("Notice Date") | October 28, 2022 |
| Publish Summary Notice | 10 business days after Notice Date | November 14, 2022 |
| Plaintiffs to File Motion for Approval of the Settlement and Lead Counsel to File Application for Attorneys' Fees and Expenses | 35 days prior to Settlement Hearing | December 13, 2022 |
| Deadline to Request Exclusion from the Settlement Class | 21 days prior to Settlement Hearing | December 27, 2022 |
| Deadline to File Objections to the Proposed Settlement | 21 days prior to Settlement Hearing | December 27, 2022 |
| Plaintiffs and Lead Counsel to file Reply Papers and Service by Lead Counsel on Defendants' Counsel of Affidavit Confirming Notice | 7 days prior to Settlement Hearing | January 10, 2023 |
| Settlement Hearing | At the Court's earliest convenience at least 110 days after entry of the Preliminary Approval Order | January 17, 2023 |
| Deadline to Submit Proofs of Claim Forms | 120 days after Notice Date | February 27, 2023 |

\* Example dates provided assume, for illustration purposes, that the Preliminary Approval Order is entered on September 29, 2022 and that the Court sets the Settlement Hearing for January 17, 2023.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 22, 2022, I electronically filed the foregoing by using the court's CM/ECF system.  Per agreement among the parties, all parties will be served by the CM/ECF system.

By: *<u>/s/ James A. Harrod</u>*
       James A. Harrod

24