**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

|  |  |  |
|---|---|---|
| NYKREDIT PORTEFØLJE ADMINISTRATION A/S, OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM, OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, OKLAHOMA CITY EMPLOYEE RETIREMENT SYSTEM, POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, Individually and on behalf of all others similarly situated, | § § § § § § § § § § § § | No. MO:19-CV-217-DC <u>CLASS ACTION</u> Hon. David Counts |
| *Plaintiffs,* | § § § | |
| v. | § § § | |
| PROPETRO HOLDING CORP., DALE REDMAN, JEFFREY SMITH, IAN DENHOLM, and SPENCER D. ARMOUR III, | § § § § | |
| *Defendants.* | § § § | |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL
<u>OF SETTLEMENT AND PLAN OF ALLOCATION</u>**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. iv

I.      PRELIMINARY STATEMENT ................................................................................1

II.     PROCEDURAL AND FACTUAL BACKGROUND...................................................4

III.    THE NOTICE SATISFIES RULE 23 AND DUE PROCESS STANDARDS ...............4

IV.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
        ADEQUATE ...........................................................................................................5

        A.    The Fifth Circuit's Policy Supports Settlements of Class Actions ...................5

        B.    A Presumption of Fairness Applies to This Settlement ...................................6

        C.    The Settlement Satisfies the Requirements for Approval Under Rule
              23(e)(2) and Fifth Circuit Precedent .............................................................7

              1.    Plaintiffs and Lead Counsel Have Adequately Represented the
                    Settlement Class...................................................................................8

              2.    The Settlement Was Negotiated at Arm's Length and Is Absent of
                    Fraud or Collusion ...............................................................................9

              3.    The Risks and Costs of Further Litigation Demonstrate the
                    Fairness and Adequacy of the Settlement .............................................9

                    a.    Risks in Proving Liability and Damages and in Certifying
                          the Settlement Class..................................................................10

                    b.    The Complexity, Expense, and Likely Duration of This
                          Action .......................................................................................12

              4.    The Stage of the Proceedings Warrants Final Approval of the
                    Settlement .........................................................................................13

              5.    The Settlement Is Within the Range of Reasonableness .......................13

              6.    Lead Counsel, Plaintiffs and the Settlement Class Members
                    Support Final Approval.......................................................................14

              7.    The Settlement Satisfies the Remaining Rule 23(e)(2) Factors.............16

                    a.    The Proposed Method for Distributing Relief Is Effective............16

                    b.    Attorneys' Fees .........................................................................16

c.      The Parties' Sole Side Agreement Is the Agreement
        Concerning Opt-Outs ....................................................................17

d.      No Settlement Class Member Receives Preferential
        Treatment ......................................................................................18

V.      THE PLAN OF ALLOCATION IS FAIR AND REASONABLE....................................18

VI.     CLASS CERTIFICATION REMAINS WARRANTED ..................................................20

VII.    CONCLUSION.............................................................................................................20

## TABLE OF AUTHORITIES

CASES                                                                                                PAGE(S)

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
    572 F.3d 221 (5th Cir. 2009) ...............................................................................12

*Ayers v. Thompson*,
    358 F.3d 356 (5th Cir. 2004) ...........................................................................8, 13

*Beecher v. Able*,
    575 F.2d 1010 (2d Cir. 1978)...............................................................................18

*Bridges v. Ridge Natural Resources, LLC*,
    MO-18-CV-00134-DC, 2020 WL 7637280 (W.D. Tex. June 5, 2020).................7, 9

*In re Chicken Antitrust Litig. Am. Poultry*,
    669 F.2d 228 (5th Cir. 1982) ...............................................................................18

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ...............................................................................5

*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014) .................................................................................5

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) ........................................................................15

*The Erica P. John Fund, Inc., v. Halliburton Co.*,
    No. 3:02-cv-1152-M, 2018 WL 1942227 (N.D. Tex. Apr. 25, 201) ......................18

*Hefler v. Wells Fargo & Co.*,
    No. 16-cv-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ...................17

*In re Katrina Canal Breaches Litig.*,
    628 F.3d 185 (5th Cir. 2010) .................................................................................4

*Marcus v. J.C. Penney Co., Inc.*,
    No. 6:13-cv-736, 2017 WL 6590976 (E.D. Tex. Dec. 18, 2017) ......................6, 19

*In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*,
    No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)...................19

*Mullane v. Cent. Hanover & Tr. Co.*,
    339 U.S. 306 (1950).................................................................................................5

*Pettway v. Am. Cast Iron Pipe Co.*,
    576 F.2d 1157 (5th Cir. 1978) ...............................................................................6

*Protective Comm. for Indep. S'holders of TMT Trailer Ferry v. Anderson*,
  390 U.S. 414 (1968).................................................................................12

*Reed v. Gen. Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983) .........................................................6, 8, 9, 10

*Schwartz v. TXU Corp.*,
  Nos. 3:02-cv-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005).....................15

*In re Signet Jewelers Ltd. Sec. Litig.*,
  No. 1:16-cv-06728, 2020 WL 4196468 (S.D.N.Y. July 21, 2020).........................18

*Spegele v. USAA Life Ins. Co.*,
  No. 5:17-cv-967-OLG, 2021 WL 4935978 (W.D. Tex. Aug. 26, 2021)...........7, 13

*Taft v. Ackermans*,
  No. 02 Civ. 7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan 31, 2007)....................19

*United States v. Tex. Educ. Agency*,
  679 F.2d 1104 (5th Cir. 1982) ...........................................................................6

*Welsh v. Navy Fed. Credit Union*,
  No. 5:16-CV-1062-DAE, 2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) .................... *passim*

## OTHER AUTHORITIES

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................4

Fed. R. Civ. P. 23(e) ................................................................................. *passim*

MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.312 (4th ed. 2019)...........................5

*Securities Class Action Settlements: 2021 Review and Analysis* (Cornerstone
  Research 2022), *available at* https://www.cornerstone.com/wp-
  content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-
  and-Analysis.pdf .................................................................................14

Lead Plaintiffs Nykredit Portefølje Administration A/S, Oklahoma Firefighters Pension and Retirement System, Oklahoma Law Enforcement Retirement System, Oklahoma Police Pension and Retirement System, and Oklahoma City Employee Retirement System, along with plaintiff Police and Fire Retirement System of the City of Detroit (collectively, "Plaintiffs"), will and hereby do move the Court, pursuant to Rule 23(e)(2) of the Federal Rules of Civil Procedure, before the Honorable David Counts, on April 11, 2023, at 1:30 p.m. Central Time, for (1) entry of a judgment granting final approval of the $30 million Settlement reached in this Action (the "Settlement") and (2) entry of an order approving the proposed Plan of Allocation.[1]

## I.     PRELIMINARY STATEMENT

The proposed, fully-funded $30 million cash Settlement is an excellent result for the class of investors who suffered economic damages in connection with the alleged false and misleading statements made by Defendants ProPetro Holding Corp. ("ProPetro" or the "Company"), Dale Redman, Jeffrey Smith, Ian Denholm, and Spencer D. Armour III (collectively, "Defendants") between March 17, 2017 and March 13, 2020, both dates inclusive (the "Class Period") or in or traceable to the Company's March 17, 2017 Initial Public Offering. The Settlement provides a substantial recovery in exchange for dismissal of all claims brought against the Defendants.

The $30 million Settlement Amount is primarily and directly for the benefit of the Settlement Class. That $30 million, plus interest accrued, will fund the payment of taxes, tax expenses, notice and administrative costs, plus any attorneys' fees and expenses and awards to Plaintiffs pursuant to 15 U.S.C. § 78u-4(a)(4) that are awarded by the Court. The remainder—the

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated September 22, 2022 (Doc. 168-1) or the Joint Declaration of James A. Harrod and Daniel L. Berger in Support of (I) Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and (II) Lead Counsel's Motion for Attorneys' Fees, Litigation Expenses, and Awards to Plaintiffs (the "Joint Declaration" or "Joint Decl."), filed herewith.

Net Settlement Fund—will be distributed to Settlement Class Members who submit eligible Claim Forms to the Claims Administrator, JND Legal Administration ("JND").

As set forth in more detail in the Joint Declaration, the Settlement comes after three years of contentious litigation, including significant motion practice; extensive discovery of Plaintiffs in connection with Plaintiffs' motion for class certification (including both document discovery and depositions); retention and depositions of expert witnesses; negotiations, production, and review of voluminous documents produced by Defendants and numerous third-parties; and protracted arm's-length settlement negotiations. There is no question that, as a result of their considerable litigation and settlement efforts, Plaintiffs and Lead Counsel have a thorough understanding of the relative strengths and weaknesses of the Settlement Class's claims and their potential value. It is their view that the Settlement Amount is a superior result for the Settlement Class.

While Lead Counsel believe in the strength of the Settlement Class's claims, while also acknowledging their risks, Defendants have adamantly denied liability and asserted that they possess absolute defenses to them. During lengthy settlement negotiations, which included two full-day mediations as well as numerous follow-up conversations with a nationally renowned mediator, Lead Counsel made clear that they would continue to litigate the case rather than settle for an amount that did not provide substantial value to the Settlement Class. The settlement negotiations included two full-day mediations between Plaintiffs and Defendants: one in August 2021 and the second in-person in May 2022. The second phase of the settlement discussions extended well beyond the May 2022 in-person session, as the mediator, Robert Meyer, Esq., continued working with the parties during the subsequent months to bring them closer together before issuing a recommendation to the Parties in August 2022, proposing that they settle the Action for $30 million. These protracted negotiations resulted in a fair settlement and favorable result for the Settlement Class.

Lead Counsel are highly experienced in prosecuting securities class actions.  Based on an analysis of all the relevant factors, including: (1) the substantial risk, expense, and uncertainty in continuing the litigation (including the risk that Plaintiffs' motion for class certification would have been denied) through likely motions for summary judgment, trial, post-trial motions, and appeals; (2) the relative strengths and weaknesses of the claims and defenses asserted; (3) past experience in litigating complex actions similar to this one; and (4) the serious disputes among the Parties concerning the merits and damages of the Action, they conclude that the Settlement is an outstanding result and is in the best interests of the Settlement Class.  The Settlement is fully supported by Plaintiffs, who are precisely the type of institutional investors Congress sought to have serve as lead plaintiffs and engage in major strategic decisions in actions such as this one when it passed the Private Securities Litigation Reform Act of 1995 ("PSLRA").

The reaction of the Settlement Class so far also supports the Settlement and Plan of Allocation.  Pursuant to this Court's Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") (Doc. 169), over 72,000 copies of the Notice were sent to potential Settlement Class Members and nominees, and a Summary Notice was published in *Investor's Business Daily* and transmitted over *PR Newswire*, where it remains available to be accessed.  *See* Declaration of Luiggy Segura Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date ¶¶ 10-11 ("Segura Decl.").  To date, there have been no objections to the Settlement and only one request for exclusion has been received. *Id.* ¶ 15.

Plaintiffs also request that the Court approve the Plan of Allocation, which was set forth in the Notice sent to Settlement Class Members.  *See* Notice (attached as Ex A to the Segura Decl.) at pp. 16-22.  The Plan of Allocation governs how claims will be calculated and how the Settlement proceeds will be distributed among Claimants.  It was prepared in consultation with Plaintiffs'

damages consultant, Mr. Frank Torchio, a leading expert experienced at calculating damages and applying tried and true methodologies in cases arising under the federal securities laws.  As discussed below, Plaintiffs believe that the Plan provides a fair and reasonable method of allocating the Net Settlement Fund among eligible Claimants taking into account the statute under which Claimant are able to assert claims and the strength of their claims.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

To avoid repetition, Plaintiffs respectfully refer the Court to the accompanying Joint Declaration for a full discussion of: (i) the factual background and procedural history of the Action; (ii) the efforts of Lead Counsel in prosecuting the claims in this Action; (iii) the negotiations resulting in this Settlement; and (iv) the reasons why the Settlement and the Plan of Allocation are fair and reasonable and should be approved.

## III.   THE NOTICE SATISFIES RULE 23 AND DUE PROCESS STANDARDS

Members of a proposed class action must be provided with notice of the existence of the litigation and settlement through "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also* Fed. R. Civ. P. 23(e)(1).  "Under Rule 23(e), a settlement notice need only satisfy the broad reasonableness standards imposed by due process." *Welsh v. Navy Fed. Credit Union*, No. 5:16-CV-1062-DAE, 2018 WL 7283639, at *8 (W.D. Tex. Aug. 20, 2018).[2]  "Notice . . . therefore requires that class members be given information reasonably necessary for them to make a decision whether to object to the settlement."  *Welsh*, 2018 WL 7283639, at *8 (quoting *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010). "Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members

---

[2] Citations and internal quotations are omitted and emphases are added unless otherwise noted.

who would be bound by a proposed settlement, voluntary dismissal, or compromise.'" MANUAL FOR COMPLEX LITIGATION, FOURTH § 21.312, at 293 (4th ed. 2019). To satisfy due process requirements, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover & Tr. Co.*, 339 U.S. 306, 314 (1950).

Here, in accordance with the Preliminary Approval Order, starting on October 26, 2022, the Claims Administrator caused the Notice and Claim Form to be mailed to potential Settlement Class Members and nominees. *See* Segura Decl. ¶¶ 3-7. As of March 3, 2023, 72,189 copies of the Notice have been mailed to potential Securities Class Members and nominees. *Id.* ¶ 10. The Notice contains a description of the claims asserted, the Settlement, the Plan of Allocation, and Settlement Class Members' rights to participate in and object to the Settlement or the fees, expenses, and costs that Lead Counsel intend to request, or to exclude themselves from the Settlement Class. In addition, the Summary Notice was published in *Investor's Business Daily* and transmitted over *PR Newswire*. *Id.* ¶ 11. Information regarding the Settlement, including copies of the Notice and Claim Form, was posted on a website devoted solely to the Settlement. *Id.* ¶ 12. The notice program provided all the information required by the PSLRA and meets the requirements of due process and Rules 23(c)(2) and (e).

## IV. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A. The Fifth Circuit's Policy Supports Settlements of Class Actions

The Fifth Circuit has long adhered to a general policy that favors and promotes the settlement of disputed claims, particularly in class actions. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014) (noting the "'overriding public interest in favor of settlement' that we have recognized 'particularly in class action suits'");

*see also Marcus v. J.C. Penney Co., Inc.*, No. 6:13-cv-736, 2017 WL 6590976, at *3 (E.D. Tex. Dec. 18, 2017) ("There is a strong judicial policy in favor of settlements, particularly in the class action context.").   The policy goals underlying this preference will be furthered if the Court approves the Settlement here.

### B.       A Presumption of Fairness Applies to This Settlement

A presumption of fairness is warranted where, as here, a proposed settlement is reached by experienced counsel through arm's-length negotiations.  *See United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982); *see also Welsh*, 2018 WL 7283639, at *12 ("Courts may presume that a proposed settlement is fair and reasonable, and lacking fraud or collusion, when it is the result of arm's-length negotiations.").  Courts routinely and properly rely on the judgment of competent counsel—deemed the "linchpin" of an adequate settlement—in determining whether a proposed settlement is reasonable.  *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried.").  Thus, if experienced counsel determine that a settlement is in a class' best interests, "the attorney's views must be accorded great weight[.]"  *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978).

The Settlement was reached in this case by experienced, fully informed counsel after an exhaustive investigation was conducted, following extensive litigation of legal issues, substantial fact and expert discovery, and only following extensive negotiations.  The settlement negotiations proceeded in two distinct phases, including an all-day mediation in August 2021 and an all-day in-person mediation in May 2022, followed by months of additional negotiations.  All phases of the negotiations were facilitated by the Parties' mediator, Robert A. Meyer, Esq. of JAMS, who is experienced in successfully mediating securities class actions.  During the negotiations, Lead Counsel zealously advanced Plaintiffs' position, and were fully prepared to continue to litigate to

and through trial rather than settle at an amount that did not adequately compensate the Settlement

Class.  Indeed, Lead Counsel's refusal to settle for a lesser amount is the primary reason the

settlement negotiations lasted for nearly a year.  Likewise, Defendants were represented by law

firms with reputations for the tenacious defense of class actions and other complex civil matters.

Consistent with those reputations Defendants litigated this case vigorously for years—opposing

Plaintiffs' efforts to advance the case at every stage of the litigation.

Given the arm's-length nature of the negotiations, counsel's experience, and the active

involvement of an experienced mediator, there can be no question that the Settlement is

procedurally fair and is not the product of fraud or collusion.  *See Spegele v. USAA Life Ins. Co.*,

No. 5:17-cv-967-OLG, 2021 WL 4935978, at *5 (W.D. Tex. Aug. 26, 2021) ("The Court further

finds that the arm's length nature of the settlement negotiations in this case amongst experienced

counsel for both parties with the assistance of a mediator supports a finding that the Settlement is

fair, reasonable, and adequate."); *Bridges v. Ridge Natural Resources, LLC*, MO-18-CV-00134-

DC, 2020 WL 7637280, at *4 (W.D. Tex. June 5, 2020) (noting with approval that "[s]ettlement

negotiations were conducted at arm's length with the guidance of [a] mediator").  Accordingly,

the Settlement is entitled to the presumption of fairness.

### C.    The Settlement Satisfies the Requirements for Approval Under Rule 23(e)(2) and Fifth Circuit Precedent

Under Rule 23(e)(1), the question for preliminary approval is whether "the court will likely

be able to . . . approve the proposal under Rule 23(e)(2)," which is the provision that governs final

approval.  Thus, in determining that this Settlement deserved preliminary approval, this Court has

already initially considered the standards governing final approval, which is whether the settlement

is "fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(2).

In determining fairness, reasonableness and adequacy, for purposes of final approval under

Rule 23(e)(2): the Court must consider whether

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

*Id.*  The Fifth Circuit has also established a six-pronged test, which includes certain factors that overlap with the Rule 23(e)(2) factors, to be applied to the approval of class settlements:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Reed*, 703 F.2d at 172; *see also Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004).  As shown below, the Settlement satisfies each factor established by Rule 23(e)(2) and the Fifth Circuit.

### 1.    Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class."  Fed. R. Civ. P. 23(e)(2)(A).  Here, Plaintiffs and Lead Counsel spent three years litigating the Settlement Class's claims, which included complex motion practice, extensive discovery of Plaintiffs, the preparation of expert reports, and the taking and giving of deposition testimony.  Each Plaintiff produced documents in response to Defendants'

extensive document requests, appeared for depositions, responded to written discovery, and consulted with Lead Counsel on litigation strategy, case developments, and the Settlement.  In addition, Plaintiffs have claims that are typical of other Settlement Class Members and have no conflict of interests with other members of the Settlement Class.

Throughout these processes, Lead Counsel gained deep understandings of the key factual issues at the core of the Action, which in turn enabled them to negotiate the Settlement with a "full understanding of the legal and factual issues surrounding the case."  *Bridges*, 2020 WL 7637280, at *4.  Furthermore, throughout the Action, Plaintiffs had the benefit of highly experienced counsel in securities litigation, with long and successful track records representing investors in cases throughout the country.  *See* Joint Decl. ¶ 104.

### 2.     The Settlement Was Negotiated at Arm's Length and Is Absent of Fraud or Collusion

As detailed in Section IV.B, above, the Settlement was negotiated at arm's-length and presents no threat of fraud or collusion.  Thus, final approval of the settlement is warranted pursuant to Rule 23(e)(2)(B) ("the proposal was negotiated at arm's-length") and the first *Reed* factor (the lack of fraud or collusion behind the settlement), 703 F.2d at 172.  Specifically, the participation of an experienced mediator who presided over two full-day mediation sessions, as well as numerous follow-up conversations, demonstrates that fraud and collusion were absent from the negotiation process.  *See also* Joint Decl. ¶ 51.

### 3.     The Risks and Costs of Further Litigation Demonstrate the Fairness and Adequacy of the Settlement

The Court must also determine if the Settlement is fair and adequate in light of the risks and costs associated with continuing to litigate.  Specifically, Rule 23(e)(2)(C)(i) examines "the costs, risks, and delay of trial and appeal," the second *Reed* factor looks at the "complexity, expense and likely duration of the litigation," and the fourth *Reed* factor considers "the probability

of plaintiffs' success on the merits." *Reed*, 703 F.2d at 172.  Here, the Settlement is fair and adequate in light of these factors.

Defendants have adamantly denied liability throughout the Action and would continue to do so absent the Settlement; Defendants similarly would have contested the methodology and amount of damages suffered by Plaintiffs and the Settlement Class.  Continued litigation would require the expenditure of substantial additional time and funding.

As in every complex case of this kind, Plaintiffs face formidable obstacles to recovery at trial, both with respect to liability and damages.  The principal claims are based on Sections 11 and 15 of the Securities Act, and Sections 10(b) and 20(a) of the Exchange Act.  Plaintiffs allege that Defendants made materially false and misleading statements that ProPetro had adequate controls to ensure that all relevant relationships, executive compensation, policy compliance, and related-party transactions were disclosed to investors.   Plaintiffs allege that, rather than maintaining and adhering to adequate internal controls, Defendants continually flouted ProPetro's controls, engaged in undisclosed self-dealing and related-party transactions, and ProPetro's former Chief Executive Officer, Dale Redman, violated ProPetro's Code of Conduct by pledging his ProPetro stock as collateral for a personal loan.  When the Company announced that it had commenced an investigation into the adequacy of its internal and disclosure controls, related-party transactions, and potential conflicts of interest, and that it had already uncovered several improper transactions, the price of ProPetro's stock fell.  The stock price fell further on several subsequent occasions when the Company announced material weaknesses in its risk management and compliance controls came to light.

a.      **Risks in Proving Liability and Damages**

Plaintiffs believe that the allegations of the Complaint would ultimately be borne out by the evidence.  Nevertheless, they also recognize that they face significant hurdles to proving

liability at trial.   Defendants have asserted formidable defenses which they would likely have continued to press throughout the duration of the litigation.   Indeed, Defendants have already successfully argued for the dismissal of significant portions of Plaintiffs' claims and to strike significant portions of the Complaint.   *See* Joint Decl. ¶¶ 33-41.   Defendants have asserted that Plaintiffs failed to allege any actionable misstatement, both for purposes of the Securities Act and the Exchange Act, because the statements are not materially false.   Doc. 93 at 8.   Defendants have also argued that they did not possess the requisite scienter required for the Exchange Act claims. *Id.* at 24-26.   While a limited set of claims was sustained (and not stricken), Defendants would have continued to press their arguments through summary judgment and trial.   *See* Joint Decl. ¶¶ 60-70.   For example, Defendants would likely point to the fact that the Company resolved the SEC investigation without an admission of wrongdoing and without paying any fine or penalty. *See* Joint Decl. ¶ 61.   Each of these arguments pose the risk that Plaintiffs' claims will not succeed.

Even if Plaintiffs establish liability at trial, they face substantial risks in proving loss causation and damages.   Defendants would argue that any losses suffered by the Settlement Class Members on their ProPetro investments were not attributable to the alleged misstatements.   Issues relating to loss causation and damages would also have likely come down to an inherently unpredictable and hotly disputed "battle of the experts."   Indeed, such a battle of the experts has already occurred in connection with Plaintiffs' motion for class certification.   Plaintiffs' expert Mr. Torchio performed an event study demonstrating that there was a cause-and-effect relationship between the release of unexpected Company-specific information and the price of its stock.   Doc. 126-9 at 35-39.   Defendants' expert, Mr. John Montgomery, attempted to rebut Mr. Torchio's position.   Doc. 144, Ex. Q at 37-45.   Accordingly, in the absence of the Settlement, there was a very real risk that the Settlement Class would have recovered an amount significantly less than the Settlement Amount—or nothing at all.   Thus, the payment of $30,000,000, particularly when

viewed in the context of the significant risks and uncertainties involved in proving both liability and damages, weighs strongly in favor of approving the Settlement.

In sum, Plaintiffs recognize that, had the case proceeded to trial, it may have been very difficult to recover all or even most of the damages claimed. Therefore, Plaintiffs and their counsel believe that the $30,000,000 Settlement represents an excellent result for the Settlement Class.

### b.    The Complexity, Expense, and Likely Duration of This Action

Other factors courts consider in rendering final approval over a class action settlement are the complexity, expense and likely duration of further litigation (factor five). *See Protective Comm. for Indep. S'holders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968) (court must consider, *inter alia*, "the complexity, expense, and likely duration of such litigation"); *Welsh*, 2018 WL 7283639, at *13. Compromises of securities class actions are particularly appropriate. As the Fifth Circuit has recognized, securities class actions are among the riskiest cases from the plaintiffs' perspective, because "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).

Here, several factors are present which make it a practical certainty that, without the Settlement, this case would require additional large expenditures of time and money and there would be a significant risk that the Settlement Class would obtain a result far less beneficial than the one provided by the Settlement. The factors include the following:

- Defendants are and have been at all times represented by very capable counsel who are well versed in the defense of complex securities class actions such as the Action.

- A trial of the Action would unquestionably require months of effort and involve the introduction of hundreds of exhibits, vigorously contested evidentiary motions, the expenditure of substantial additional expenses, and conflicting expert testimony, the outcome of which is by no means certain.

- Even if a judgment after trial yielded a larger sum than the value of the Settlement, given the time value of money, such a future recovery might not be more beneficial than receiving the benefits of the proposed Settlement now.

- Finally, any judgment after trial would still be subject to continuing risk through likely appeals. Experience shows that even very large judgments, recovered after lengthy litigation and trial, can be lost or significantly winnowed on appeal.

All of these foregoing factors demonstrate that, given the significant risks inherent in this litigation, the result achieved for the Settlement Class is exceptional.

### 4. The Stage of the Proceedings Warrants Final Approval of the Settlement

The third *Reed* factor requires courts to consider the stage of the litigation so that they may evaluate whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Spegele*, 2021 WL 4935978, at *7 (quoting *Ayers*, 358 F.3d at 369). By the time the Settlement was reached, Plaintiffs had undertaken an extensive investigation, including interviews with dozens of potential witnesses; researched and prepared three detailed complaints; thoroughly briefed disputed issues in connection with Defendants' motions to dismiss and to strike; conducted extensive fact discovery; briefed Plaintiffs' motion for class certification; and had twice engaged in arm's-length mediation, including the preparation and exchange of detailed, fact-intensive mediation briefs. Joint Decl. ¶¶ 28-51. Thus, at the time the Settlement was reached, the parties had sufficient information about the strengths and weaknesses of their respective positions. *Welsh*, 2018 WL 7283639, at *14. Accordingly, this factor also favors final approval.

### 5. The Settlement Is Within the Range of Reasonableness

The fifth *Reed* factor considers "whether the settlement's terms fall within *a reasonable range of recovery*, given the likelihood of the plaintiffs' success on the merits." *Spegele*, 2021 WL 4935978, at *8 (emphasis in original). Plaintiffs' expert has calculated the Settlement Class's

- 13 -

likely maximum damages to be between $240 million and $500 million, meaning that the Settlement Amount represents a recovery of 12.5% to 6% of the total estimated maximum damages that could be established for the Settlement Class.   Joint Decl. ¶ 72.   Such a recovery is well in line with other recoveries in the Fifth Circuit.   *See Securities Class Action Settlements: 2021 Review and Analysis*, at 19 (Cornerstone Research 2022), *available at* https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf (the median settlement in securities class actions in the Fifth Circuit from 2012 to 2021 was 5% of damages).   This is especially true given that the Settlement Class's damages are more likely to be at the lower end of the estimated range, which accounts for several mitigating factors.   For example, the higher estimates assume that **all** of the alleged corrective disclosures and **all** of the declines accompanying those disclosures were attributable to Defendants' corrective disclosures, which is rarely the case and would be very difficult to prove.   The lower numbers, on the other hand, give account to certain considerations that would reduce the effect of certain of the alleged corrective disclosures.   Notably, Defendants would have contended that the aggregate damages were *far less* than even $240 million.

Given the risks discussed above, including that the Court still had not determined whether class certification was appropriate, and the additional risks associated with Defendants' anticipated motions for summary judgment, and with a trial itself, the $30,000,000 recovery achieved by Plaintiffs represents a very good result for the Settlement Class.

### 6.    Lead Counsel, Plaintiffs and the Settlement Class Members Support Final Approval

The sixth *Reed* factor—the opinions of class counsel, class representatives, and absent class members—also supports final approval of the Settlement.   "[W]here the parties have conducted an extensive investigation, engaged in significant fact-finding and Lead Counsel is experienced in

class-action litigation, courts typically 'defer to the judgment of experienced trial counsel who has evaluated the strength of his case.'"  *Schwartz v. TXU Corp.*, Nos. 3:02-cv-2243-K, 2005 WL 3148350, at *21 (N.D. Tex. Nov. 8, 2005); *see also Welsh*, 2018 WL 7283639, at *14 ("When evaluating the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties."); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (W.D. Tex. 2007) ("The endorsement of class counsel is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims.").  Given that the Settlement provides a favorable recovery for the Settlement Class and given the significant risks in litigating this Action further, it is Lead Counsel's opinion that there is a real possibility of never achieving as good a result as the Settlement provides.

Additionally, Plaintiffs, who are sophisticated institutional investors and have monitored and been kept apprised of Lead Counsel's work throughout the Action, and who participated extensively in discovery, including sitting for depositions and searching for and producing documents, endorse the Settlement.  *See* Declaration of Andreas Thielemann Wagner, Senior Legal Counsel of Nykredit Portefølje Administration (Joint Decl. Ex. 1), at ¶¶ 2-9; Declaration of Chase Rankin, Executive Director of Oklahoma Firefighters Pension and Retirement System (Joint Decl. Ex. 2), at ¶¶ 2-9; Declaration of Duane Michael, Executive Director of Oklahoma Law Enforcement Retirement System (Joint Decl. Ex. 3), at ¶¶ 2-9; Declaration of Ginger Sigler, Executive Director of Oklahoma Police Pension and Retirement System (Joint Decl. Ex. 4), at ¶¶ 2-9; Declaration of Regina Story, Retirement System Manager of Oklahoma City Employee Retirement System (Joint Decl. Ex. 5), at ¶¶ 2-9; Declaration of Kelly Tapper, Assistant Executive Director of Police and Fire Retirement System of the City of Detroit (Joint Decl. Ex. 6), at ¶¶ 2-7.

The reaction of the Settlement Class to date also supports final approval.  In response to the notice procedures outlined above in Section III, to date, no Settlement Class Members have objected to the Settlement or Plan of Allocation and just one request for exclusion from the Settlement Class has been received.  *See* Segura Decl. ¶ 15.  In addition, more than 18,000 claims to participate in the Settlement have been received.  *Id.* ¶ 16.   The deadline for Settlement Class Members to request exclusion or submit objections is March 21, 2023.  Under the schedule set by the Court, Plaintiffs will file reply papers in further support of final approval on April 4, 2023, addressing all requests for exclusion and any objections that may be received.

## 7. The Settlement Satisfies the Remaining Rule 23(e)(2) Factors

### a. The Proposed Method for Distributing Relief Is Effective

Rule 23(2)(2) requires the Court to consider whether the proposed method for distributing relief is effective.  The proceeds of the Settlement will be distributed to Settlement Class Members who submit eligible Claim Forms with required documentation to JND.  JND will review and process the claims received, provide claimants with an opportunity to cure any deficiency or request review of the denial of their claim by the Court, and will ultimately mail or wire claimants their *pro rata* share of the Net Settlement Fund as calculated under a proposed plan of allocation to be approved by the Court.  Lead Counsel worked with Plaintiffs' damages expert to devise a plan of allocation that would fairly distribute the Net Settlement Fund to Claimants.  As explained below in Section V, the proposed plan of allocation provides a fair method of distribution. [3]

### b. Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses the proposed award of attorneys' fees, including the timing

---

[3] The Settlement is not a claims-made settlement.  If the Settlement is approved, Defendants will have no right to the return of any portion of Settlement based on the number or value of Claims submitted.  *See* Stipulation ¶ 14.

of payment.  As discussed in Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses and Plaintiffs' Motion for Awards filed concurrently with this motion, Lead Counsel seek an award of attorneys' fees of 20% of the Settlement Fund and litigation expenses of $486,411.27, which is within the range of settlements approved in this Circuit.  Pursuant to the terms of the Stipulation, and as is standard in securities class actions, attorneys' fees and expenses will be paid upon any such award granted by the Court, and shall be reimbursed to the Settlement Fund if the award is reduced or reversed in any subsequent legal proceedings.  *See* Stipulation ¶ 17.  Most importantly with respect to the Court's consideration of the fairness of the Settlement, is the fact that approval of attorneys' fees is entirely separate from approval of the Settlement, and neither Plaintiffs nor Plaintiffs' Counsel may terminate the Settlement based on this Court's or any appellate court's ruling with respect to the ultimate award of attorneys' fees or expenses.  *See id*.

### c.     The Parties' Sole Side Agreement Is the Agreement Concerning Opt-Outs

Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreement made in connection with the Proposed Settlement.  As disclosed in Paragraph 37 of the Stipulation, Plaintiffs and ProPetro have entered into a standard Supplemental Agreement, which provides that ProPetro has the right to terminate the Settlement in the event that Settlement Class Members timely and validly requesting exclusion from the Settlement Class meet certain conditions.  Doc. 168-1 at 32.  While the Supplemental Agreement is identified in the Stipulation, its specific terms are confidential.[4]

---

[4]    There are "compelling reasons" for keeping the Supplemental Agreement confidential. Keeping confidential the circumstances under which ProPetro gains the option to terminate the Settlement is necessary to avoid enabling one or more stockholders to selfishly use this knowledge to insist on a higher payout for themselves while threatening to eviscerate the Settlement, which would be detrimental to the interests of the Settlement Class.  *See Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 4207245, at *8 (N.D. Cal. Sept. 4, 2018) ("There are compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts.").

Such side agreements are standard and their existence does not preclude final approval of settlements.  *See In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-cv-06728, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020); *The Erica P. John Fund, Inc., v. Halliburton Co.*, No. 3:02-cv-1152-M, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 201) (granting final approval of securities class action that included a similar confidential agreement permitting settlement termination in the event of exclusion requests by a certain portion of the class).  The Parties have no additional side agreements.

### d.    No Settlement Class Member Receives Preferential Treatment

The Plan of Allocation, discussed more fully in Section V below, explains how the settlement proceeds will be distributed among Authorized Claimants.  It provides specific formulas for calculating the recognized claim of each Settlement Class Member, based on each Settlement Class Member's purchases or acquisitions of ProPetro common stock in the IPO or on the open market during the Class Period, and when and if they were sold.  Plaintiffs, like all other Settlement Class Members, will have their recognized losses calculated in the exact same manner, and their *pro rata* distribution will be the same as any other Settlement Class Members, according to the amount of their Recognized Loss.  The Settlement is thus fair, reasonable and adequate and does not treat Plaintiffs or any other Settlement Class Member preferentially.

## V.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

This Court has "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).  The standard for approving a plan of allocation is the same as the standard for approving the settlement: the plan must be "fair, adequate, and reasonable," and cannot be "the product of collusion between the parties."  669 F.2d at 238.  In addition, an

allocation needs only to have a reasonable basis, particularly where, as here, it is recommended by class counsel. *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *9 (S.D.N.Y. Jan 31, 2007), *see also Marcus v. J.C. Penny Co., Inc.*, No. 6:13-CV-736, 2017 WL 6590976, at *5 (E.D. Tex. Dec. 18, 2017) ("Where, as here, the plan is formulated by competent and experienced class counsel, the plan need only have a reasonable and rational basis.").

With the assistance of Plaintiffs' damages expert, Lead Counsel prepared the Plan of Allocation after careful consideration and analysis, and without reference to any particular trading patterns of Plaintiffs. The Plan, which is fully set forth in the Notice, provides for calculation of "Recognized Loss Amounts" for those with claims stemming from the Securities Act of 1933 (the "Securities Act") and the Securities and Exchange Act of 1934 (the "Exchange Act"). The Exchange Act Recognized Loss Amounts are calculated based on the difference between the alleged inflation per share on the date of purchase and date of sale, or the difference between the purchase and sale price, whichever is less. See Plan ¶ 8. The Securities Act Recognized Loss Amounts, for ProPetro shares purchased in or traceable to the IPO, are calculated based on the difference between the purchase price (not to exceed the offering price of $14 per share) and the sale price of the Claimant's ProPetro common stock or the price of ProPetro common stock on the date the first action alleging claims against Defendants was filed, $11.43. Plan ¶ 9. If investors have Recognized Loss Amounts under both the Exchange Act and the Securities Act for a particular purchase, the higher loss amount will be used. Plan ¶ 10.

If the total claims for all Authorized Claimants exceed the Net Settlement Fund, each Authorized Claimant's share of the Net Settlement Fund will be determined based upon the percentage that his, her, or its claim bears to the total of the claims for all Authorized Claimants. Joint Decl. ¶ 89. *See In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *12 (S.D.N.Y. Feb. 1, 2007) ("A plan of allocation that calls for the pro rata

distribution of settlement proceeds on the basis of investment loss is reasonable"). Moreover, to date, not a single Settlement Class Member has filed an objection to the Plan of Allocation. Thus, this method of allocation is fair, reasonable and adequate, and should be approved by the Court.

## VI.    CLASS CERTIFICATION REMAINS WARRANTED

The Court previously preliminarily found, for settlement purposes only, that: (1) the Settlement Class met or was likely to meet each element required for class certification under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and (2) it would likely be able to certify Plaintiffs as Class Representatives and Lead Counsel as Class Counsel for the Settlement Class pursuant to Rule 23(g). Doc. 169 at 2-3. None of the facts regarding certification of the Settlement Class have changed since Plaintiffs submitted their Motion for Preliminary Approval of Settlement, and there has been no objection to certification. Accordingly, Plaintiffs respectfully request that the Court grant final certification of the Settlement Class and appoint Plaintiffs as Class Representatives and Lead Counsel as Class Counsel, for settlement purposes only, pursuant to Rules 23(a), (b)(3), and (g).

## VII.   CONCLUSION

For all the foregoing reasons, Plaintiffs and Lead Counsel respectfully request that the Court approve the Settlement and Plan of Allocation as fair, reasonable and adequate. The proposed Judgment and a proposed Order approving the Plan of Allocation will be submitted with Plaintiffs' reply papers, after the deadline for requesting exclusion and objecting has passed.

Dated: March 7, 2023                Respectfully submitted,

By: /s/ *James A. Harrod*
    James A. Harrod
    Jeroen van Kwawegen
    Alexander T. Payne
    **BERNSTEIN LITOWITZ**
    **BERGER & GROSSMANN LLP**
    1251 Avenue of the Americas
    New York, New York 10020
    Telephone: (212) 554-1400
    Facsimile: (212) 554-1448
    Jim.harrod@blbglaw.com
    Jeroen@blbglaw.com
    Alex.Payne@blbglaw.com

    **GRANT & EISENHOFER P.A.**
    Daniel L. Berger
    Caitlin M. Moyna
    485 Lexington Avenue
    New York, NY 10017
    Telephone: (646) 722-8500
    Facsimile: (646) 722-8501
    dberger@gelaw.com
    cmoyna@gelaw.com

    *Counsel for Plaintiffs, Lead Counsel for the*
    *Settlement Class and proposed Class*
    *Counsel*

    **MARTIN & DROUGHT, P.C.**
    Gerald T. Drought
    State Bar No. 06134800
    Federal Bar No. 8942
    Frank B. Burney
    State Bar No. 03438100
    Bank of America Plaza, 25th Floor 300
    Convent Street San Antonio, Texas 78205
    Telephone: (210) 227-7591
    Facsimile: (210) 227-7924
    gdrought@mdtlaw.com
    fburney@mdtlaw.com

    *Liaison Counsel for Plaintiffs*

**CLARK HILL PLC**
Ronald A. King
212 E. Cesar Chavez Ave
Lansing, MI 48906
Telephone: (517) 318-3015
Facsimile: (517) 318-3068
rking@clarkhill.com

*Counsel for Plaintiff Police and Fire*
*Retirement System of the City of Detroit*