**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

|  |  |  |
|---|---|---|
| NYKREDIT PORTEFØLJE ADMINISTRATION A/S, OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM, OKLAHOMA POLICE PENSION AND RETIREMENT SYSTEM, OKLAHOMA CITY EMPLOYEE RETIREMENT SYSTEM, POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, Individually and on behalf of all others similarly situated, | § § § § § § § § § § § § | No. MO:19-CV-217-DC CLASS ACTION Hon. David Counts |
| *Plaintiffs,* | § § § | |
| v. | § § § | |
| PROPETRO HOLDING CORP., DALE REDMAN, JEFFREY SMITH, IAN DENHOLM, and SPENCER D. ARMOUR III, | § § § § | |
| *Defendants.* | § § § | |

**LEAD COUNSEL'S MOTION FOR ATTORNEYS' FEES AND
LITIGATION EXPENSES AND PLAINTIFFS' MOTION FOR AWARDS**

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................. iv

I.     PRELIMINARY STATEMENT ................................................................1

II.    PROCEDURAL AND FACTUAL BACKGROUND.......................................3

III.   AWARD OF ATTORNEYS' FEES ............................................................3

    A.   Lead Counsel Are Entitled to an Award of Attorneys' Fees from the Common Fund .................................................................................3

    B.   The Court Should Award a Percentage of the Common Fund ................4

    C.   The Requested Percentage Is Fair and Reasonable...............................5

    D.   The *Johnson* Factors Further Confirm that the Requested Fee Is Fair and Reasonable ...................................................................................7

        1.   Time and Labor.......................................................................7

        2.   Novelty and Difficulty of the Issues .........................................11

        3.   Skill Required: Experience, Reputation and Ability of Lead Counsel ...............................................................................13

        4.   Preclusion of Other Employment...........................................14

        5.   Contingent Nature of the Fee .................................................14

        6.   Amount Involved and Results Obtained ...................................16

        7.   Undesirability of the Case.......................................................16

        8.   Awards in Similar Cases.........................................................17

    E.   Settlement Class Member Reaction ....................................................17

IV.    THE REQUESTED EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE SETTLEMENT.............................17

V.     PLAINTIFFS' REQUESTS FOR AWARDS UNDER 15 U.S.C. § 78u-4(a)(4)..............18

VI.    CONCLUSION....................................................................................20

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                          PAGE(S)

*In re Aetna Inc. Sec. Litig.*,
   MDL No. 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ......................................14

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) ................................................................................11

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ..............................................................................15

*In re Arthrocare Corp. Sec. Litig.*,
   No. A-08-CA-574-SS, 2012 WL 12951371 (W.D. Tex. June 4, 2012) .................19

*In re AT&T Corp.*,
   455 F.3d 160 (3d Cir. 2006)....................................................................................8

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
   No. 07-61541-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd sub
   nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).......15

*Barton v. Drummond Co.*,
   636 F.2d 978 (5th Cir. 1981) ..................................................................................3

*In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012)....................................................................11

*Blum v. Stenson*,
   465 U.S. 886 (1984)............................................................................................4, 5

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)............................................................................................3, 4

*Brantley v. Surles*,
   804 F.2d 321 (5th Cir. 1986) ..................................................................................7

*Bridges v. Ridge Nat. Res., LLC*,
   No. MO:18-CV-00134-DC, 2020 WL 7496843 (W.D. Tex. June 23, 2020).......4, 6

*Buettgen v. Harless*,
   No. 3:09-cv-00791-K, 2013 WL 12303194 (N.D. Tex. Nov. 13, 2013) ..................6

*In re Catfish Antitrust Litigation*,
   939 F. Supp. 493 (N.D. Miss. 1996)........................................................................4

*Celeste v. Intrusion Inc.*,
    No. 4:21-cv-307-sdj, 2022 WL 17736350 (E.D. Tex. Dec. 16, 2022) ....................................10

*Cent. R.R. & Banking Co. v. Pettus*,
    113 U.S. 116 (1885).........................................................................................................................4

*In re Chesapeake Energy Corp.*,
    567 F. Supp. 3d 754 (S.D. Tex. 2021) ......................................................................................9

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
    No. 6:12-1609, 2015 WL 965696 (W.D. La. March 3, 2015) ................................................10

*City of Pontiac Gen. Emps.' Ret. Sys. v. Dell Inc.*,
    No. 1:15-cv-00374-LY, 2020 WL 218518 (W.D. Tex. Jan. 10, 2020) ..............................6, 13

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
    No. 4:14-cv-3428 (NFA), 2019 WL 6043440 (S.D. Tex. Feb. 13, 2019) ..............................19

*DeHoyos v. Allstate Corp.*,
    240 F.R.D. 269 (W.D. Tex. 2007) .......................................................................................8, 14

*In re Dell Inc.*,
    No. A-06-CA-726-SS, 2010 WL 2371834 (W.D. Tex. June 11, 2010) ...............11, 14, 16, 17

*Di Giacomo v. Plains All Am. Pipeline*,
    No. Civ. A.H.-99-4137, 2001 WL 34633373 (S.D. Tex. Dec. 19, 2001)................................18

*Doglow v. Anderson*,
    43 F.R.D. 472 (E.D.N.Y. 1968).................................................................................................3

*In re Enron Corp. Secs., Derivative & ERISA Litig.*,
    586 F. Supp. 2d 732 (S.D. Tex. 2008) ......................................................................................8

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    No. Civ. A. H-01-3624, 2004 WL 1900294 (S.D. Tex. Aug. 5, 2004) ...................................17

*The Erica P. John Fund, Inc. v. Halliburton Co.*,
    No. 3:02-cv-1152-M, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) .....................................19

*In re EZCORP, Inc. Sec. Litig.*,
    No. 1:15-CV-00608-SS, 2019 WL 6649017 (W.D. Tex. Dec. 6, 2019) ..............................6, 19

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    No. 02-CV-3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).........................11

*Garza v. Sporting Goods Props., Inc.*,
    No. Civ. A. SA-93-CA-108, 1996 WL 56247 (W.D. Tex. Feb. 6, 1996)................................16

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) ............................................15

*Grigson v. Farmers Grp., Inc.*,
    No. 1:17-cv-00088-LY, 2020 WL 13598801 (W.D. Tex. May 22, 2020) ........................6, 14

*Harman v. Lyphomed, Inc.*,
    945 F.2d 969 (7th Cir. 1991) ............................................17

*In re Ikon Office Sols., Inc., Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000)..........................................14

*Internal Imp. Fund Trs. v. Greenough*,
    105 U.S. 527 (1882)......................................................4

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) .............................................7

*Leroy v. City of Houston*,
    831 F.2d 576 (5th Cir. 1987) ............................................10

*Marcus v. J.C. Penney Co., Inc.*,
    No. 6:13-cv-736, 2017 WL 6590976 (E.D. Tex. Dec. 18, 2017) ...........................19

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970)......................................................3

*Missouri v. Jenkins by Agyei*,
    491 U.S. 274 (1989)...................................................5, 10

*In re OCA, Inc. Sec. & Deriv. Litig.*,
    No. 05-2165, 2009 WL 512081 (E.D. La. March 2, 2009) ...................................12

*Parmelee v. Santander Consumer USA Holdings Inc.*,
    No. 3:16-cv-00783-K, 2019 WL 2352837 (N.D. Tex. June 3, 2019)......................6

*Prause v. TechnipFMC*,
    No. 4:17-cv-02368, 2021 WL 6053219 (S.D. Tex. Mar. 23, 2021) .........................6

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005)..............................................17

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ..........................................15

*Schwartz v. TXU Corp.*,
    No. 3:02-cv-2243-K, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ...........................4, 6, 15

*Shaw v. Toshiba America Information Systems, Inc.*,
    91 F. Supp. 2d 942 (E.D. Tex. 2000) ....................................................................4

*Singh v. 21Vianet Grp., Inc.*,
    No. 2:14-cv-00894-JRG-RSP, 2018 WL 6427721 (E.D. Tex. Dec. 6, 2018) ..........6

*Sprague v. Ticonic Nat'l Bank*,
    307 U.S. 161 (1939) ..................................................................................3, 4

*Tellabs, Inc. v. Makor Issues & Rs., Ltd.*,
    551 U.S. 308 (2007) .........................................................................................3

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ..........................................................................4, 5

*In re Vivendi Universal, S.A. Sec. Litig.*,
    765 F. Supp. 2d 512 (S.D.N.Y. 2011), *aff'd*, 838 F.3d 223 (2d Cir. 2016) ...........15

*Welsh v. Navy Federal Credit Union*,
    No. 5:16-CV-1062-DAE, 2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) ..........6, 8

*In re Willbros Grp., Inc.*,
    407 F. Supp. 3d 689 (S.D. Tex. 2018) ..............................................................6

*Willix v. Healthfirst, Inc*.,
    No. 07 Civ. 1143 (ENV)(RER), 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011).......11

**STATUTES**

15 U.S.C. § 78u-4(a)(4) ...............................................................................1, 18, 19

15 U.S.C. § 78u-4(a)(6) .........................................................................................5

Lead Plaintiffs Nykredit Portefølje Administration A/S, Oklahoma Firefighters Pension and Retirement System, Oklahoma Law Enforcement Retirement System, Oklahoma Police Pension and Retirement System, and Oklahoma City Employee Retirement System, along with additional named plaintiff Police and Fire Retirement System of the City of Detroit (collectively, "Plaintiffs"), by and through Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") and Grant & Eisenhofer P.A. ("G&E"), will and hereby do move the Court, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, before the Honorable David Counts, on April 11, 2023, at 1:30 p.m. Central Time, for an Order (i) awarding attorneys' fees and litigation expenses; and (ii) approving Plaintiffs' application for awards pursuant to 15 U.S.C. § 78u-4(a)(4).[1]

## I.      PRELIMINARY STATEMENT

As set out in Plaintiffs' accompanying Motion for Final Approval of Settlement and Plan of Allocation, the proposed Settlement is an excellent result for the class of investors who suffered economic damages in connection with false and misleading statements made by Defendants ProPetro Holding Corp. ("ProPetro" or the "Company"), Dale Redman, Jeffrey Smith, Ian Denholm, and Spencer D. Armour III (collectively, "Defendants") between March 17, 2017 and March 13, 2020, both dates inclusive (the "Class Period") or in or traceable to the Company's March 17, 2017 Initial Public Offering.  It provides for a substantial cash payment of $30,000,000,

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated September 22, 2022 (Doc. 168-1), or in the Joint Declaration of James A. Harrod and Daniel L. Berger in Support of (I) Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation and (II) Lead Counsel's Motion for Attorneys' Fees, Litigation Expenses, and Awards to Plaintiffs (the "Joint Declaration" or "Joint Decl."), filed herewith.  Citations and internal quotations are omitted and emphases are added unless otherwise noted.

which has been fully funded, in exchange for dismissal of all claims brought against the Defendants.

In contemplation of the Settlement, Lead Counsel respectfully apply for an award of attorneys' fees of 20% of the Settlement Fund (i.e., the Settlement Amount plus accrued interest), as well as litigation expenses of $486,411.27.  Lead Counsel's fee request has been approved by Plaintiffs. *See* Declaration of Andreas Thielemann Wagner, Senior Legal Counsel of Nykredit Portefølje Administration (Joint Decl. Ex. 1) ("Wagner Declaration"), at ¶ 10; Declaration of Chase Rankin, Executive Director of Oklahoma Firefighters Pension and Retirement System (Joint Decl. Ex. 2) ("Rankin Declaration"), at ¶ 10; Declaration of Duane Michael, Executive Director of Oklahoma Law Enforcement Retirement System (Joint Decl. Ex. 3) ("Michael Declaration"), at ¶ 10; Declaration of Ginger Sigler, Executive Director of Oklahoma Police Pension and Retirement System (Joint Decl. Ex. 4) ("Sigler Declaration"), at ¶ 10; Declaration of Regina Story, Retirement System Manager of Oklahoma City Employee Retirement System (Joint Decl. Ex. 5) ("Story Declaration"), at ¶ 10; Declaration of Kelly Tapper, Assistant Executive Director of Police and Fire Retirement System of the City of Detroit (Joint Decl. Ex. 6) ("Tapper Declaration"), at ¶ 8.  The fee requested is well within the range of percentage fees awarded in class actions in this Circuit and is also reasonable when viewed against the result achieved here and the many hurdles that Lead Counsel were able to overcome.

Additionally, Plaintiffs respectfully apply for awards pursuant to 15 U.S.C. § 78u-4(a)(4) in connection with their representation of the Settlement Class in the following amounts: $18,075.00 for Nykredit Portefølje Administration A/S, $4,583.00 for Oklahoma Firefighters Pension and Retirement System, $2,425.50 for Oklahoma Law Enforcement Retirement System, $4,074.00 for Oklahoma Police Pension and Retirement System, $7,798.70 for Oklahoma City Employee Retirement System, and $2,860.30 for Police and Fire Retirement System of the City of

Detroit.  *See* Wagner Declaration ¶¶ 13-15; Rankin Declaration ¶¶ 13-15; Michael Declaration ¶¶ 13-15; Sigler Declaration ¶¶ 13-15; Story Declaration ¶¶ 13-15; Tapper Declaration ¶¶ 11-13.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

To avoid repetition, Plaintiffs respectfully refer the Court to the accompanying Joint Declaration for a full discussion of: (i) the factual background and procedural history of the Action; (ii) the efforts of Lead Counsel in prosecuting the claims in this Action; and (iii) the reasons why the Court should approve Lead Counsel's application for an award of attorneys' fees and litigation expenses and Plaintiffs' application for awards pursuant to 15 U.S.C. §78u-4(a)(4).

## III.    AWARD OF ATTORNEYS' FEES

### A.    Lead Counsel Are Entitled to an Award of Attorneys' Fees from the Common Fund

The Supreme Court and the Fifth Circuit have long recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939); *Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981).  In addition to providing compensation, attorneys' fee awards from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature.  *See, e.g.*, *Doglow v. Anderson*, 43 F.R.D. 472, 481-84 (E.D.N.Y. 1968).  Indeed, the Supreme Court has emphasized that private securities actions, such as the instant Action, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the Securities and Exchange Commission. *Tellabs, Inc. v. Makor Issues & Rs., Ltd.*, 551 U.S. 308, 313 (2007).

### B.     The Court Should Award a Percentage of the Common Fund

The Supreme Court has consistently held that where a common fund has been created for the benefit of a class as a result of counsel's efforts, the award of counsel's fee should be determined on a percentage-of-the-fund basis.  *See, e.g.*, *Internal Imp. Fund Trs. v. Greenough*, 105 U.S. 527, 532 (1882); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 124-25 (1885); *Sprague*, 307 U.S. at 166-67; *Boeing*, 444 U.S. at 478-79.  Indeed, by 1984 this point was so well established that the Supreme Court needed no more than a footnote to make it in *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class[.]").

The Fifth Circuit also approves the percentage method, finding that it "brings certain advantages . . . because it allows for easy computation" and "aligns the interests of class counsel with those of class members."  *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643-44 (5th Cir. 2012) (endorsing "the district courts' continued use of the percentage method cross-checked with the *Johnson* factors").  Moreover, numerous district courts within the Fifth Circuit, including this Court, have applied the percentage-of-recovery method in awarding fees.  *See, e.g.*, *Bridges v. Ridge Nat. Res., LLC*, No. MO:18-CV-00134-DC, 2020 WL 7496843, at *3 (W.D. Tex. June 23, 2020).  For example, the published opinions in *In re Catfish Antitrust Litigation*, 939 F. Supp. 493, 500 (N.D. Miss. 1996), and *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942, 966-67 (E.D. Tex. 2000), list numerous class action cases as examples.  Indeed, "there is a strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery."  *Schwartz v. TXU Corp.*, No. 3:02-cv-2243-K, 2005 WL 3148350, at *26 (N.D. Tex. Nov. 8, 2005).

The percentage method of calculating fees is also appropriate in Private Securities Litigation Reform Act of 1995 ("PSLRA") securities cases like this one.  In fact, the PSLRA

explicitly authorizes the percentage method in calculating fees in securities actions. 15 U.S.C. § 78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."); *see Union Asset Mgmt.*, 669 F.3d at 643 ("Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such calculation.").

Here, Lead Counsel are seeking a 20% fee. As discussed below, the requested percentage is reasonable under the circumstance of this case and falls squarely within the range of percentages in settlements regularly approved in the Fifth Circuit.

### C.     The Requested Percentage Is Fair and Reasonable

An appropriate court-awarded fee is intended to approximate what counsel would receive if they were offering their services in the marketplace. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285-86 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 33% of the recovery. *See Blum*, 465 U.S. at 903 n.*("'In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.'") (Brennan, J., concurring).

Each of the Plaintiffs entered into retainer agreements with one of the Lead Counsel firms at the outset of the litigation. The 20% fee requested is consistent with or lower than the permissible rate under each of these retainer agreements, *see* Joint Decl. ¶ 97, and has again been approved by each Plaintiff after the Settlement was reached. *See* Wagner Declaration ¶ 10; Rankin Declaration ¶ 10; Michael Declaration ¶ 10; Sigler Declaration ¶ 10; Story Declaration ¶ 10; Tapper Declaration ¶ 8.

The 20% fee requested is consistent with percentage fees awarded in the Fifth Circuit in securities class actions like this one. "A number of cases recognize a benchmark of between

twenty and thirty percent in common fund cases." *Bridges*, 2020 WL 7496843, at *3. "Indeed, courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the-recovery method." *Schwartz*, 2005 WL 3148350, at *27.

A review of attorneys' fees awarded in similar cases in this Circuit supports the reasonableness of the 20% fee request. *See, e.g.*, *Welsh v. Navy Federal Credit Union*, No. 5:16-CV-1062-DAE, 2018 WL 7283639, at *16 (W.D. Tex. Aug. 20, 2018) ("When the percentage method is used, fee awards commonly fall between 20% at the low end and 50% at the upper end."); *Prause v. TechnipFMC*, No. 4:17-cv-02368, 2021 WL 6053219, at *1-2 (S.D. Tex. Mar. 23, 2021) (awarding 33% of $19.5 million settlement); *Grigson v. Farmers Grp., Inc.*, No. 1:17-cv-00088-LY, 2020 WL 13598801, at *4 (W.D. Tex. May 22, 2020) (awarding approximately 22.02% of $52 million settlement); *City of Pontiac Gen. Emps.' Ret. Sys. v. Dell Inc.*, No. 1:15-cv-00374-LY, 2020 WL 218518, at *1 (W.D. Tex. Jan. 10, 2020) (awarding 30% of $21 million settlement); *Buettgen v. Harless*, No. 3:09-cv-00791-K, 2013 WL 12303194, at *1 (N.D. Tex. Nov. 13, 2013) (awarding 30% of $33.75 million settlement); *see also Bridges*, 2020 WL 7496843, at *4 (awarding 25%); *In re EZCORP, Inc. Sec. Litig.*, No. 1:15-CV-00608-SS, 2019 WL 6649017, at *1 (W.D. Tex. Dec. 6, 2019) (awarding 33%); *Parmelee v. Santander Consumer USA Holdings Inc.*, No. 3:16-cv-00783-K, 2019 WL 2352837, at *1 (N.D. Tex. June 3, 2019) (awarding 33.33%); *Singh v. 21Vianet Grp., Inc.*, No. 2:14-cv-00894-JRG-RSP, 2018 WL 6427721, at *1 (E.D. Tex. Dec. 6, 2018) (awarding 33.30%); *In re Willbros Grp., Inc.*, 407 F. Supp. 3d 689, 690 (S.D. Tex. 2018) (awarding 30%).

D.     The *Johnson* Factors Further Confirm that the Requested Fee Is Fair and Reasonable

An analysis of the factors identified by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, confirms the requested fee award is reasonable and appropriate in this case.  488 F.2d 714, 717-19 (5th Cir. 1974).  The *Johnson* factors include: (1) time and labor required; (2) novelty and difficulty of the issues; (3) skill required to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of professional relationship with the client; and (12) awards in similar cases. *Id.*  The relevance of each of the *Johnson* factors will vary in any particular case, and, rather than requiring a rigid application of each factor, the Fifth Circuit has left it to the lower courts' discretion to apply these factors in view of the circumstances of a particular case.  *See Brantley v. Surles*, 804 F.2d 321, 325-26 (5th Cir. 1986).[2]

1.     Time and Labor

Lead Counsel committed considerable resources and time researching, investigating, and prosecuting this Action over a more than three-year period.  Those efforts are reflected in the total of over 8,900 hours expended by Plaintiffs' Counsel's attorneys to obtain the substantial benefits to the Settlement Class.  Joint Decl. ¶ 102.  Lead Counsel conducted a thorough evaluation of the claims and a diligent investigation in connection with the filing of three amended complaints.  Joint Decl. ¶¶ 28-32.  These efforts culminated with the filing of the operative Third Amended Class Action Complaint for Violations of the Federal Securities Laws on July 30, 2020 (Doc. 81) (the

---

[2] The factors that look at time limitations imposed by the client and the "nature and length" of the professional relationship with the client are not relevant here, and will not be addressed.

"Complaint").  Lead Counsel then briefed and partially defeated Defendants' five motions to Dismiss.  Joint Decl. ¶¶ 33-40.  Lead Counsel also briefed Defendants' motion to strike.  Joint Decl. ¶ 41.  Following these motions, Lead Counsel engaged in extensive factual and expert discovery, which entailed voluminous document discovery from both the Defendants and over 20 nonparties, hiring and directing the efforts of their expert, Mr. Frank Torchio, defending Mr. Torchio's deposition, and defending the depositions of representatives of each of the Plaintiffs.  Joint Decl. ¶¶ 43-47, 49.  Lead Counsel further filed a motion for class certification.  Joint Decl. ¶¶ 48-50.

This recovery was obtained only because of the skill and tenacity of Lead Counsel.  As the history of the Action makes clear, the services provided by Lead Counsel proved fruitful, resulting in a favorable recovery for the Settlement Class.  Defendants have fiercely fought this case for three years, and Lead Counsel responded to these defense strategies and tactics, while aggressively building Plaintiffs' case on the merits.  In these circumstances, the requested fee is warranted.

The reasonableness of Lead Counsel's fee request is further supported by performing a lodestar cross check.  *See Welsh*, 2018 WL 7283639, at *18 ("Courts use a lodestar calculation to crosscheck the percentage method.").  "The lodestar is computed by multiplying the number of hours reasonably expended by the prevailing hourly rate in the community for similar work." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 323 (W.D. Tex. 2007).  "A cross-check is performed by dividing the proposed fee award by the lodestar calculation, resulting in the lodestar multiplier." *In re Enron Corp. Secs., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 752 (S.D. Tex. 2008) (quoting *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006)).  Here, Lead Counsel's requested fees represent a "negative" multiplier of 0.9 on the lodestar for Plaintiffs' Counsel's attorneys— that is, the requested fee is only approximately 90% of the value of Plaintiffs' Counsel attorney

time.  This negative lodestar strongly supports the reasonableness of the requested fees as positive multipliers of the lodestar are regularly accepted as reasonable.

Collectively, attorneys at Lead Counsel, Martin & Drought, P.C. (liaison counsel for Plaintiffs and the Settlement Class), and Clark Hill PLC (additional counsel for Detroit Police & Fire) (together, "Plaintiffs' Counsel") have spent over 8,900 hours prosecuting this Action.  Joint Decl. ¶ 102.  At Lead Counsel's standard rates, BLB&G's lodestar for its 5,744 attorney hours is $3,633,612.50 and G&E's lodestar for its 3,101 attorney hours is $2,591,262.00.  *See* Declaration of James A. Harrod on Behalf of Bernstein Litowitz Berger & Grossmann LLP in Support of Final Approval and Plaintiffs' Counsel's Motion for Attorneys' Fees and Litigation Expenses (Joint Decl. Ex. 8A) ("Harrod Decl."), at Ex. 1; Declaration of Daniel L. Berger on Behalf of Grant & Eisenhofer P.A. in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses (Joint Decl. Ex. 8B) ("Berger Decl."), at Ex. 1.  Local Counsel Martin & Drought, P.C. expended 63.8 attorney hours and has a lodestar of $38,280.00.  *See* Declaration of Frank B. Burney on Behalf of Martin & Drought, P.C. in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses (Joint Decl. Ex. 8C) ("Burney Decl."), at ¶¶ 5-6.  And Clark Hill PLC expended 69.3 attorney hours and has a lodestar of $55,093.50.  *See* Declaration of Ronald A. King on Behalf of Clark Hill PLC in Support of Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses (Joint Decl. Ex. 8D) ("King Decl."), at ¶¶ 5-6.  In total, Plaintiffs' Counsel's lodestar based on work of its attorneys only (excluding work by paralegals and other professional staff) is $6,318,248.00.

The hourly rates for Plaintiffs' Counsel range from $600 to $1,500 per hour for partners and $425 to $650 for associates.  These rates are in line with the current prevailing rates in Texas. *See In re Chesapeake Energy Corp.*, 567 F. Supp. 3d 754, 790 (S.D. Tex. 2021) (approving hourly

rates ranging up to $1,250 as reasonable).  In conducting a lodestar analysis, the appropriate hourly rates to use are those rates that are the current prevailing market rates.[3]

In addition, the hours spent were reasonable.  *See* Harrod Decl. ¶ 5; Berger Decl. ¶ 4.  Given that defendants in this action were represented by large, prestigious, and experienced defense firms that specialize in defending cases of this nature, (e.g., ProPetro is represented by Hughes Hubbard & Reed LLP, an international law firm with an experienced securities litigation practice), Lead Counsel had to devote significant hours to ensure the success of Plaintiffs' case.  Joint Decl. ¶ 105.  However, time was only spent as was reasonably necessary to provide high quality work in educating the attorneys on the facts and industry, drafting pleadings and briefs, overseeing experts and investigators, and reporting updates to clients.  *Id.* ¶¶ 99-100.  The case was leanly staffed, particularly given its complexity, and efforts were made to avoid repetition or duplication of work. *Id.* ¶ 100.

As noted, the requested fee amount of $6,000,000, plus interest, represents a "negative" multiplier of 0.9 on the lodestar for Plaintiffs' Counsel's attorneys.  This amount is in line with, or below, the typical awards given in other securities fraud class actions and supports awarding Lead Counsel 20% of the Settlement Fund.  *See, e.g.*, *Celeste v. Intrusion Inc.*, No. 4:21-cv-307-sdj, 2022 WL 17736350, at *14 (E.D. Tex. Dec. 16, 2022) ("When a lodestar cross-check is applied to a class-action fee award in a common fund case, courts frequently use a multiplier ranging from one to four based on the *Johnson* factors."); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,

---

[3] The use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment was approved in this Circuit, *see Leroy v. City of Houston*, 831 F.2d 576, 584 (5th Cir. 1987) ("current rates may be used to compensate for inflation and delays in payment"), even before the Supreme Court adopted this approach in *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989).

No. 6:12-1609, 2015 WL 965696, at *10 (W.D. La. March 3, 2015) ("Multipliers ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied.").

Indeed, the fact the requested fee is equal is **_less than_** the value of the time by expended by Plaintiffs' Counsel at their regular hourly rates strongly supports the reasonableness of the requested fee. *See, e.g., In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012) (approving fee with negative multiplier and noting that the negative multiplier was a "strong indication of the reasonableness of the [requested] fee"); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("Lead Counsel's request for a percentage fee representing a significant discount from their lodestar provides additional support for the reasonableness of the fee request.").[4]

### 2.     Novelty and Difficulty of the Issues

It is widely recognized that securities class actions are complex and difficult and that "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009); *see also In re Dell Inc.*, No. A-06-CA-726-SS, 2010 WL 2371834, at *16 (W.D. Tex. June 11, 2010) ("Securities actions are generally large and complex cases involving difficult financial and accounting issues.") (citing *In re OCA, Inc.*

---

[4] Further, should the Court approve the Settlement, Lead Counsel will continue to perform legal work on behalf of the Settlement Class. Lead Counsel will expend additional resources assisting Settlement Class Members with their Claim Forms and related inquires and working with the Claims Administrator, to ensure the smooth progression of claims processing and distribution of the Net Settlement Fund. No additional legal fees will be sought for this work. *See Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143 (ENV)(RER), 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request.").

*Sec. & Deriv. Litig.*, No. 05-2165, 2009 WL 512081, at *21 (E.D. La. March 2, 2009) ("Fifth Circuit decisions on causation, pleading and proof at the class certification stage make PSLRA claims particularly difficult[.]")).

The significant risks to establishing liability and damages are detailed in the Joint Declaration. *See* Joint Decl. ¶¶ 52-71. These risks were present in the case from the outset and included significant risks in proving that Defendants made material misstatements, acted with scienter, and that Defendants' alleged misstatements caused damages to Settlement Class Members. Defendants had argued and would continue to argue that the alleged false statements did not concern the operations or financial results of ProPetro's business, but rather highly technical and abstract disclosure requirements and thus would not be material to investors. *Id.* ¶ 61. Defendants would also point out that ProPetro's IPO prospectus repeatedly cautioned that it was inexperienced as a public company, achieving rapid growth, and that its reliance on "informal agreements and close-knit working relationships" might make it difficult for the Company to comply with all internal control requirements. *Id.* ¶ 62. With respect to Plaintiffs' Exchange Act claims, there were further substantial risks to proving that Defendants acted intentionally or recklessly when making the alleged misstatements and omissions. Defendants would likely argue that ProPetro was a newly public company doing its best to meet the relevant disclosure requirements; that Defendants went to great lengths to investigate and correct any past deficiencies; and did not have any intent to mislead investors. *Id.* ¶¶ 63-64.

Finally, Defendants had a number of credible arguments for why alleged misstatements could not be shown to be the cause the Plaintiffs' damages (or, in any event, why damages would be significantly lower than Plaintiffs claimed): First, Defendants would point out that on several dates news revealing truthful information about Defendant's alleged fraud was released, yet ProPetro's stock price ***increased*** on those dates. Defendants will argue that the stock price

increases on those dates need to be "offset" against declines on the alleged corrective disclosure dates when ProPetro's stock price declined.  Joint Decl.  ¶ 65.  Second, Defendants would argue that there can be no damages for shares purchased after November 13, 2019 since, after that date, the only remaining stock price declines occurred because of revelations concerning Defendant Redman's share pledges, which the Court had dismissed.  *Id.*  Defendants will also argue that there is no loss causation that can be predicated on ProPetro's March 16, 2020 disclosure because, on that date, the United States was experiencing the onset of the COVID-19 pandemic, which had an immense effect on the overall financial markets and thus any decline ProPetro suffered that day cannot be casually connect to the alleged disclosure.  *Id.*

### 3.    Skill Required: Experience, Reputation and Ability of Lead Counsel

The third and ninth *Johnson* factors—the skill required and the experience, reputation, and ability of the attorneys—also support the requested fee award.  Here, Lead Counsel performed their work diligently, skillfully, and achieved a substantial recovery for the Settlement Class.  Lead Counsel have many years of experience in complex federal civil litigation, particularly the litigation of securities and other class actions, and have achieved significant acclaim for their work, as set forth in the exhibits to Lead Counsel's accompanying fee and expense submissions.

Lead Counsel's experience in the field also allowed them to identify the complex issues involved in this case, and formulate strategies to successfully prosecute it effectively.  *See City of Pontiac*, 2020 WL 218518, at *2 ("Lead Counsel has pursued the Litigation and achieved the Settlement with skill, perseverance, and diligent advocacy[.]").  But for Lead Counsel's efforts, the Settlement Class' claims might have been dismissed at the pleading stage, and class certification may have been defeated.  Instead, Lead Counsel were able to secure a settlement of $30 million, representing a very good result for the Settlement Class.

The quality of opposing counsel is also important in evaluating the quality of services rendered by Lead Counsel. *See, e.g.*, *In re Aetna Inc. Sec. Litig.*, MDL No. 1219, 2001 WL 20928, at *15 (E.D. Pa. Jan. 4, 2001); *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 195 (E.D. Pa. 2000). Hughes Hubbard & Reed LLP, Winstead PC, Bell Nunnally & Martin LLP, and Edmundson Shelton Weiss PLLC, the defense attorneys in this case, are aggressive, experienced, and highly skilled. *See Grigson*, 2020 WL 13598801, at *5 (finding the requested attorneys' fees appropriate and noting, *inter alia*, "the very high quality of counsel for Defendant in this case"). The ability of Lead Counsel to develop their case and negotiate this Settlement in the face of this formidable opposition confirms the quality of Lead Counsel's representation

### 4.     Preclusion of Other Employment

Plaintiffs' Counsel's attorneys spent over 8,900 hours prosecuting this Action on behalf of the Settlement Class. Those hours were time that counsel could have devoted to other matters. Accordingly, to the extent applicable, this factor supports the requested percentage.

### 5.     Contingent Nature of the Fee

Lead Counsel undertook this Action on a contingent fee basis, assuming a substantial risk that the Action would yield no recovery and leave counsel uncompensated. Lead Counsel's extensive time and effort devoted to litigating the Action in the face of a myriad of risks strongly supports the fee requested. *See DeHoyos*, 240 F.R.D. at 330 ("[W]hen attorneys' receipt of payment is contingent on the success of the litigation, reasonable compensation may demand more . . . Thus to account for the contingent nature of the compensation, a court should assess the riskiness of litigation."); *In re Dell*, 2010 WL 2371834, at *17 ("There was a real risk of no recovery, and significant uncertainty as to the recovery amount, if any. This risk should rightly be considered in the award of attorneys' fees . . . .").

Indeed, the risk of no recovery in complex cases of this type is very real. *See Schwartz*, 2005 WL 3148350, at *31-32 (recognizing "the risk of no recovery in complex cases of this type is very real" and that "[c]ourts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees"). There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. Subsequent to the passage of the PSLRA, many cases in this Circuit have been dismissed at the pleading stage in response to defendants' arguments that the complaints do not meet the PSLRA's pleading standards. Lead Counsel were faced with this very real possibility in this Action. *See* Joint Decl. ¶¶ 52-71. Even plaintiffs who get past summary judgment and succeed at trial may find their judgment overturned on appeal or on judgment notwithstanding the verdict. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (major portion of plaintiffs' verdict reversed on appeal); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1998 on the basis of 1994 Supreme Court opinion); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533 (S.D.N.Y. 2011), *aff'd*, 838 F.3d 223 (2d Cir. 2016) (after jury verdict for plaintiff, court significantly reduced scope of class by amending class definition to exclude purchasers of ordinary shares); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61541-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (granting defendants' post-trial motion for judgment as a matter of law following jury verdict for plaintiff).

Lead Counsel have received no compensation during the over three-year duration of this Action and have incurred significant expenses in prosecuting this Action for the benefit of the Settlement Class.  Any fee or expense award has always been at risk and completely contingent on the result achieved.  Thus, the contingent nature of the Action supports the requested percentage.

### 6.      Amount Involved and Results Obtained

The benefit conferred on the class and the result achieved is an important factor in setting a fair fee.  *See, e.g.*, *In re Dell*, 2010 WL 2371834, at *18 ("The United States Supreme Court and the Fifth Circuit have held the most critical factor in determining the reasonableness of a fee award is the degree of success obtained.").  The result achieved, given the substantial risks, is significant and supports the requested fee.

### 7.      Undesirability of the Case

The tenth *Johnson* factor, undesirability of the case, also supports the fee requested here. Securities cases have generally been recognized as "undesirable" due to the financial burden on counsel and the time demands of litigating class actions of this size and complexity.  *Garza v. Sporting Goods Props., Inc.*, No. Civ. A. SA-93-CA-108, 1996 WL 56247, at *33 (W.D. Tex. Feb. 6, 1996) (factors such as financial burden on counsel and time demands of litigating class action of this size and complexity have caused cases to be considered "undesirable").  This was never an easy case and the risk of no recovery was always high.   When Lead Counsel undertook representation of Plaintiffs and the Settlement Class in this Action, it was with the knowledge that they would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts.   Had Plaintiffs and Lead Counsel not been tenacious in pursuing this Action, it is doubtful that the Settlement Class Members would have recovered anything from Defendants.  The risks Lead Counsel faced must be assessed as they

existed at the time counsel undertook the Action and not in light of the settlement achieved.  *See, e.g.*, *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991) (the riskiness of a case must be judged *ex ante* not *ex post*).  Thus, the "undesirability" of the Action supports the requested percentage.

### 8.    Awards in Similar Cases

As discussed above in Section II.C, a 20% fee is in line with several other settlements recently approved in this Circuit.

### E.    Settlement Class Member Reaction

Although not formally noted in the case law for this jurisdiction as a factor for the Court's consideration in determining an award of attorneys' fees, courts throughout the country have found that relatively few or no objections from the class to the attorneys' fees requested supports the reasonableness of the requested attorneys' fees.  *See, e.g.*, *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (district court did not abuse its discretion by finding that absence of substantial objections by class members to fee request weighed in favor of approval).  To date, there have been no objections to Lead Counsel's fee request.[5]

## IV.    THE REQUESTED EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE SETTLEMENT

Attorneys who create a common fund for the benefit of a class are entitled to payment from the fund of reasonable litigation expenses and charges.  *See, e.g.*, *In re Dell*, 2010 WL 2371834, at *19 (awarding costs in addition to the percentage fee); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, No. Civ. A. H-01-3624, 2004 WL 1900294, at *3 (S.D. Tex. Aug. 5, 2004); *Di Giacomo v. Plains All Am. Pipeline*, No. Civ. A.H.-99-4137, 2001 WL 34633373, at *13 (S.D.

---

[5] As set forth in the Notice, objections must be received by the Court and counsel no later than March 21, 2023.  Should any objections be received prior to that date, Lead Counsel will address them in their reply brief, to be filed no later than April 4, 2023.

Tex. Dec. 19, 2001) (awarding litigation expenses in addition to 30% attorneys' fee, noting that "[n]o party has objected to the amount of the expenses" and that such expenses were reasonable).

Lead Counsel seek payment of their reasonable expenses and charges of $486,411.27 for prosecuting this Action on behalf of the Settlement Class. *See* Joint Decl. ¶ 114. These expenses were necessary for the investigation and prosecution of the case. *Id.* The expenses include expert and consultant fees, mediation fees, document management costs, travel, photocopying of documents, online research, postage, express mail, and other incidental expenses directly related to the prosecution of this Action. Accordingly, Lead Counsel respectfully submit that all of these expenses were reasonable and necessarily incurred in the prosecution of the Action and therefore should be paid from the Settlement Fund.

## V.   PLAINTIFFS' REQUESTS FOR AWARDS UNDER 15 U.S.C. § 78U-4(A)(4)

Plaintiffs seek approval for awards pursuant to 15 U.S.C. § 78u-4(a)(4) in recognition of the time and resources they spent representing the Settlement Class in the following amounts: $18,075.00 for Nykredit Portefølje Administration A/S, $4,583.00 for Oklahoma Firefighters Pension and Retirement System, $2,425.50 for Oklahoma Law Enforcement Retirement System, $4,074.00 for Oklahoma Police Pension and Retirement System, $7,798.70 for Oklahoma City Employee Retirement System, and $2,860.30 for Police and Fire Retirement System of the City of Detroit. *See* Wagner Declaration ¶¶ 13-15; Rankin Declaration ¶¶ 13-15; Michael Declaration ¶¶ 13-15; Sigler Declaration ¶¶ 13-15; Story Declaration ¶¶ 13-15; Tapper Declaration ¶¶ 11-13. The PSLRA allows an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). As set forth in each plaintiff's declaration, Plaintiffs took active roles in prosecuting the Action, including (1) overseeing Lead Counsel with regard to issues and developments in the Action; (2) reviewing draft filings and other important documents and

materials related to the case; (3) consulting with Lead Counsel on litigation and settlement strategy; and (4) responding to Defendants' discovery requests and having a representative sit for deposition.  *See* Wagner Declaration ¶¶ 4-7; Rankin Declaration ¶¶ 4-7; Michael Declaration ¶¶ 4-7; Sigler Declaration ¶¶ 4-7; Story Declaration ¶¶ 4-7; Tapper Declaration ¶ 6.

Many courts have approved such awards under the PSLRA to compensate class representatives for the time and effort they spend on behalf of the class.  *See, e.g.*, *EZCORP, Inc.*, 2019 WL 6649017, at *2; *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, No. 4:14-cv-3428 (NFA), 2019 WL 6043440, at *2 (S.D. Tex. Feb. 13, 2019) (awarding aggregate of over $56,000 to four institutional plaintiffs pursuant to 15 U.S.C. § 78u-4(a)(4)); *The Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-cv-1152-M, 2018 WL 1942227, at *14 (N.D. Tex. Apr. 25, 2018) (awarding $100,000 to PSLRA lead plaintiff as "compensation for the time it dedicated in supervising this action"); *In re Arthrocare Corp. Sec. Litig.*, No. A-08-CA-574-SS, 2012 WL 12951371, at *6 (W.D. Tex. June 4, 2012) (awarding $55,850 to plaintiff for time spent "overseeing and communicating with Lead Counsel on a regular basis, reviewing and commenting on various pleadings, [and] sitting for depositions").  *See also Marcus v. J.C. Penney Co., Inc.*, No. 6:13-cv-736, 2017 WL 6590976, at *6 (E.D. Tex. Dec. 18, 2017) (finding requested awards to lead plaintiffs were reasonable where they "complied with discovery requests, reviewed pleadings and motions, participated in a deposition, monitored settlement negotiations and communicated with counsel").

The awards sought by Plaintiffs here are reasonable and justified under the PSLRA.  To date, no Settlement Class Member has objected to such awards to Plaintiffs.

## VI.    CONCLUSION

For all the foregoing reasons, Plaintiffs and Lead Counsel respectfully request that the

Court award attorneys' fees of 20% of the Settlement Fund, and expenses of $486,411.27.  Finally,

Plaintiffs request approval of awards pursuant to 15 U.S.C. § 78u-4(a)(4).  A proposed Order will

be submitted with Lead Counsel's reply papers, after the deadline for any objections has passed.

Dated: March 7, 2023                                      Respectfully submitted,

By: /s/ *James A. Harrod*
    James A. Harrod
    Jeroen van Kwawegen
    Alexander T. Payne
    **BERNSTEIN LITOWITZ**
    **BERGER & GROSSMANN LLP**
    1251 Avenue of the Americas
    New York, New York 10020
    Telephone: (212) 554-1400
    Facsimile: (212) 554-1448
    Jim.harrod@blbglaw.com
    Jeroen@blbglaw.com
    Alex.Payne@blbglaw.com

    **GRANT & EISENHOFER P.A.**
    Daniel L. Berger
    Caitlin M. Moyna
    485 Lexington Avenue
    New York, NY 10017
    Telephone: (646) 722-8500
    Facsimile: (646) 722-8501
    dberger@gelaw.com
    cmoyna@gelaw.com

    *Counsel for Plaintiffs, Lead Counsel for the*
    *Settlement Class and proposed Class*
    *Counsel*

**MARTIN & DROUGHT, P.C.**
Gerald T. Drought
State Bar No. 06134800
Federal Bar No. 8942
Frank B. Burney
State Bar No. 03438100
Bank of America Plaza, 25th Floor 300
Convent Street San Antonio, Texas 78205
Telephone: (210) 227-7591
Facsimile: (210) 227-7924
gdrought@mdtlaw.com
fburney@mdtlaw.com

*Liaison Counsel for Plaintiffs*

**CLARK HILL PLC**
Ronald A. King
212 E. Cesar Chavez Ave
Lansing, MI 48906
Telephone: (517) 318-3015
Facsimile: (517) 318-3068
rking@clarkhill.com

*Counsel for Plaintiff Police and Fire*
*Retirement System of the City of Detroit*